**BUDGE LAW FIRM, PLLC**
1134 E. University Dr., Suite 121
Mesa, AZ 85203
Phone: (480) 246-8050
Fax: (480) 553-8037
E-mail: sbudge@budgelawfirm.com
Sven K. Budge (#030205)

*Attorney for the Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| GRADY SHAVER, surviving father of Daniel Shaver, Deceased; and NORMA SHAVER, surviving mother of Daniel Shaver<br><br>Plaintiffs,<br>v.<br><br>CITY OF MESA, a public entity; PHILIP BRAILSFORD and CORRINE BRAILSFORD, husband and wife; CHARLES LANGLEY and JANE DOE LANGLEY, husband and wife; BRIAN ELMORE and JANE DOE ELMORE, husband and wife; CHRISTOPHER DOANE, and JANE DOE DOANE, husband and wife; BRYAN COCHRAN and JANE DOE COCHRAN, husband and wife; RICHARD GOMEZ and JANE DOE GOMEZ, husband and wife; LQ MANAGEMENT L.L.C. d/b/a LA QUINTA INNS & SUITES; JOHN AND JANE DOES I-X; BLACK CORPORATIONS I-X; AND WHITE PARTNERSHIPS I-X; UNNAMED PUBLIC ENTITIES I-X;<br><br>Defendants. | Case No. CV-17-00152-PHX-GMS<br>**LEAD CASE**<br><br>**CONSOLIDATED WITH:**<br>No. CV-17-00715-PHX-GMS<br><br>**PLAINTIFFS' 3rd AMENDED COMPLAINT**<br><br>(Jury Trial Demanded) |

Grady Shaver and Norma Shaver, husband and wife, both individually and collectively as

the surviving parents of Daniel Shaver, for their Complaint against Defendants, allege as

follows:

## JURISDICTION AND VENUE

1.      Plaintiffs bring this action pursuant to A.R.S. § 12-611, *et seq*; 28 U.S.C. § 1331 and 1343 for claims arising under 42 U.S.C § 1983, 1985 and 1988; the Fourteenth Amendment of the United States Constitution; and pendent state common and statutory laws. The Court has supplemental jurisdiction over the Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

2.      Jurisdiction and venue are proper under 28 U.S.C. § 1391(b)(2) because the City of Mesa is located within this District, the individual Defendants, on information and belief, all reside within this District, Defendant La Quinta Inns & Suites is licensed to do business in this District and operates numerous hotels here, and because the events underlying these causes of action occurred in the District of Arizona.

## COMPLIANCE WITH NOTICE OF CLAIM REQUIREMENTS

3.      A timely and detailed Notice of Claim including an amount for which Plaintiffs would settle was served and filed with the City Clerk for the City of Mesa, and the Defendant officers and former officers at the Mesa Police Department pursuant to A.R.S. § 12-821.01. More than 60 days have passed since the filing of the Notice of Claim and Defendants have not responded to said claim.

## THE PARTIES

4.      Plaintiffs Grady Shaver and Norma Shaver ("Parents') are adult individuals, are residents of Tennessee, and are the parents of Daniel Shaver.

5.     Defendant City of Mesa (the "City") is an Arizona governmental entity, organized according to and operating under to the laws of the State of Arizona.

6.     Defendant Philip Brailsford ("Brailsford") is a former police officer with the City of Mesa, Badge Number #19861, and is a resident of the State of Arizona.  Brailsford killed Daniel Shaver and is responsible for acts and omissions giving rise to this action.  Corrine Brailsford is the spouse of Philip Brailsford.  Philip Brailsford was acting for and on behalf of his marital community at all times relevant to the claims herein and in taking the actions that resulted in the killing of Daniel Shaver.

7.     Defendant Charles J. Langley ("Langley") is a former police officer with the City of Mesa, Badge Number #10509, and is a resident of the State of Arizona.  Langley was present and participated in the events leading to the killing of Daniel Shaver and is responsible for acts and omissions giving rise to this action.  On information and belief, Jane Doe Langley is the spouse of Charles J. Langley.  Charles J. Langley was acting for and on behalf of his marital community at all times relevant to the claims herein and in taking actions that resulted in the killing of Daniel Shaver.

8.     Defendant Brian Elmore ("Elmore") is a police officer with the City of Mesa, Badge Number #19456, and is a resident of the State of Arizona. Elmore was present and participated with a contingent of officers in the events leading to the killing of Daniel Shaver and is responsible for acts and omissions giving rise to this action. On information and belief, Jane Doe Elmore is the spouse of Brian Elmore.  Brian Elmore was acting for and on behalf of

his marital community at all times relevant to the claims herein, and in taking actions that

resulted in the killing of Daniel Shaver.

9.     Defendant Christopher Doane ("Doane") is a police officer with the City of Mesa, Badge Number #20111, and is a resident of the State of Arizona. Doane was present and participated with a contingent of officers in the events leading to the killing of Daniel Shaver and is responsible for acts and omissions giving rise to this action. On information and belief, Jane Doe Doane is the spouse of Christopher Doane.  Christopher Doane was acting for and on behalf of his marital community at all times relevant to the claims herein, and in taking actions that resulted in the killing of Daniel Shaver.

10.     Defendant Bryan Cochran ("Cochran") is a police officer with the City of Mesa, Badge Number #12353, and is a resident of the State of Arizona. Cochran was present and participated with a contingent of officers in the events leading to the killing of Daniel Shaver and is responsible for acts and omissions giving rise to this action.  On information and belief, Jane Doe Cochran is the spouse of Bryan Cochran.  Bryan Cochran was acting for and on behalf of his marital community at all times relevant to the claims herein, and in taking actions that resulted in the killing of Daniel Shaver.

11.     Defendant Richard Gomez ("Gomez") is a police officer with the City of Mesa, Badge Number #15089, and is a resident of the State of Arizona. Gomez was present and participated with a contingent of officers in the events leading to the killing of Daniel Shaver and is responsible for acts and omissions giving rise to this action.  On information and belief, Jane Doe Gomez is the spouse of Richard Gomez.  Richard Gomez was acting for and on behalf

of his marital community at all times relevant to the claims herein, and in taking actions that resulted in the killing of Daniel Shaver.

12.     Defendant LQ Management L.L.C. ("La Quinta") is a company and, on information and belief, the subsidiary of La Quinta Holdings, Inc. and is the manager and operator of La Quinta Inn & Suites hotel at 6530 E. Superstition Springs Boulevard in Mesa, Arizona which was the site of the killing of Daniel Shaver on January 18, 2016.  La Quinta is and was doing business in Arizona at all times relevant to the claims alleged herein. On information and belief, La Quinta, including through the actions and omissions of its agents, is responsible for actions or omissions that lead to the damages claimed by the Plaintiffs in this action against La Quinta.

13.     The Plaintiffs do not yet know the names of any other Defendants, but Plaintiffs hereby reserve the right to substitute the true names of such defendants as they are identified and to amend or supplement the allegations herein in connection with any claims Plaintiffs may have against such defendants.

## GENERAL ALLEGATIONS

14.     Plaintiffs re-allege and incorporate, by this reference, their claims, facts, and allegations in the paragraphs above, as if set forth fully herein.

15.     Parents survive, and are statutory beneficiaries of, their son Daniel Shaver ("Daniel") who was an individual residing in Hood County, Texas, at all times relevant to this Complaint.

16.     Defendant City of Mesa, including all of its departments, subdivisions, agents, and employees (collectively referenced hereafter as "the City") is a public municipal corporation formed and designated as such pursuant to Title 9 of the Arizona Revised Statutes.  As such, the City is subject to civil suit and may be held liable both independently and vicariously, as permitted by federal and state law, for the wrongful conduct of its officers, employees, agents, districts, and divisions/sub-divisions, including (without limitation) the City of Mesa Police Department ("Police") and the officers and employees of their divisions.

17.     At all times material to this Complaint, Defendant, former Officer Philip Brailsford ("Brailsford") and Defendant, former Officer Charles Langley ("Langley"), and Defendants Elmore, Doane, Cochran, and Gomez were agents and employees of the City who, at the time of the events complained herein, were acting within the course and scope of their employment and under color of law, except for such actions and failures which were outside the scope of Defendants Brailsford's, Langley's, Doane's, Elmore's, Cochran's, and Gomez's employment.  Their actions constitute actions of the City.  The City is vicariously and directly liable, as permitted by state and federal law, for any of their wrongful conduct.  Brailsford, Langley, Elmore, Doane, Cochran, and Gomez are sued both in their official capacity for purposes of Plaintiffs' state law claims and in their individual capacities for purposes of Plaintiffs' federal claims including 42 U.S.C. § 1983, 1985 and 1988; and the Fourteenth Amendment of the United States Constitution.  Jane Does Langley, Elmore, Doane, Cochran, and Gomez are fictitious names of these Defendant's spouses, if any, who will be substituted upon the discovery of their names and if appropriate.

18.     The true name, capacities, and relationships, whether individual, corporate, partnership, or otherwise of all John and Jane Doe Defendants, Black Corporations, and White Partnerships, are unknown at the time of the filing of this complaint and Plaintiffs will amend the complaint to name any unidentified individuals once they have learned, through discovery, the identities and acts, omissions, roles, and/or responsibilities of such Defendants sufficient for Plaintiffs to discover the claims against them.

19.     All spouses of the respective Defendants are so designated because Defendants were engaged in the wrongful conduct for the benefit of the marital communities, thereby rendering the spouses and marital communities of Defendants liable for such conduct.

## FACTUAL BASIS FOR CLAIMS FOR RELIEF

### Summary of Facts

20.     Plaintiffs re-allege and incorporate, by this reference, their claims, facts, and allegations in the paragraph above, as if set forth fully herein.

21.     On the evening of January 18, 2016 at approximately 9:14 p.m., Daniel Leetin Shaver was shot to death in his hotel by Brailsford.

22.     Daniel was a twenty six (26) year old young man from Granbury, TX and was traveling for work to Mesa, AZ to perform pest control for local businesses.  Daniel worked for Animal Relocators of Texas.

23.     Daniel was a devoted and loving son to his Parents who depended on him a great deal for love, affection, care, attention and moral/emotional support and all of the other intangible benefits a loving son could offer or would offer in the future including care and

support.  Daniel had a close relationship with his Parents and spoke with them regularly and often.  Daniel was also a loving father to his children who depended on him for support.

24.     Daniel checked into a hotel room on January 17, 2016 as a guest at the La Quinta Inn & Suites located at 6530 E. Superstition Springs Blvd. in Mesa.

25.     As part of his job Daniel was required to carry pellet rifles owned by his employer to provide pest control.  Due to their expense he would regularly keep the pellet rifles in his hotel room to prevent them from possibly being stolen from his vehicle.

26.     Daniel had stayed at this particular hotel on other occasions and was known by hotel staff as a friendly and outgoing individual and he would strive to form positive relationships with everyone he came in contact with.

27.     While there Daniel met two acquaintances, Monique Portillo and Luis Nunez, who he invited up to his room to socialize and have a conversation with.

28.     Sometime after Ms. Portillo and Mr. Nunez entered Daniel's room at the La Quinta hotel, a member of the La Quinta hotel staff received a report of someone seeing an individual holding a gun within their hotel room. La Quinta staff placed a call to the local 911 emergency system but the caller or the reporting party could not identify where the gun was being pointed, did not report that the gun had been pointed at a person, or any particular target, and did not specify if the hotel staff had received a report of a gun protruding out of a window or just someone inside holding a gun that was pointed in the direction of the window.

29.     The hotel staff did not treat the report they received as an active shooter situation. Instead, Ms. Leticia Jimenez, one of the hotel front desk employees, headed outside to confirm what room was involved.

30.     Recognizing the room involved in the report as Mr. Shaver's room, and having seen him earlier that evening ordering food, and having seen the Venezia's delivery person heading upstairs, Ms. Jimenez, apparently with hotel management's approval, went up to Daniel's room.

31.     Ms. Jimenez could see the people inside Daniel's room through the open door and saw a large Hispanic male with black hair, facial hair, and a black jacket with what appeared to be a rifle in his hands. That description could not possibly have been confused with Daniel who was a white male and was wearing just basketball shorts over underwear and a t-shirt when he appeared just a short time later in the hotel hallway at the officers' request. Ms. Jimenez recognized it was someone other than Daniel who was holding the object she identified as a rifle and Ms. Jimenez actually spoke to Daniel at his room. Mr. Nunez subsequently left the room prior to the officers responding.

32.     On information and belief, Ms. Jimenez was unarmed and unafraid that Daniel posed any serious threat to her or others. Her statement to the police after Daniel was shot and killed indicated what she observed when she reached Daniel's room, the door was open, not closed. The Mesa Police Department officers who responded to the 911 call and went to Daniel's room, including Defendants Brailsford, Langley, Doane, Elmore, Cochran and Gomez

could have and should have obtained that same information from Ms. Jimenez before they proceeded to Daniel Shaver's room.

33.　　At around 9:15 p.m. the Mesa Police Department responded to the call and at least six police officers arrived at the La Quinta, including Langley, Brailsford, Elmore, Doane, Cochran, and Gomez.

34.　　These six officers mobilized in the hotel lobby and formulated a plan to approach room #502 on the fifth floor.

35.　　Sergeant Langley, who was leading this team as the senior officer, assembled an immediate action team with these officers and designated two officers as lethal force including Brailsford, and ensured that they were armed with AR-15 assault rifles as well as himself.

36.　　None of the other officers were designated as less than lethal force and none of the officers elected to proceed with non-lethal weapons at this point despite several less than lethal options being available.  These officers made their way up the elevator and down the hall towards Daniel's room.

37.　　At the time he arrived at the La Quinta hotel, Defendant Brailsford was a lightly experienced officer whose prior conduct and actions indicated a dangerous immaturity, an unwillingness or inability to exercise personal restraint, and a willingness to employ inappropriate, unwarranted and excessive levels of force and violence in his activities while on duty.

38.　　On information and belief, Defendant Brailsford had been involved in an excessive use of force investigation in connection with an incident at a convenience store on or

- 10 -

about September 27, 2015 where a citizen was subject to excessive force by Brailsford. This incident was captured on video and resulted in a citizen complaint and an internal investigation under IA No. 2015-238 and was reported on the local news.

39.     This incident was well known to Mesa Police Department officials and gave them reason to question Brailsford's fitness for duty, to know of his disposition to use excessive force and violence while on duty, thus placing the City of Mesa on notice of the danger Brailsford posed to the public and wrongfully placing Daniel in an unreasonable risk of danger by allowing Brailsford to continue without termination, restraint or proper supervision.

40.     On the evening of January 18, 2016, while the officers were in the hallway and had mobilized just outside of Daniel's room Sergeant Langley sent one officer down to the front desk to ask hotel staff to call Daniel's room and another officer down to obtain a key to room #502 leaving only himself and three officers outside of Daniel's room. Langley and the other officers did not wait for additional officers to arrive nor did they elect to clear the rooms nearby in the hotel despite knowing that the weapons the officers were holding and ready to use could easily penetrate the walls of the hotel hallway. Instead they elected to force the situation and Daniel received a phone call stating that the Police were there and they wanted them to exit the room.

41.     Daniel and Monique then exited the room where they were shocked to see a group of five to six police officers pointing their weapons at them, including Brailsford who was utilizing his AR-15 rifle.

42.     Stunned and completely surprised, they stopped as Langley began screaming a series of confusing commands at them.  These actions by the officers and Langley in particular immediately and unnecessarily escalated the situation and heightened the agitation and stress felt by Daniel and Monique.  These Defendants did not use any de-escalation techniques and in fact did the opposite of what police policy requires in situations such as these.

43.     This entire incident was captured on the video cameras worn by two of the officers including Brailsford.

44.     Daniel was dressed in just underwear, loose athletic shorts and a t-shirt. He was not wearing anything that could conceal a rifle and none of the officers saw anything that suggested that either of them had any weapons of any kind.

45.     As Daniel and Monique exited the hotel room defendant Langley immediately shouted for them to stop and kneel on the ground.   Langley then stated, "Alright, if you make a mistake another mistake, there's a very severe possibility you're both going to get shot." At this point both of them had been compliant with commands given, and yet Langley still made threats against Daniel's life if he simply made a mistake.

46.     Monique was the first to be taken into custody after she was ordered to crawl forward, this occurred approximately six feet in front of the officers and Monique had left her purse on the floor of the hallway in the same location where she was handcuffed.

47.     Daniel did his best to follow the commands he was given despite the commands being confusing, difficult to follow and Daniel being told to "shut up" whenever he tried to speak or clarify the commands given by Langley.

48. After minutes of laying face down on the ground Daniel was finally ordered to crawl towards the officers with his legs crossed and his hands in the air, all while being told that if he lowered his hands or uncrossed his legs or made a mistake, he would be shot. This method and procedure of taking an individual into custody does not follow any police policy and does not authorize police officers to fatally shoot an individual if they simply make a mistake.

49. The commands given by Langley were not only confusing but rather impossible to follow because of the conflicting instructions given to Daniel. The method used by the defendant officers in this situation was against the Mesa Police Department policy and procedures and was done in such a way that caused confusion, aggravation, stress and heightened an already tense situation.

50. Daniel was ordered to crawl and also keep his hands in the air. The order to crawl necessitated that Daniel place his hands on the ground and as he was crawling he can be heard on the video audibly crying and begging the officers "please, don't shoot me."

51. As Daniel was crawling on his hands and knees per the officer's orders, he was required to crawl around the purse that Monique had left on the floor and at the same time his loose fitting basketball shorts fell down to his knees and he instinctively reached to catch them and pull them up.

52. At that instant officer Brailsford opened fire and shot Daniel five times in the back, neck, chest, face, and right leg with his own personal AR-15 assault rifle. Daniel was unarmed and died at the scene.

53. There was nothing that prevented the officers from moving forward and taking Daniel into custody where he was laying on the floor but instead they put him through a series of unnecessary maneuvers that required him to crawl on the floor and maneuver around the purse left by Monique, all while not being allowed to speak and being yelled at and threatened with death.

54. The defendant Mesa Police officers (specifically Brailsford) unjustifiably shot and killed Daniel without any threat existing. The defendant officers including: Brailsford, Langley, Doane, Elmore, Cochran and Gomez had a duty to protect Daniel and/or prevent the unjustified use of force against him, however, they did nothing to prevent this and in fact allowed his death to occur. There was absolutely no reason to kill this unarmed, vulnerable young man.

55. In fact, had anyone from Mesa Police Department bothered to inquire on the evening of January 18th of anyone affiliated with La Quinta who had interacted with Daniel about his character or personality, they would have heard very positive things about how friendly and open he was to staff and how they liked and felt comfortable around him. They would have also learned that Daniel had only moments earlier had interactions with hotel staff while ordering food to have delivered to his room and did not pose a threat to anyone.

56. On information and belief, none of the Mesa Police Department officials who visited the La Quinta hotel immediately before Daniel's killing by Defendant Brailsford made any such inquiry of hotel staff. Failure to make such an inquiry violated the applicable standard of care for a police response, was negligent, and contributed to the unlawful killing of Daniel.

57.     Daniel was not committing any crime, he had not hurt or injured anyone, he had made no threats to the officers or anyone else, he did not argue with the officers, he was not belligerent or defiant and he had no weapons.  Also, there were no reports of any threats, any shots being fired or any circumstances that would warrant the type of response utilized by the defendant officers and the officers did nothing to investigate the situation or find out any information which was readily available and would have prevented this heightened situation altogether.

58.     Defendant Langley and the other defendant officers under his command were responsible through their actions and failures to act, including those listed above, for decisions and actions that resulted in Langley and his team members making false and dangerous assumptions, employing inappropriate and excessively aggressive and violent tactics, and inappropriately escalating the situation outside Daniel Shaver's room.

59.     It was later discovered that officer Brailsford's personal AR-15 rifle used in this shooting and authorized for use by the Mesa Police Department had the words "You're Fucked" inscribed on the inside of the dust cover which would have been exposed after the first shot was fired.  His rifle also had the inscription of a Spartan helmet and the phrase "molon labe" which is a classical Greek term translating as "come and take them".

60.     These inscriptions show that officer Brailsford had a callous disregard for the sanctity of life, a disregard for authority and a high level of personal immaturity.  He also had disrespect for the rights of citizens of whom he had a duty to serve and protect, all of which the Mesa Police Department failed to identify or address.  Additionally, these inscriptions were

against Mesa Police Department policy and yet they were not addressed or corrected by any Defendants.

61.     These facts indicate that Mesa Police Department and the City of Mesa failed it's duty to Daniel Shaver and the Plaintiffs to protect them from Brailsford or to adequately train and supervise Brailsford to apply self restraint, de-escalation techniques, and respect for the rights of the public and the policies of the Mesa Police Department.

62.     The La Quinta employees who decided to call 911 or directed the call to 911 had access to greater information than they relayed to the 911 operator about the circumstances occurring in Daniel's hotel room get failed to inform the officers of the true circumstances. Also, had those employees provided to either the 911 operator or the officers responding to the 911 call the additional information they knew about Daniel, they would have provided material information that would have materially reduced the responding police officers' alleged perception of what risks of harm existed at the hotel that night.

63.     It was negligent and reckless for the La Quinta hotel staff to advise the 911 operator and the responding officers in the way they did, omitting material information the La Quinta staff knew about the occupants and the room where a rifle was supposedly spotted.

64.     Additionally, the window screen on Daniel's hotel room at the La Quinta hotel on January 18, 2016, was secured and could not easily be removed or moved by a hotel guest. Therefore, there is no possibility that anyone had actually extended a rifle outside the window of Daniel's room and the La Quinta hotel staff on duty knew of the fixed condition of the window screen and failed to inform the Mesa Police Department officers of this vital information and the

- 16 -

officers failed to investigate thus constituting reckless and negligent actions of the La Quinta staff and the officers which contributed to the false assumptions of the officers that Daniel Shaver presented a threat worthy of deadly force or even that the original reports presented to the La Quinta employees were accurate or credible.

65. The officers who went to Daniel's room failed to conduct an adequate and appropriate inquiry into the facts confronting them and did not even speak to the persons who supposedly saw a rifle through a hotel window or of speaking to hotel staff members like Ms. Jimenez to learn the critical information known to them about Daniel and the situation in Daniel's room that would have confirmed that Daniel posed no threat to anyone, including the Mesa Police Department officers or that this was any sort of "active shooter" situation.

66. All things considered, the Mesa police officers failed to follow proper procedure and training, failed to gather the necessary information, aggravated and unnecessarily escalated the situation and ultimately killed Daniel in an unprovoked, unwarranted, unjustified, callous, depraved, and viciously evil act.

67. The La Quinta defendant did not follow proper procedure or policy, interacted with Daniel both before and after the 911 call and knew great deal of additional information which they failed to provide to the officers responding which would have otherwise saved Daniel's life.

68. Subsequent to this incident the Maricopa County Attorney's Office investigated the events surrounding Daniel's killing and filed a direct complaint against officer Philip

Brailsford for second-degree murder in the killing of Daniel Shaver. Officer Brailsford was then

fired from the Mesa Police Department.

69. Additionally, the City of Mesa had served Defendant Langley with a notice of an

internal investigation regarding his official conduct as a Mesa Police Department officer, and

Defendant Langley elected to retire rather than face possible discipline and loss of retirement

benefits.


## FIRST CLAIM FOR RELIEF

## (Wrongful Death – Against the City of Mesa, Brailsford, Langley, Doane, Elmore, Cochran and Gomez)

70. Plaintiffs re-allege and incorporate by reference their claims, facts, and allegations

contained in the paragraphs above, as if set forth fully herein.

71. Defendants City of Mesa, Brailsford, Langley, Doane, Elmore, Cochran and

Gomez have a statutory and common law duty to assure the safety and well-being of persons in

their care and custody – a duty that includes (without limitation) using only necessary and

reasonable force. Defendants also have a duty to provide proper care to the citizens under their

care, custody, and control while in the conduct of their official activities.

72. Through the actions and failures to act alleged above, Defendants City of Mesa,

Brailsford, Langley, Doane, Elmore, Cochran and Gomez and other unidentified agents or

servants of the City of Mesa engaging in the actions or failures to act from which the causes of

actions alleged herein arise facilitated, encouraged, used, and failed to prevent the use of

excessive, unreasonable, and illegal force, resulting in Defendant Brailsford shooting and killing Daniel Shaver on January 18, 2016.

73.     The shooting of Daniel by Mesa Police Officer Philip Brailsford was without justification and amounts to death caused by intentional conduct, negligence, gross negligence, reckless disregard and/or murder as set forth above and violates the duties of care required by these Defendants including, without limitation their duties to create and enforce policy or hire, terminate or train officers in implementing policies concerning appropriate tactics, techniques and use of force.  Additionally these officers had a duty to not use more force than necessary when dealing with citizens of the public or in effecting an arrest of an individual.

74.     The City of Mesa and Defendant officers breached this duty when they subjected Daniel to more force than necessary causing his death.

75.     City of Mesa, Brailsford, Langley, Doane, Elmore, Cochran and Gomez breached their duties, as identified by the allegations set forth in the paragraphs above by (among others and without limitation):  subjecting Daniel to excessive force; fatally shooting Daniel; and failing to protect him or properly follow the applicable protocols, practices, policies, training, and standards of law enforcement.

76.     The City of Mesa is legally responsible for the screening, hiring, training, retaining, and supervision of all employees and agents who have responsibility for the processing, handling, and management of those in the care, custody, and control of the Police. This responsibility includes (among other things and without limitation) making certain that such employees and agents satisfy all federal, state, and applicable standards.  It also includes

(among others and without limitation) making certain that Police policies, procedures, practices, protocols, customs, and training satisfy all federal, state, and applicable standards. And, it also includes (among others and without limitation) reasonably responding to known problems and/or improper customs, policies, practices, procedures, training, and/or conditions. The City was negligent in the performance of those duties and responsibilities.

77. Defendant Brailsford had a character, demeanor, psychological makeup, behavioral issues, predispositions, and a history of aggressive, abusive or inappropriate physical conduct prior to January 18, 2016 that made him unfit for service as a police officer and a danger to members of the public with whom he could come in contact in the course of his police duties. More specifically, Defendant Brailsford presented an unreasonable danger and risk of harm to Daniel Shaver and the Plaintiffs on January 18, 2016.

78. Defendant City of Mesa had knowledge of the dangers posed by Defendant Brailsford and of his unfitness for duty on January 18, 2016, and had a duty to act to protect Daniel Shaver and Plaintiffs from that danger. Yet, the City of Mesa took no appropriate actions to prevent that from happening.

79. Defendant City of Mesa therefore breached its duties to Daniel Shaver and Plaintiffs by continuing to employ Defendant Brailsford and allow him to operate as a Mesa Police Department officer capable of using lethal force in the course of his official duties on January 18, 2016.

80. The City of Mesa breached its duties, as identified by the allegations set forth in the paragraphs above, by (among others and without limitation): failing to properly screen, hire,

retain and supervise its employees; ratifying improper conditions, customs, policies, procedures, and/or practices by inaction; implementing, utilizing, and/or permitting to exist unreasonable dangerous policies, practices, protocols, customs, and training (or lack thereof) with respect to (among others and without limitation) the use of force; approaching, arresting, and/or responding to citizens; failing to appropriately hire, retain and supervise its employees.

81.     Specifically, the wrongful and negligent acts in addition to those listed above include:

a.  The failure of the defendant officers to make appropriate inquiries regarding the initial report, witnesses, the physical conditions of the hotel, hotel staff interactions with Daniel or any of the necessary inquiries to determine the credibility of the initial report and the level of threat existing in this situation;

b.  The aggressive and forceful tactics used by Defendants when approaching Daniel that escalated the situation including the confusing and highly threatening instructions and commands that required Daniel to move in a manner that caused his shorts to fall and necessitated him pulling him up and that Defendants did not follow the appropriate policy or techniques designed to de-escalate the situation or secure the arrest of Daniel without the need to utilize lethal force;

c.  The techniques used by Defendant Langley that created the wrong impression in the minds of the other Defendant officers and caused the other officers to wrongfully view Daniel as a threat;

d. The failure of the defendant officers to remove the purse from the hallway which required Daniel to crawl around the purse and create movements that could be interpreted as threatening;

e. The failure of even a single officer to recognize that Daniel was not a threat and that he was being submissive and compliant and to take steps which they had a duty to take in order to protect Daniel from the unjustified force that was being imposed upon him. The defendant officers should have taken the steps necessary to de-escalate the situation and recognize that Daniel was submissive and compliant in his interactions with the officers and that he posed no threat;

f. The failure of the defendant officers to recognize that both Daniel and Monique were unarmed and did not have a rifle which was the subject of the initial report;

g. The failure of the city of Mesa to properly train and supervise the Defendant officers with regard to tactics utilized to secure the arrest of an individual without the need of lethal force, properly assess the situation, recognize threats or the lack thereof when dealing with members of the public, utilize the proper verbal commands and deploy appropriate tactics to de-escalate situations such as these;

h. Failure of the city of Mesa and its officials to identify and eliminate the threat posed by defendant Brailsford including his history of using excessive and inappropriate force on prior occasions known to them, his improper, vulgar and degrading inscription inscribed on his AR-15 rifle and his general inexperience and demeanor which resulted in him shooting and killing Daniel;

i.  Failure of the city of Mesa to train, reassign, terminate or otherwise eliminate the threat that Brailsford posed to members of the public including Daniel.

82.  Defendants actions and inactions were the direct cause of Daniel's death and but for the defendants failures Daniel would not have been shot that night and plaintiffs would not have incurred the loss of their son.

83.  Pursuant to A.R.S. § 12-611, Defendants are liable to Plaintiffs for their damages.

84.  Pursuant to A.R.S. § 12-612(a), Daniels surviving Parents are entitled to bring this action for damages.

85.  Plaintiffs are entitled to recover for their damages which are, at a minimum, compensation for the loss of consortium, love, affection, companionship, care, protection and guidance since the death and in the future; for the pain, grief, sorrow, anguish, stress, shock, and mental suffering already experienced, and reasonably probable to be experienced in the future; for any income and services that have already been lost as a result of the death, and that are reasonably probable to be lost in the future; for any reasonable expenses of funeral and burial; for the reasonable expenses of necessary medical care and services for the injury that resulted in the death; and for related damages.

86.  The conduct that the City of Mesa and Defendant officers were engaged in with intent to cause injury, was wrongful conduct motivated by spite or ill will or the officers acted to serve their own interests, having reason to know and consciously disregarding a substantial risk that their conduct might significantly injure the rights of or cause the death of Daniel.  The

officers consciously pursued a course of conduct knowing that it created a substantial risk of significant harm to Daniel.

87.     Plaintiffs are therefore entitled to damages in an amount to be determined at trial.

88.     To the extent that these Defendants were not acting within the scope of their employment, Plaintiffs are entitled to punitive damages against Brailsford, Langley, Doane, Elmore, Cochran and Gomez.

89.     The Plaintiffs are entitled to recovery of taxable costs, including per the terms of A.R.S. § 12-341.

## SECOND CLAIM FOR RELIEF

**(Violation of 42 U.S.C. § 1983: Against the City of Mesa Brailsford, Langley, Doane, Elmore, Cochran and Gomez in their Official Capacity)**

90.     Plaintiffs re-allege and incorporate by reference their claims, facts, and allegations contained in the paragraphs above, as if set forth fully herein.

91.     As the surviving Parents of Daniel Shaver, the Plaintiffs have the authority to pursue claims under 42 U.S.C. § 1983 for violations by Defendants of Plaintiff's clearly established constitutional rights. Defendants have interfered with the relationship between the Plaintiffs and their son Daniel when they shot and killed him.

92.     The City of Mesa and Langley directly and by and through their agents and official policymakers, establish policy for the City's police department, oversee operations of the police department and the services provided by its officers, and evaluate, certify, and

maintain the police department's compliance with applicable standards. Such actions, directly or via ratification, constitute official municipal policy, customs and practices.

93. The City of Mesa and Langley, acted jointly and under color of state law to deprive the Plaintiffs of their clearly established constitutional rights under the Fourteenth Amendment to the United States Constitution.

94. Despite their knowledge of and notice to them, the City of Mesa and Langley were deliberately and callously indifferent to the constitutional rights of those that they serve in training (and/or failing to adequately train) police personnel, employees, and agents in (among other things): the appropriate, lawful and constitutional policies, procedures, practices, protocols, and customs for the use of force; the processing, evaluation, handling, management, and restraint of citizens; and other usual and recurring circumstance police face, as alleged herein.

95. The City of Mesa has long been on notice and had knowledge of the dangerous and unconstitutional conditions that led to Daniel's death.

96. Despite their knowledge of and notice, the City of Mesa and it's Police officers and supervisors were deliberately and callously indifferent to the constitutional rights of those that they serve in the screening, hiring, retention and supervision of Police personnel, employees, and agents.

97. Despite their knowledge and notice, the City of Mesa and their supervisors were deliberately and callously indifferent to the constitutional rights of those that they serve in fostering, encouraging, and knowingly accepting formal and informal Police policies or customs

condoning indifference to the use of excessive force, such as that death and/or bodily harm to citizens was likely to occur in a manner similar to that of Daniel.

98.     These Defendants' deliberate, reckless, and callous actions, as described above, substantially contributed to and/or were the moving force behind Daniel's treatment and the use of excessive force upon him by City employees and his ultimate death in their hands while in their custody and control.

99.     The wrongful conduct of Defendants, as described herein, constitutes violations of 42 U.S.C. § 1983, in that with deliberate and callous indifference, they deprived Daniel's Parents of rights secured to them by the Constitution and laws of the United States, including (among others and without limitation) the right to the continued familial and societal relationship, guaranteed by the Fourteenth Amendment.

100.     Plaintiffs are entitled to recover for their damages which are, at a minimum, compensation for the loss of consortium, love, affection, society, companionship, care, protection and guidance since the death and in the future; for the pain, grief, sorrow, anguish, stress, shock, and mental suffering already experienced, and reasonably probable to be experienced in the future; for any income and services that have already been lost as a result of the death, and that are reasonably probable to be lost in the future; for any reasonable expenses of funeral and burial; for the reasonable expenses of necessary services for the injury that resulted in the death; and for related damages.

101.     The wrongful conduct of these Defendants was in reckless disregard of the rights of Daniel's Parents, and damages in an amount to be determined by a jury should be awarded.

102.    The Plaintiffs are entitled to recover reasonable attorneys' fees and costs per 42 U.S.C. §§ 1983 and 1988, including expert fees.

### THIRD CLAIM FOR RELIEF

**(Violation of 42 U.S.C. § 1983:  Against Brailsford, Langley, Doane, Elmore, Cochran and Gomez in their Individual Capacities)**

103.    Plaintiffs re-allege and incorporate by reference all claims, facts and allegation set forth in the paragraphs above, as if set forth fully herein.

104.    As the surviving Parents of Daniel Shaver, the Plaintiffs have the authority to pursue claims under 42 U.S.C. § 1983 for violations by Brailsford, Langley, Doane, Elmore, Cochran and Gomez of their clearly established constitutional rights.

105.    Brailsford, Langley, Doane, Elmore, Cochran and Gomez, acted jointly and under color of state law to deprive the Plaintiffs of their clearly established constitutional rights under the Fourteenth Amendment to the United States Constitution.  Defendants interfered with the relationship between the Plaintiffs and their son Daniel when they shot and killed him.

106.    At all times material hereto, Brailsford, Langley, Doane, Elmore, Cochran and Gomez were acting under the color of law.  Additionally, many of the actions and failures to act were outside the scope of Defendants Brailsford's, Langley's, Doane's, Elmore's, Cochran's, and Gomez's employment, yet they still acted under color of law when depriving Plaintiffs of their constitutional rights.

107.    Brailsford, Langley, Doane, Elmore, Cochran and Gomez used excessive force upon Daniel which caused, contributed to cause, or was the moving force of his death.

108.    The wrongful conduct of Brailsford, Langley, Doane, Elmore, Cochran and Gomez deprived Daniel's Parents of rights secured to them by the constitution and the laws of the United States, which conduct was not objectively reasonable under the circumstances.

109.    The wrongful conduct of Brailsford, Langley, Doane, Elmore, Cochran and Gomez, as described herein, constitutes violations of 42 U.S.C. § 1983, in that with deliberate and callous indifference, they deprived Daniel's Parents of rights secured to them by the Constitution and laws of the United States, including (among others and without limitation) the right to the continued familial and societal relationship, guaranteed by the due process clause of the Fourteenth Amendment.

110.    Plaintiffs are entitled to recover for their damages which are, at a minimum, compensation for the loss of consortium, love, affection, society, companionship, care, protection and guidance since the death and in the future; for the pain, grief, sorrow, anguish, stress, shock, and mental suffering already experienced, and reasonably probable to be experienced in the future; for any income and services that have already been lost as a result of the death, and that are reasonably probable to be lost in the future; for any reasonable expenses of funeral and burial; for the reasonable expenses of necessary services due to his death; and for related damages.

111.    The actions of Brailsford, Langley, Doane, Elmore, Cochran and Gomez were malicious or in reckless disregard of the rights of Daniel's Parents and punitive damages in an

amount to be determined by a jury should be awarded against each of them to punish them for their wrongdoing and to deter and prevent them and others from acting in a similar manner in the future.

112. The Plaintiffs are entitled to recover reasonable attorneys' fees and costs per 42 U.S.C. §§ 1983 and 1988, including expert fees.

## FOURTH CLAIM FOR RELIEF

### (Wrongful Death – Against La Quinta Inns & Suites)

113. Plaintiffs re-allege and incorporate by reference their claims, facts, and allegations contained in the paragraphs above, as if set forth fully herein.

114. For purposes of this Claim, the Defendant "La Quinta" means Defendant LQ Management L.L.C. d/b/a La Quinta Inns & Suites, along with any and all employees, agents, servants, contractors or representatives of the La Quinta hotel in Mesa, Arizona at which Daniel Shaver was killed, who participated in, facilitated, encouraged or was responsible for any of the actions or failures to act alleged herein as a basis for liability, including all such persons or entities whose specific identities and names are not yet known to Plaintiffs. LQ Management L.L.C. has an indemnification obligation to the owner of the hotel La Quinta Holdings Inc. with respect to the claims arising out of or related to its management and operation of the hotel.

115. La Quinta owed a duty of care to Daniel Shaver because he was a paying guest of La Quinta on the night of January 18, 2016. Among those duties were obligations to ensure that Daniel Shaver was protected from assault, battery or physical injury while on the La Quinta

premises and to take all steps necessary to ensure that any City of Mesa police officers or officials responding to the 911 call on January 18, 2016 were fully informed as the applicable circumstances and did not unnecessarily or unreasonably expose Daniel Shaver to risks of harm or death.

116. La Quinta, along with the other Defendants breached their duty of care to Daniel through their actions and failure to act as alleged above in facilitating, encouraging, and failing to prevent the use of excessive, unreasonable, and illegal force which resulted in Defendant Brailsford shooting and killing Daniel Shaver.

117. Specifically, the acts and omissions include: inaccurate and incomplete reporting to the 911 operator and the officers by La Quinta employees concerning the circumstances including but not limited to a weapon seen by La Quinta staff in the room, knowledge regarding the window and window screen, their knowledge about Daniel Shaver and whether they felt he posed a threat, the circumstances surrounding Ms. Jimenez and her visit to Daniels room and observations which occurred before and after the 911 call and failure to relay correct and credible information to the City of Mesa officers.

118. Additionally, La Quinta failed to adequately train and supervise its employees regarding how to respond to situations like these and interact with police to ensure that full and accurate information is provided.

119. Pursuant to A.R.S. § 12-611, Defendants are liable to Daniels surviving Parents for their damages.

120.     Pursuant to A.R.S. § 12-612(a), Daniels surviving Parents are entitled to bring this action for damages.

121.     As a direct result of the actions and failures to act of La Quinta as stated herein, Daniel shaver was physically assaulted resulting in his death.

122.     Plaintiffs have suffered the following damages and are entitled to, at a minimum, compensation for the loss of consortium, love, affection, companionship, care, protection and guidance since the death and in the future; for the pain, grief, sorrow, anguish, stress, shock, and mental suffering already experienced, and reasonably probable to be experienced in the future; for any income and services that have already been lost as a result of the death, and that are reasonably probable to be lost in the future; for any reasonable expenses of funeral and burial; for the reasonable expenses of necessary services due to his death; and for related damages.

123.     The conduct that La Quinta was engaged in included negligence, intent to cause injury, was wrongful conduct motivated by spite or ill will and acted to serve their own interests, having reason to know and consciously disregarding a substantial risk that their conduct might significantly injure the rights of or cause the death of Daniel.  La Quinta consciously pursued a course of conduct knowing that it created a substantial risk of significant harm to Daniel.

124.     Moreover, deterrence and punishment are appropriate.

125.     Plaintiffs are therefore entitled to damages in an amount to be determined at trial including punitive damages in an amount sufficient to punish and deter future similar conduct.

126.     The Plaintiffs are entitled to recovery of taxable costs, including per the terms of A.R.S. § 12-341.

**JURY TRIAL**

127.    Plaintiffs hereby request and demand a trial by jury.


**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for damages and for judgment against Defendants as follows:

a)  Awarding the Plaintiffs all their damages against all Defendants, including all actual, compensatory, consequential and incidental damages, in an amount to be proven at trial;

b)  Awarding the Plaintiffs punitive damages in an amount deemed just and reasonable against defendants Brailsford, Langley, Doane, Elmore, Cochran and Gomez in their individual capacities and also defendant La Quinta as to the causes of action, claims, and theories of relief alleged herein in an amount sufficient to punish and deter similar conduct;

c)  Awarding Plaintiffs their reasonable costs and attorney's fees against all Defendants as to the causes of action, claims, and theories of relief alleged herein under the Constitution and laws of the United Sates and Arizona, pursuant to 42 U.S.C. §§ 1983, 1985, 1988, A.R.S. § 12-341, and A.R.S. § 39.121.02(B);

d)  Awarding Plaintiffs all remedies provided under State and Federal law; and

e)  Awarding such other and further relief, which the Court deems just and reasonable under the circumstances.

1    DATED this 15th day of August, 2017.

2                                              BUDGE LAW FIRM, PLLC

3

4                                    By:      /s/ Sven K. Budge
                                             Sven K. Budge
5                                            1134 E. University Dr., Suite 121
                                             Mesa, AZ 85203
6                                            *Attorney for Plaintiffs*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26