James J. Belanger, No. 011393
J. BELANGER LAW PLLC
PO Box 447
Phoenix, Arizona 85280-0447
(602) 224-0999
jjb@belangerlaw.com

Spencer G. Scharff, No. 028946
GODDARD LAW OFFICE PLC
502 W. Roosevelt Street
Phoenix, Arizona 85003
(602) 739-4417
scharff@goddardlawplc.com

*Attorneys for Defendant*
Charles Langley

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Laney Sweet, an individual, et al., | NO. CV-17-00152-PHX-GMS **LEAD CASE** |
| Plaintiffs, | |
| v. | **CONSOLIDATED WITH:** No. CV-17-00715-PHX-GMS |
| City of Mesa, et al., | **DEFENDANT LANGLEY'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT [DOC. 51]** |
| Defendants. | |
| Grady Shaver, et al. | |
| Plaintiffs, | |
| v. | |
| City of Mesa, et al., | |
| Defendants. | |

**INTRODUCTION**

Despite Plaintiffs' retreat from their own allegations and complete reliance on unwarranted inferences, their Opposition to the Motion to Dismiss ("MTD") makes clear that the Third Amended Complaint ("TAC") fails to state a plausible claim for relief against Langley. Notably, the Plaintiffs fail to address many of the dispositive arguments raised in Langley's Motion. For example, Plaintiffs do not dispute that:

- Langley's pre-seizure conduct is irrelevant to evaluating Plaintiffs' § 1983 claims, MTD at 8:5–19;
- Langley did not touch Shaver before he was shot, *id*. at 8:20–21;
- "Plaintiffs merely allege that Langley 'made threats' when communicating to Shaver," *id*. at 8:22–9:1;
- Threats alone are not actionable under § 1983, *id*. at 9:1–7;
- Langley was required to warn Shaver that deadly force could be deployed against him, *id*. at 10:6–16; and
- Plaintiffs do not allege that Langley had any reason to believe that Brailsford would engage in any unconstitutional conduct, *id*. at 13:13–14.[1]

In doing so, Plaintiffs have effectively conceded the merits of Langley's Motion.[2] Thus, the Court should grant Langley's Motion to Dismiss and deny leave to amend.

---

[1] This list is not exhaustive. Plaintiffs also expressly concede that their Second Claim for Relief should be dismissed without leave to amend as it pertains to Langley in his official capacity. *See* Pls. Opp. at 7; MTD at 7.

[2] *See Bancoult v. McNamara*, 227 F. Supp. 2d 144, 149 (D.D.C. 2002) ("If the opposing party files a responsive memorandum, but fails to address certain arguments made by the moving party, the court may treat those arguments as conceded, even when the result is dismissal of the entire case.") (citations omitted); *see also* L.R. Civ. 7.2(i).

**ARGUMENT**

**I. PLAINTIFFS CANNOT SERVE A NOTICE OF CLAIM ON A PUBLIC EMPLOYEE THROUGH THEIR PUBLIC EMPLOYER**

Plaintiffs concede that they did not personally serve Langley or an authorized agent with their notice of claim and that they did not mail the notice of claim directly to Langley. Instead, Plaintiffs contend that they "'filed' their Notice of Claim with Langley by delivering it to his place of employment via a courier with proof of delivery." Pls.' Opp. at 5.[3] Arizona courts, however, have consistently rejected the notion that a plaintiff can serve a notice of claim on a public employee through their employer.

For example, in *Simon v. Maricopa Med. Ctr.*, 225 Ariz. 55 (App. 2010), the plaintiff attempted to serve Phoenix police officers with a notice of claim, but mailing the notice of claim to the City of Phoenix. *Id*. at 61. The court held that such service was insufficient: "To perfect his claims against an individual officer, Simon had to deliver a notice of claim to the officer personally, an individual of suitable age and discretion residing with the officer, or the officer's appointed agent." *Id*.; *see also Drake v. City of Eloy*, No. 14-670, 2014 WL 3421038, at *2 (D. Ariz. July 14, 2014) (Campbell, J.) ("Simply because Crane is employed by the City of Eloy and Pitman is his supervisor does not give Pitman actual or apparent agency authority to accept service on Crane's behalf."); *Strickler v. Arpaio*, No. 12-344, 2012 WL 3596514, at *2 (D. Ariz. Aug. 21, 2012) (Snow, J.) ("[T]hat Deputy Edwards–El is employed by the MCSO does not give the MCSO actual or apparent agency authority to accept notices of claims on his

---

[3] Plaintiffs attached a copy of their "AMENDED NOTICE OF GOVERNMENT ENTITY CLAIM" dated July 6, 2016 to their concurrently-filed Opposition [Doc. 87-1]. The Exhibit, however, does not include any "proof of delivery."

3

behalf.")[4]  Here, as in *Simon*, *Drake*, and *Stickler*, Plaintiffs simply "filed" their Notice of Claim with Langley's employer.

Plaintiffs also cite to *Lee v. State*, 218 Ariz. 235 (2008), to argue that strict application of Rule 4.1 to notices of claim is not required under A.R.S. § 12-821.01. *See* Pls.' Opp. at 4.  In *Lee*, the Arizona Supreme Court interpreted the word "file" in A.R.S. § 12-821.01 to include regular mail delivery subject to the "mail delivery rule."  218 Ariz. at 237, 239.  Plaintiffs' reliance on *Lee* is misplaced.

First, *Lee* concerned a claim filed against a public *entity*, not a public *employee*.  Second, *Lee*'s interpretation of the word "file" did not deal with *whom* the notice was filed.  *Lee*'s interpretation is not inconsistent with the Arizona Rules of Civil Procedure because "nothing in the rules defines how filing must occur.  The rules do not prohibit mail as a form of filing [notices of claim]."  *Id*. at 238.  In contrast, *Lee* noted that Rule 4.1 "clearly" sets forth the person or persons authorized to accept service.  *Id*.  It is well established that filing only with the persons authorized by Rule 4.1 is mandatory.  *See Falcon ex rel. Sandoval v. Maricopa Cnty.*, 213 Ariz. 525, 529–31 (2006) (holding the court's general duty to liberally construe procedural rules to avoid creating a trap for the unwary did not apply "because Rule 4.1(i) plainly lists the entities or persons who are authorized to accept service"; filing with one member of the Board of Supervisors ineffective because the entire Board acted as chief executive officer of the county); *Slaughter v. Maricopa Cnty.*, 227 Ariz. 323, 325–26 (App. 2011) (holding the plaintiff's

---

[4] To the extent that Plaintiffs were unable to obtain Langley's mailing address, *see* Pls.' Opp. at 5, Rule 4.1 provides options for alternative service.  *See* Rule 4.1(k), (l). Plaintiffs, however, did avail themselves of these alternatives.

4

failure to serve the Arizona Attorney General with her notice of claim in compliance with Rule 4.1 barred her claims against the State, even though she mistakenly believed she was employed by the county, not the State); *Young v. City of Scottsdale*, 193 Ariz. 110, 114 (App. 1998), *disapproved of on other grounds by Deer Valley Unified Sch. Dist. No. 91 v. Houser*, 214 Ariz. 293 (2007) (filing of a notice of claim is defective when the claimant sends the notice to the city attorney instead of sending it to an authorized person listed in Rule 4.1(i)).

Plaintiffs did not file their Notice of Claim with Langley or any person authorized to accept service on his behalf. Therefore, Plaintiffs did not comply with A.R.S. § 12–821.01(A) in connection with their state law wrongful death claim against Langley, and it must be dismissed without leave to amend.

## II. ISSUING DEADLY-FORCE WARNINGS TO A SUSPECT CANNOT AND SHOULD NOT GIVE RISE TO § 1983 LIABILITY

Plaintiffs contend that the warnings Langley issued to Shaver demonstrate that Langley encouraged Brailsford to shoot Shaver. *See* Pls.' Opp. at 12:16–17. In fact, the *only* allegations from the TAC quoted in Plaintiffs' Opposition concern the alleged warnings. *See* Pls.' Opp. at 10:12–16; 12:3–5; 12:16–21. As noted above, however, Plaintiffs do not dispute that Langley was required to issue such warnings. *See* MTD at 10:6–16. Plaintiffs thus fail to address the significant public policy problems that would be created if such warnings could give rise to § 1983 liability. Plaintiffs likely ignored this issue because they recognize that no court would be willing to place law enforcement officers in such an untenable bind.

Regardless, assuming *arguendo* that such warnings could give rise to § 1983 liability, Plaintiffs fail to identify any case that would have given notice to Langley that his conduct—issuing deadly-force warnings to a suspect—would make him liable for another officer's use of deadly force. *Cf. Reynolds v. Cnty. of San Diego*, 84 F.3d 1162, 1169 (9th Cir. 1996) ("An officer *cannot* be expected to accurately anticipate all of the possible responses a subject may have to his commands and then tailor his actions accordingly in order for his conduct to fall into the category of what is considered reasonable.") (emphasis added), *overruled on other grounds by Acri v. Varian Assocs., Inc.*, 114 F.3d 999 (9th Cir. 1997). Thus, Langley is entitled to qualified immunity because, at the time of the incident, it was not clearly established that Langley's conduct violated any constitutional rights.

### III. LANGLEY IS NOT LIABLE FOR BRAILSFORD'S CONDUCT

#### A. Plaintiffs Fail to Establish Supervisory Liability.

Plaintiffs assert in their Opposition that Langley both directed and encouraged Brailsford to shoot Shaver. Pls.' Opp. at 12. Yet, these allegations are *not* asserted in the TAC. Rather, as noted above, Plaintiffs' allegations establish that Langley warned Shaver that he would be hurt if he did not comply with his commands. These warning were issued in the hope that Shaver would comply with the commands and thus *avoid* the use of force. Concluding otherwise would amount to an unwarranted inference insufficient to defeat Langley's Motion to Dismiss. *See Doe I v. Wal–Mart–Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009).

Moreover, Plaintiffs' attempt to rely on *Harris v. Roderick* to support attaching liability to Langley's conduct rings hollow. In *Harris*, supervisory liability hinged on the plaintiff's allegation that the subordinate FBI agents were given orders to "shoot on sight" *without warning*:

> It is clear that the Special Rules that required the FBI agents to kill "any armed adult male" in the vicinity of the Weaver cabin mandated an unconstitutional use of force, and that no reasonable officer could have believed otherwise. The Rules instructed the officers that they "could and should" kill any adult male armed with a weapon in the vicinity of the Weaver cabin, regardless of whether he was threatening the officers or any other persons. *No mention of a warning is made anywhere in the Special Rules*. Instead, the Special Rules constituted a shoot-on-sight edict. Although an officer had been killed in a shootout and armed persons believed to be responsible for his death remained in the area, so extreme an order is patently unjustified.

126 F.3d 1189, 1202 (9th Cir. 1997) (emphasis added). In sum, Plaintiffs ask this Court to turn the holding in *Harris* on its head and find that Langley's warnings to Shaver provide the basis for supervisory liability. This Court should deny this ill-conceived request and dismiss Plaintiffs' § 1983 claims against Langley.

### B. Plaintiffs Cannot Impute Brailsford's Conduct on Langley.

Plaintiffs contends that Langley's conduct shocked the conscience, but the conduct ascribed to Langley is either not in the TAC or attributed to Brailsford. For example, Plaintiffs claim that Langley "unjustifiably held [Shaver] at gunpoint," Pls.' Opp. at 2:22, but such an allegation is not in the TAC.[5] Plaintiffs also claim that Langley "killed [Shaver] without any justification," Pls.' Opp. at 2:23, but the TAC alleges that only one

---

[5] The TAC alleges that the "five to six police officer . . . including Brailsford" pointed their weapons at Shaver, TAC ¶ 41, but never expressly alleges that Langley was one of them.

7

officer discharged their firearm and that officer was not Langley. *See* TAC ¶ 52. In fact, as noted above, Plaintiffs concede that Langley did not even touch Shaver before he was shot.[6] Even if Plaintiffs have sufficiently alleged that Langley was negligent, such allegations are insufficient to establish that his conduct violated their Fourteenth Amendment rights. *See* MTD at 10–11.

### IV. PLAINTIFFS' REQUEST FOR PUNITIVE DAMAGES AGAINST LANGLEY SHOULD BE DISMISSED

Plaintiffs contend, without providing any citation to the TAC, that "a jury could find that Langley was not acting within the scope of his employment . . . ." Pls.' Opp. at 13:16–17. Plaintiffs do not dispute, however, that the TAC alleges that Langley was "at all times relevant to the claims" acting in the course and scope of his employment with the Mesa Police Department. MTD at 13–14. Therefore, Langley is not liable for punitive damages on any state law claim pursuant to A.R.S. § 12-820.04.

In connection with Plaintiffs' request for punitive damages under his § 1983 claims, Plaintiffs' Opposition merely cites an Arizona Court of Appeals decision that held that a plaintiff does not have standing to bring a § 1983 familial association claim unless the constitutional violation based on official actions were "directed at the parent-child relationship," *Braillard v. Maricopa Cnty.*, 224 Ariz. 481, 489 (App. 2010). Pls.' Opp. at 13. Far from bolstering their claims to punitive damages, Plaintiffs' reliance on *Braillard* undermines their entire Fourteenth Amendment claim. Regardless, Plaintiffs

---

[6] Although Plaintiffs contend that there was time for actual deliberation, Plaintiffs do not address their own allegation that Brailsford's use of force occurred in an "instant," foreclosing the possibility for actual deliberation. MTD at 11.

8

do not dispute, and therefore concede, that they are not entitled to punitive damages because "Langley had a legal right and duty to act as he did." MTD at 14:12–13.

## V. CONCLUSION

For the foregoing reasons, the TAC should be dismissed.

Respectfully submitted this 9th day of October 2017.

**J. BELANGER LAW PLLC**

By: *s/ James J. Belanger (w/ permission)*
James J. Belanger

Spencer G. Scharff
GODDARD LAW OFFICE PLC

*Attorneys for Defendant*
Charles Langley

**CERTIFICATE OF SERVICE**

I hereby certify that on October 9, 2017, I electronically transmitted the above document to the Clerk's office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all CM/ECF registrants.

*s/Spencer G. Scharff*_____