**WO**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Laney Sweet, | No. CV-17-00152-PHX-GMS |
| Plaintiff, | **LEAD CASE** |
| v. | **CONSOLIDATED WITH:** |
| City of Mesa, et al., | No. CV-17-00715-PHX-GMS |
| Defendants. | **ORDER** |
| Grady Shaver, et al. | |
| Plaintiffs, | |
| v. | |
| City of Mesa, et al., | |
| Defendants. | |

Pending before the Court are multiple Motions to Dismiss against both groups of Plaintiffs in this consolidated case. As to Plaintiffs Laney Sweet, E.S., N.S., and the Estate of Daniel Shaver ("the Sweet Plaintiffs"), Defendants Philip and Corrine Brailsford (Doc. 82), Defendants City of Mesa, Bryan Cochran and Jane Doe Cochran, Christopher Doane and Jane Doe Doane, Brian Elmore and Jane Doe Elmore, and Richard Gomez and Jane Doe Gomez (Doc. 83), and Defendant Charles Langley (Doc. 78) seek dismissal of some of the Sweet Plaintiffs' claims. The same Defendants seek dismissal of some or all of the Shaver Plaintiffs' claims. (Docs. 77, 81, 84). For the following reasons, the Court grants the motions in part and denies the motions in part.

**BACKGROUND**

On January 18, 2016, Daniel Shaver, a resident of Texas, was visiting Arizona and staying at a La Quinta Inn & Suites in Mesa. Mr. Shaver worked as a pest eradication specialist and was in Arizona on business. Mr. Shaver's job required him to carry pellet rifles and Mr. Shaver kept those in his hotel room to prevent theft. In the evening, Mr. Shaver ordered a pizza to his room and invited two other La Quinta guests, Monique Portillo and Luis Nunez, into his room to socialize.

At some point, a member of the La Quinta hotel staff placed a call to 911, reporting that someone had told staff of an individual pointing a gun out of a hotel window. After receiving the report, Leticia Jimenez, a front desk employee, went outside to determine which hotel room was at issue. Ms. Jimenez was able to identify the room as Mr. Shaver's. Ms. Jimenez went up to Mr. Shaver's room, and saw a Hispanic male with a rifle in his hands. Because Ms. Jimenez was acquainted with Mr. Shaver, she knew that the individual holding the rifle was not Mr. Shaver.

By 9:15 p.m., multiple Mesa Police Department ("MPD") officers arrived at the La Quinta hotel. These officers included the Defendants Philip Brailsford, Charles Langley, Christopher Doane, Richard Gomez, Brian Elmore, and Bryan Cochran. Sergeant Langley was the senior responding officer and was in command of the other officers at the scene. At Sergeant Langley's direction, the MPD team moved up to Mr. Shaver's room.  The MPD officers did not speak with La Quinta employees about the situation before doing so.

An MPD officer called Mr. Shaver's room and told the inhabitants to exit the room into the hallway. Mr. Shaver and Ms. Portillo did so immediately (Mr. Nunez had left the room prior to MPD's arrival). After entering the hallway, Sergeant Langley stated "Alright, if you make another mistake, there's a very severe possibility you're both going to get shot." When Mr. Shaver attempted to speak, Sergeant Langley said "This is—shut up. I'm not here to be tactful and diplomatic with you. You listen, you obey." Sergeant Langley then asked Mr. Shaver to place his hands on the back of his head and interlace

his fingers. Mr. Shaver did so. Next, Sergeant Langley instructed Mr. Shaver to cross his left foot over his right foot. Mr. Shaver did so. Sergeant Langley told Mr. Shaver "If you move, we're going to consider that a threat and we are going to deal with it and you may not survive it."

The MPD officers worked to take Ms. Portillo into custody. Ms. Portillo had a purse, and was instructed by the officers to leave the purse in the hallway as she crawled towards the officers to be handcuffed. Sergeant Langley told Mr. Shaver to move into a kneeling position. This change in position caused Mr. Shaver to uncross his legs, which resulted in an immediate reaction and instruction from Sergeant Langley that Mr. Shaver was to keep his legs crossed. Mr. Shaver moved to put his hands behind his head, a movement which also elicited a response from Sergeant Langley. In response, Mr. Shaver began crying, asking the officers not to shoot him, and responding to the officers' requests with "yes sir." Sergeant Langley told Mr. Shaver to begin crawling towards the officers, which required Mr. Shaver to crawl over Ms. Portillo's purse. While doing so, Mr. Shaver's athletic shorts began falling down. Mr. Shaver reached backwards towards his pants. At the sight of Mr. Shaver's movement, Officer Brailsford fired five shots from his AR-15. Mr. Shaver died as a result of the shooting. After the shooting, Officer Brailsford was fired from the MPD force and Sergeant Langley took an early retirement from the MPD. Officers Cochran, Doane, Elmore, and Gomez remain employed by MPD.

Mr. Shaver's wife, Laney Sweet, filed an action on behalf of herself, her minor children (E.S. and N.S.), and Mr. Shaver's estate. Mr. Shaver's parents, Grady and Norma Shaver, filed an action on behalf of themselves. Both sets of plaintiffs sued the City of Mesa and the individual officers at the scene of Mr. Shaver's death. The various defendants now move to dismiss portions of both the Sweet and the Shaver complaints.

## DISCUSSION

### I.   Legal Standard

"A Rule 12(b)(6) motion tests the legal sufficiency of a claim." *Navarro v. Block*,

250 F.3d 729, 732 (9th Cir. 2001). "In deciding such a motion, all material allegations of the complaint are accepted as true, as well as all reasonable inferences to be drawn from them." *Id.* However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), a complaint must contain more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action"; it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). A plaintiff must allege sufficient facts to state a claim to relief that is plausible on its face. *Iqbal*, 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

II.     **Analysis**

    A.     **The Sweet Complaint**

        1.     **Count One: Wrongful Death by Laney Sweet, E.S., and N.S.**

The Sweet Plaintiffs bring a claim for wrongful death against all Defendants, pursuant to A.R.S. § 12-611. Defendant Langley moves to dismiss claims for punitive damages arising out of the state claims as barred by A.R.S. § 14-3110. Because punitive damages arising under state law claims are not recoverable against public employees acting within the scope of their public responsibilities, and the Complaint pleads that they were so acting, the Court dismisses punitive damages on the state law claims against Defendant Langley. The Court similarly dismisses punitive damages against Defendants Brailsford, Cochran, Doane, Elmore, and Gomez on the state law claims. At the time of the incident, they were also public employees acting within the scope of the public responsibilities.

### 2.    Count Three: § 1983 Claim by the Estate of Daniel Shaver for Violations of the Fourth and Fourteenth Amendments

The Sweet Plaintiffs, on behalf of the Estate of Daniel Shaver, allege violations of the fourth and fourteenth amendments including violations of the rights to be free from: (1) unreasonable seizures; (2) excessive force; (3) deprivation of life, liberty, or property without due process of law; (4) summary punishment; and (5) arbitrary governmental activity. (Doc. 53, ¶ 213). This count is brought against "all Mesa defendants." *Id*. at p. 10. Although not specified in Count Three itself, the Sweet Plaintiffs sued all of officers in both their individual and official capacity. *Id*. at ¶ 2.

Defendants Brailsford and Langley argue that a § 1983 suit against the officers in their official capacity is duplicative of the suit against the City of Mesa. This is the same argument advanced by the Defendants in response to Count Two of the Shaver Complaint.[1] The Sweet Plaintiffs respond that the Complaint does not seek to bring duplicative claims.[2] Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . ., subjects or caused to be subjected, any citizen of the United States . . . to the deprivation of any rights privileges or immunities secured by the Constitution and laws, shall be liable to the party injured." Local municipalities and government units are considered a "person" under § 1983. *Monell v. Dept. of Soc. Services of City of New York*, 436 U.S. 658, 690–93 (1978) (holding that "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983"). Suits against government officials in their official capacity "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Id*. at

---

[1] *See* Section II.B.2 below.

[2] The Sweet Plaintiffs assert that "rather, the Amended Complaint states claims against Brailsford in his individual capacity and against the City of Mesa for his official actions." (Doc. 99, p. 4). The Sweet Plaintiffs incorporate this same argument in response to Defendant Langley. (Doc. 100, p. 4).

690, n. 55. An official capacity suit, therefore, is "to be treated as a suit against the entity. . . . for the real party in interest is the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Thus, "if individuals are being sued in their official capacity as municipal officials *and* the municipal entity itself is also being sued, then the claims against the individuals are duplicative and should be dismissed." *Vance v. County of Santa Clara*, 928 F.Supp. 993, 996 (N.D. Cal. 1996). Based on the Sweet Plaintiffs' representations, the Court understands the Sweet Plaintiffs to be bringing a § 1983 claim against the City of Mesa for any violations its employees took in their official capacity and a § 1983 claim against the officers in their individual capacity. Thus, Plaintiffs' claims against the Defendants in their individual capacities are not dismissed, but claims against the individual officers in their official capacity are dismissed.

Next, all Defendants argue that claims under the Fourth and the Fourteenth Amendments are duplicative.[3] The Supreme Court has held that "*all* claims that law enforcement officers have used excessive force . . . in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Graham v. Connor*, 490 U.S. 386, 395 (1989). This is because "the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct" and is therefore better than "the

---

[3] Defendants City of Mesa, Cochran, Doane, Elmore, and Gomez misread the Sweet Complaint. They argue that Laney Sweet, E.S., and N.S. are bringing a § 1983 claim on their own behalf for a violation of the Fourteenth Amendment's right to familial association. (Doc. 83, p. 8). In fact, the Sweet Plaintiffs are asserting a Fourteenth Amendment violation on behalf of the Estate of Daniel Shaver. (Doc. 53, p. 47). The Defendants state that "Plaintiffs' Amended Complaint continues to lump together the claims made on behalf of the Estate and Ms. Sweet, E.S. and N.S. continuing a lack of clarity regarding what claims are actually intended to be asserted." (Doc. 83, p.8, n. 4). The Sweet Plaintiffs' Complaint clearly states that the Fourth and Fourteenth Amendment claims are brought by "Estate of Daniel Shaver—Plaintiff." (Doc. 53, p. 47). Because the Defendants also include a footnote stating that "[t]o the extent that Plaintiffs attempt to also assert a Fourteenth Amendment claim on behalf of the Estate, this claim should also be dismissed" as duplicative with the Fourth Amendment claim, the Court will consider Defendants City of Mesa, Cochran, Doane, Elmore, and Gomez to have raised this argument in addition to Defendants Langley and Brailsford. (Doc. 83, p.8, n. 4).

more generalized notion of 'substantive due process'" to evaluate claims. *Id.* Plaintiffs may still maintain separate Fourth and Fourteenth Amendment claims, but if the Fourteenth Amendment claim is identical to the Fourth Amendment claim, the Court will dismiss the Fourteenth Amendment claim. *See, e.g.*, *Mays v. Gillespie*, No. 15-CV-01333-RFB-NJK, Doc. , *2 (D. Nev. July 22, 2016); *Johnson v. City of Berkeley*, No. 15-CV-05343-JSC, Doc., *7 (N.D. Cal. Mar. 11, 2016); *Stein v. City of Piedmont*, No. 16-CV-01172-JCS, Doc., *4–5 (N.D. Cal. Aug. 15, 2016). At this early stage in the litigation, the Court will not dismiss the Fourteenth Amendment claims. Defendant Langley, for example, appears to argue that some of the encounter with Mr. Shaver occurred before Mr. Shaver was officially seized. Factual development is required to before determining when the seizure of Mr. Shaver began. The Sweet Plaintiffs' Complaint also alleges that Defendants failed to properly investigate the scene prior to moving up to Mr. Shaver's hotel room. If there is pre-seizure conduct by the Defendants, that conduct would be analyzed under a Fourteenth Amendment lens.[4]

Finally, Defendant Langley asserts an entitlement to qualified immunity. Qualified immunity "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). It is "an immunity from suit rather than a mere defense to liability" and "is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 51, 526 (1985). Courts must answer two questions in the affirmative to determine that the officer is entitled to qualified immunity: (1) whether the officer violated a constitutional right; and (2) whether that right was clearly

---

[4] In the Response to Defendant Brailsford's Motion, the Sweet Plaintiffs argue that "Brailsford ignored that the Plaintiffs' claims include the claims of minor children and a spouse for the deprivation of their relationship with their father and husband. That sort of government-caused deprivation implicates both an actionable Fourteenth Amendment substantive due process right and an actionable Fourteenth Amendment due process right." (Doc. 99, p. 8). However, the Sweet Complaint does not set forth such a cause of action. Count III, alleging violations of the fourth and fourteenth amendment, lists the Estate of Daniel Shaver as the plaintiff and no one else. (Doc. 53, p. 47).

established at the time of the officer's alleged misconduct. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). The Sweet Plaintiffs assert an integral participation theory. (Doc. 100, p. 12); (Doc. 101, p. 11). An integral participation claim "does not require that each officer's actions themselves rise to the level of a constitutional violation." *Boyd v. Benton*, 374 F.3d 773, 780 (9th Cir. 2004). The integral participation theory allows a plaintiff to "extend[ ] liability to those actors who were integral participants in the constitutional violation, even if they did not directly engage in the unconstitutional conduct themselves." *Hopkins v. Bonvicino*, 573 F.3d 752, 770 (9th Cir. 2009). For example, an officer who "stands at the door, armed with his gun, while other officers conduct the [unconstitutional] search" is an integral participant in the constitutional deprivation. *Boyd*, 374 F.3d at 780. But, "an officer who waits in the front yard interviewing a witness and does not participate in the unconstitutional search" is not an integral participant. *Hopkins*, 573 F.3d at 770. Accepting the Sweet Plaintiffs' factual pleadings as true, Defendant Langley in his supervision of the scene, and by his treatment of and instructions to Mr. Shaver may have created an environment that heightened the likelihood, if it did not directly result in, Defendant Brailsford shooting Mr. Shaver. Under such a theory, Defendant Langley was an integral participant in setting in motion the events that led to Mr. Shaver's death. Moreover, the constitutional violation at issue is Defendant Brailsford's excessive force and unlawful seizure of Mr. Shaver by lethally shooting him. On the Sweet Plaintiffs' facts, it is clearly established that an officer may not shoot a citizen who is unarmed and complying with officers' instructions. *See Tennessee v. Garner*, 471 U.S. 1, 11 (1985) ("A police officer may not seize an unarmed, nondangerous suspect by shooting him dead."). Given the early-stage posture of this case, the Court denies Defendant Langley's motion to dismiss on qualified immunity grounds.

Defendant Langley asserts that punitive damages are not appropriate. Punitive damages are allowed under § 1983 "when a defendant's conduct was driven by evil motive or intent, or when it involved a reckless or callous indifference to the

constitutional rights of others." *Dang v. Cross*, 422 F.3d 800, 807 (9th Cir. 2005) (quoting *Morgan v. Woessner*, 997 F.2d 1244, 1255 (9th Cir. 1993)). Plaintiffs have pled and a jury could find that Defendant Langley acted with reckless or callous indifference. Defendant Langley's motion to dismiss punitive damages claims is denied.

### 3. Count Four: § 1983 Claim by Laney Sweet, E.S., and N.S. for Violations of the First Amendment

Plaintiffs Laney Sweet, E.S., and N.S. bring a § 1983 claim for violations of their First Amendment rights. The Sweet Plaintiffs allege that the Defendants prepared false police reports, denied public records requests for the Officers' body camera footage, withheld information about her husband's death. Additionally, the Sweet Plaintiffs argue that the Defendants have worked with the Maricopa County Attorney's Office—the department in charge of the criminal prosecution of Defendant Brailsford—to deny access to the body camera footage. During the prosecution of Defendant Brailsford, the Maricopa County Superior Court sealed the body camera footage and barred MPD from releasing it. According to the Sweet Plaintiffs, these actions violated their First Amendment rights by preventing them from countering false narratives in a "highly charged" environment. (Doc. 53, pp. 31–33). The Sweet Plaintiffs also assert that the lack of access to the body camera footage has prejudiced them in this litigation from identifying all claims and causes of action they might have against the Defendants or other unknown participants.

Defendants City of Mesa, Langley, Cochran, Doane, Elmore, and Gomez move to dismiss Count Four as not ripe.[5] The Defendants claim that the Sweet Plaintiffs have litigated this lawsuit, were provided an opportunity to be heard in the criminal case, and have mounted a public relations campaign in support of the decedent, and as such they cannot show a harm from the Defendants' actions. The Sweet Plaintiffs  bring two general categories of claims. First, the Sweets allege that MPD's withholding of information prevented Ms. Sweet from mounting a public relations campaign in defense

---

[5] Plaintiff does not address Defendant Langley's arguments regarding the First Amendment violation in Plaintiff's response. (Doc. 100).

of Mr. Shaver. Second, the Sweet Plaintiffs allege that the withholding of information and a cover-up amongst MPD officials harmed Ms. Sweet's ability to fully litigate her claims.[6] As to the first category of claims, the Sweet Plaintiffs have provided no authority to support the argument that Defendants violated Ms. Sweet's constitutional rights to publicly challenge information in the media and advocate with government agencies on policing reforms. The Sweet Plaintiffs cite *Carey v. Brown*, 447 U.S. 455 (1980) for the proposition that such interests are protectable. But *Carey* addresses the constitutionality of a state statute regulating picketing in residential areas and equal protection violations. *Carey* does not stand for the proposition that Ms. Sweet has a right to "publicly challenge and forcibly contest with accurate information the incendiary Facebook post of the Mesa Police Association," a right "to take a full accounting of the facts to the Mesa City Council, Mesa Mayor, . . . and other governmental entities . . . that might hear her ideas about how they can implement better investigatory, threat assessment and de-escalation protocols," or a right "to honor her husband's memory and petition for government improvements of police practices." (Doc. 101, p. 7). The Sweet Plaintiffs have not stated a First Amendment § 1983 claim under this theory.

The Sweet Plaintiffs' second argument is best categorized as a claim for denial of access to courts, as a result of a cover-up. The Supreme Court has identified two main types of access to court cases. In the first category, the claims are "that systemic official action frustrates a plaintiff . . . in preparing and filing suits at the present time." *Christopher v. Harbury*, 536 U.S. 403, 413 (2002). The object of the suit is "to place the

---

[6] The Sweet Plaintiffs also argue that "[o]nce the government makes information publicly available, as Arizona law does with the City of Mesa's records, the withholding of that information by a city to prevent its use as political speech against the acts of the city represents a violation of the First Amendment." (Doc. 101, pp. 7–8). The Sweet Plaintiffs cite only one case for this proposition, *Los Angeles Police Dept. v. United Reporting Pub. Corp.*, 528 U.S. 32 (1999), and rely entirely on a concurrence. That case dealt with a question of whether a California statute regulating access to arrestees' addresses was facially unconstitutional. It does not provide support for the Sweet Plaintiffs' claims here. Moreover, Count Nine of the Sweet Complaint alleges violations of Arizona's public records laws. (Doc. 53, pp. 59–61). No Defendant has moved to dismiss any aspect of this Count and the Sweet Plaintiffs remain able to litigate this claim.

plaintiff in a position to pursue a separate claim for relief once the frustrating condition has been removed." *Id*. The Court's understanding is that the body camera footage has now been made public, as Defendant Brailsford's criminal trial has concluded. Given that, at present, the official action frustrating the Sweet Plaintiffs has been removed, the Sweet Plaintiffs could not proceed under this theory. In the second category, the "official acts claimed to have denied access may allegedly have caused the loss or inadequate settlement of a meritorious case, . . . the loss of an opportunity to sue, . . . or the loss of an opportunity to seek some particular order of relief." *Id*. at 414. The object of this suit "is not the judgment in a further lawsuit, but simply the judgment in the access claim itself, in providing relief obtainable in no other suit in the future." *Id*. If, in fact, the Sweet Plaintiffs have been harmed by the lack of information and a cover-up, this claim is not yet ripe. The Sweet Plaintiffs' claims are still pending. *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 625 (9th Cir. 1998) (holding that the denial of access claim was not ripe when the underlying suit was ongoing and the resolution or success of it was unknown). Similarly to state a cognizable claim for a § 1983 violation by a cover-up to violate the right of access to the courts, the Sweet Plaintiffs must demonstrate that the cover-up rendered any court remedies ineffective. *See Delew v. Wagner*, 143 F.3d 1219, 1223 (9th Cir. 1998) (finding that, although the claim was not ripe, allegations that officers deliberately failed to perform a sobriety test, failed to perform a blood alcohol test, failed to preserve physical evidence, and allowed a suspect to leave the scene of an accident stated a claim for denial of access to the courts). The Sweet Plaintiffs have not made any such showing. The Ninth Circuit instructed that in such a circumstance, the district court should dismiss the complaint without prejudice so that the plaintiffs may refile if the court remedies are made ineffective. Thus, the Court dismisses Count Four without prejudice.

### 4.   Count Five: Conspiracy to Interfere with Civil Rights

In Count Five, the Sweet Plaintiffs allege that the Defendants conspired to limit disclosure of information, construct a false narrative and create inaccurate reports, and

impair the investigation of Daniel's death. The Sweet Plaintiffs also allege that the Defendants conspired to refuse to inform Ms. Sweet of her husband's death and to refuse to respond to the public records inquiries and requests. (Doc. 53, pp. 52–56). The Sweet Complaint references § 1983, 42 U.S.C. § 1985, and the First Amendment, but is not particularly clear on what the cause of action is or what the underlying deprivation is. Defendants City of Mesa, Langley, Cochran, Doane, Elmore, and Gomez move to dismiss the claims, arguing that Plaintiffs have not plead any discriminatory animus, as required by § 1985. Section 1985(3) provides that "[i]f two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws . . . the party so injured or deprived may have an action for the recovery of damages." In response, the Sweet Plaintiffs agree and withdraw all references to § 1985. (Doc. 101, p. 11; Doc. 100, p. 17).

Although none of the parties address this, the question then becomes what remains of Count Five after § 1985 is removed. The Sweet Plaintiffs also reference § 1983 in Count Five, which can be a vehicle to assert conspiracy charges. In a claim for a conspiracy under § 1983, "a plaintiff must 'demonstrate the existence of an agreement or meeting of the minds' to violate constitutional rights." *Crowe v. County of San Diego*, 608 F.3d 406, 440 (9th Cir. 2010) (quoting *Mendocino Envtl. Ctr. v. Mendocino County*, 192 F.3d 1283, 1301 (9th Cir. 1999)). The agreement "need not be overt, and may be inferred on the basis of circumstantial evidence such as the actions of the defendants." *Mendocino Envtl. Ctr.*, 192 F.3d at 1301. At minimum, "each participant must at least share the common objective of the conspiracy." *United Steelworkers of America v. Phelps Dodge Corp.*, 865 F.2d 1539, 1541 (9th Cir. 1989). To be liable under § 1983, the conspiracy must be aimed at violating an individual's constitutional rights. Because § 1983 requires an underlying constitutional violation, "[c]onspiracy is not itself a constitutional tort under § 1983." *Lacey v. Maricopa County*, 693 F.3d 896, 935 (9th Cir. 2012). A conspiracy claim under § 1983 "does not enlarge the nature of the claims

asserted by the plaintiff." *Id.* The only constitutional violation alleged in the Complaint is a violation of the First Amendment. (Doc. 53, ¶ 257). But, as this Court has just noted that claim is not a viable First Amendment claim. Therefore, the Court dismisses Count Five.

> **5.   Count Six: Intentional Infliction of Emotional Distress Claim by Laney Sweet, E.S., N.S., and the Estate of Daniel Shaver**

The Sweet Plaintiffs bring two sets of claims of intentional infliction of emotional distress (IIED): one on behalf of Laney Sweet, E.S., and N.S., and one on behalf of the Estate of Daniel Shaver. As to the claim by Laney Sweet, E.S., and N.S., all Defendants argue that the Sweet Plaintiffs fail to state a claim. The Sweet Complaint is not clear on which actions of the Defendants give rise to Laney Sweet, E.S., and N.S.'s IIED claim. In response to Defendant City of Mesa, Cochran, Doane, Elmore, and Gomez's Motion to Dismiss, the Sweet Plaintiffs state that "the living Plaintiffs' claims seek damages for the Defendants' concerted efforts to cover-up and prevent Plaintiffs from knowing the full wrongdoing in the torture and killing of Daniel."[7] (Doc. 101, pp. 3–4). In Arizona, there are three elements in an IIED claim: "*first*, the conduct by the defendant must be 'extreme' and 'outrageous'; *second*, the defendant must either intend to cause emotional distress or recklessly disregard the near certainty that such distress will result from his conduct; and *third*, severe emotional distress must indeed occur as a result of the defendant's conduct." *Ford v. Revlon, Inc.*, 734 P.2d 580, 585 (Ariz. 1987). Viewing the facts in the light most favorable to the Sweet Plaintiffs, the Sweet Plaintiffs have stated a claim for IIED. The Sweet Plaintiffs allege that MPD failed to return Ms. Sweet's calls and inform her about Mr. Shaver's death, that the individual officers created false reports

---

[7] The Defendants assumed that the IIED claim was based on the Sweet Plaintiffs' loss of a family member, and devote most argument to that point. The Sweet Plaintiffs' Response makes clear that the IIED claim is not based on the death of Daniel. The Court agrees with both parties that no claim could be stated on these grounds. For a plaintiff "to recover for intentional infliction of emotional distress arising from death or injury to a family member, the plaintiff must allege that she was present at the time of the extreme or outrageous conduct." *McKee v. State*, 388 P.3d 14, 20 (Ariz. Ct. App. 2016). The Sweet Plaintiffs were not present at the scene of Mr. Shaver's death, so the Court confirms that an IIED claim cannot proceed on this basis.

about the events of Mr. Shaver's death, and that MPD refused to comply with a public records request for a body camera video. (Doc. 83, ¶¶ 142–61). A jury could find this conduct extreme and outrageous and either intentionally or recklessly causing emotional distress.[8]

With regard to the IIED claims brought by the Estate of Daniel Shaver, Defendants City of Mesa, Brailsford, Cochran, Doane, Elmore, and Gomez argue that damages by the Estate are precluded by Arizona statute and that all claims must be brought through the wrongful death statute. A.R.S. § 14-3110 states that "[e]very cause of action . . . shall survive the death of the person entitled thereto . . . and may be asserted by or against the personal representative of such person, provided that upon the death of the death of the person injured, damages for pain and suffering of such injured person shall not be allowed." In the IIED claim, the Sweet Plaintiffs seek damages for "emotional hard, pain and suffering, psychological injury, fear, stress, distress, despair, misery depression, and anxiety." (Doc. 53, ¶ 272). These damages are precluded by statute. *See Quintero v. Rogers*, 212 P.3d 874, 877–78 (Ariz. Ct. App. 2009) (holding that damages for loss of enjoyment of life are encompassed in the bar on pain and suffering damages). Punitive damages, however, are aimed "principally at retribution and deterring harmful conduct . . . [and] [t]hey do not compensate for a victim's injuries or pain and suffering." *Id.* at 878 (quotations and citations removed). Because punitive damages do not compensate for a victim's pain and suffering, they are not barred by § 14-3110. But, state law also provides that "[n]either a public entity nor a public employee acting within the scope of employment is liable for punitive or exemplary damages." A.R. S. § 12-

---

[8] The parties do not appear to dispute the third element: that emotional distress did occur as a result of the defendant's conduct. Defendants City of Mesa, Cochran, Doane, Elmore, and Gomez do state that "it is unknown how the minor children—who are very young—would have been privy to any of the information about the specifics of Mr. Shaver's passing, or about the information their mother did, or did not receive about his death." (Doc. 83, p. 5). This could be characterized as an argument that the severe emotional distress of E.S. and N.S. did not occur as a result of defendant's conduct. The Sweet Plaintiffs have alleged that Laney Sweet, E.S., and N.S. have suffered emotional distress, and without more, the Court cannot find that E.S. and N.S.'s emotional distress was not caused by the Defendants.

820.04. Therefore, because the only damages that would be permitted under § 14-3110 are barred in this instance by § 12-820.04, the Estate of Daniel Shaver cannot state an IIED claim. The Court grants the Motion to Dismiss Count Six as to the Estate of Daniel Shaver.

### 6.   Count Seven: Assault

The Sweet Plaintiffs, on behalf of the Estate of Daniel Shaver, allege that the "apprehension and shooting of Daniel Shaver constitutes an assault in that it placed Mr. Shaver under fear of imminent physical injury and death." (Doc. 53, ¶ 280). The Sweet Plaintiffs allege that the assault caused Mr. Shaver "non-economic psychological and emotional harms and trauma." *Id.* at ¶ 282. Defendants all move to dismiss Count Seven on various grounds. The claim is barred by A.R.S. § 14-3110. The Sweet Plaintiffs have only sought pain and suffering damages, which are extinguished upon the death of the decedent. Similarly, punitive damages are not available against public employees.

### 7.   Count Eight: Battery

The Sweet Plaintiffs, on behalf of the Estate of Daniel Shaver, allege that the "apprehension and shooting of Daniel Shaver constitutes battery against Mr. Shaver in that it caused direct physical injury to Mr. Shaver." (Doc. 53, ¶ 286). The Sweet Plaintiffs allege that the assault caused Mr. Shaver "non-economic psychological and emotional harms and trauma." *Id.* at ¶ 288. Defendants all move to dismiss Count Eight on various grounds. The claim is barred by A.R.S. § 14-3110. The Sweet Plaintiffs have only sought pain and suffering damages, which are extinguished upon the death of the decedent. Similarly, punitive damages are not available against public employees.

### B.   The Shaver Complaint

### 1.   Count One: Wrongful Death

The Shaver Plaintiffs bring a claim under Arizona law for wrongful death against the City of Mesa and Officers Langley, Brailsford, Cochran, Doane, Elmore, and Gomez.[9] Defendants Langley, Cochran, Doane, Elmore, and Gomez move to dismiss the

---

[9] Under Arizona law, there can only be one statutory plaintiff in a wrongful death

wrongful death claim for failure to comply with Arizona's notice of claim statute, A.R.S. § 12-821.01. The notice of claim statute provides that "[p]ersons who have claims against a public entity, public school or a public employee shall file claims with the person or persons authorized to accept service for the public entity, public school or public employee as set forth in the Arizona rules of civil procedure within one hundred eighty days after the cause of action accrues." A.R.S. § 12-821.01(A). The statute further provides that "[t]he claim shall contain facts sufficient to permit the public entity, public school or public employee to understand the basis on which liability is claimed[, and] [t]he claim shall also contain a specific amount for which the claim can be settled and the facts supporting that amount." *Id*. A notice of claim may be filed in three ways: (1) personal delivery to the employee; (2) delivery to a person of suitable age and discretion who resides with the employee; or (3) delivery to a person who is the employee's appointed agent. *Simon v. Maricopa Med. Ctr.*, 234 P.3d 623, 629 (Ariz. Ct. App. 2010) (citing A.R.S. § 12-821.01(A); Ariz. R. Civ. P. 4.1(d)).  If the notice of claim is not filed within the one hundred eighty days, the claim is "barred and no action may be maintained thereon." *Id*. Arizona courts have held that the notice of claim statute is to be interpreted strictly. Further, in cases where both the public entity and public employees are sued, plaintiffs must give notice to both the entity and the employees. *Crum v. Superior Court in & for County of Maricopa*, 922 P.2d 316, 317 (Ariz. Ct. App. 1996).

The Shaver Plaintiffs  sent a notice of claim on February 29, 2016 to the Mesa Police Department and the City Clerk for the City of Mesa. (Doc. 81, Ex. 2). The Shaver Plaintiffs also sent an amended notice of claim to the Mesa Police Department, the City Clerk for the City of Mesa, and Defendant Brailsford's home address on July 6, 2016 (Doc. 87, Ex. 1). The amended notice of claim is also addressed to Defendant Langley and lists his badge number, but it does not provide a home address for him and it was sent

---

claim. Plaintiff Laney Sweet has also brought a wrongful death claim, and at the time of briefing, had filed a case in Maricopa County Superior Court to be appointed the personal representative of Daniel Shaver's Estate so as to bring survivor claims. The Court has not been apprised of any updates or changes to the status of this case.

to his office. *Id*. Neither the original notice of claim nor the amended notice of claim contains even the names of Defendants Cochran, Doane, Elmore, or Gomez, referring only to officers involved in the shooting, generally. (Doc. 82, Ex. 2; Doc. 87, Ex. 1). Arizona law requires the public entity and the public employee to be notified of claims. Plaintiffs argue that the notice of claim filed with the City of Mesa and the Mesa Police Department suffices for notice of claim to the individual officers.[10] The Court grants the dismissal of Defendants Cochran, Doane, Elmore, and Gomez, as they were never named in the notice of claim. The Court denies the dismissal of Defendant Langley—questions of fact exist as to whether the MPD had authority to accept the notice on behalf of Defendant Langley.

Next, the Shaver Plaintiffs argue that even if they did not properly serve the notice of claim, the argument is moot because there can only be one statutory plaintiff  Because the Defendants have not alleged that the Sweet Plaintiffs failed to comply with the notice of claim statute, the Shaver Plaintiffs argue that their compliance or noncompliance is irrelevant. In Arizona, "a wrongful death *action* is made up of the *claims* of the beneficiaries entitled to bring claims under the statute." *James v. State*, 158 P.3d 905, 912 (Ariz. Ct. App. 2007); *see also Valder Law Offices v. Keenan Law Firm*, 129 P.3d 966, 972–73 (Ariz. Ct. App. 2006) (emphasizing that statutory beneficiary may have different interests and damages claims than the statutory plaintiff and other beneficiaries). There may only be one wrongful death plaintiff, one wrongful death action, and one wrongful death judgment, but just "because the claims are consolidated in one action, . . . it does not follow that the interests of the various beneficiaries are identical or that damages can be determined other than by adding the sum of each beneficiary's separate damages." *Wilmot v. Wilmot*, 58 P.3d 507, 513 (Ariz. 2002). Arizona law requires notice of "claims" and a statutory beneficiary still has a "claim" against the public entity and public employees, albeit a claim that is litigated by the statutory plaintiff. Given that the Arizona

---

[10] The Plaintiffs also argue that they were permitted to mail the notice of claim to the public employees. The issue, however, is not that the Plaintiffs mailed the notice of claim. The issue is that the notice of claim was only mailed to the public entity.

notice of claim statute discusses the need for notice to contain enough specifics to allow for settlement, it follows that a beneficiary with a separate claim and separate amount desired for settlement must independently comply with the notice of claim statute. Therefore, a statutory plaintiff's compliance with the notice of claim statute does not cure the noncompliance of a statutory beneficiary. *See James*, 158 P.3d at 912–13.

Defendant Langley's Motion to Dismiss  Count One of the Shaver Plaintiff's Complaint is denied. Defendant Cochran, Doane, Elmore, and Gomez's Motion to Dismiss Count One of the Shaver Plaintiff's Complaint is granted. [11]

### 2.      Count Two: § 1983 Official Capacity

The Shaver Plaintiffs bring a claim under § 1983 against the City of Mesa and Officers Langley, Brailsford, Cochran, Doane, Elmore, and Gomez in the official capacities. All of the officers seek to dismiss the claims against them in their official capacity, as duplicative of the claim against the City of Mesa. Because the Shaver Plaintiffs have sued the City of Mesa in addition to the MPD Officers in their official capacity, the claims against the MPD Officers in their official capacity are duplicative and are dismissed.[12]  The claims against the City of Mesa remain.

### 3.      Count Three: § 1983 Individual Capacity

The Shaver Plaintiffs also bring a claim under § 1983 against Defendants Langley, Brailsford, Cochran, Doane, Elmore, and Gomez in the individual capacities. In contrast to official capacity suits, "[p]ersonal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law." *Graham*, 473 U.S. at 165. To establish liability, the plaintiff must "show that the official, acting under color of state law, caused the deprivation of a federal right." *Id*. at 166. In personal-capacity suits, defendants may "be able to assert personal immunity defenses, such as objectively reasonable reliance on existing law." *Id*. at 166–67. The Shavers allege that the MPD

---

[11] The Defendants raise various additional defenses to Count One of the Shaver Complaint. Because the Court finds that the claims are barred by failure to comply with the notice of claim statute, the Court need not address these other defenses.

[12] For a lengthier discussion, *see* Section II.A.2 above.

Officers' actions deprived them of the right to familial relationship with their son, in violation of the Fourteenth Amendment. A parent has "a constitutionally protected liberty interest in the companionship and society of his or her child[, and] [t]he state's interference with that liberty interest without due process of law is remediable under section 1983." *Kelson v. City of Springfield*, 767 F.2d 651, 654–55 (9th Cir. 1985) (noting, additionally, that "[s]everal federal appellate courts have recognized this right in the context of a killing of a child by a state agent"). Only "official conduct that 'shocks the conscience' is cognizable as a due process violation" under the Fourteenth Amendment. *Porter v. Osborn*, 546 F.3d 1131, (9th Cir. 2008) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)). Because "[r]ules of due process are not . . . subject to mechanical application", the Supreme Court has cautioned that "an exact analysis of circumstances [is required] before any abuse of power is condemned as conscience shocking." *Lewis*, 523 U.S. at 850. Thus, in situations where "actual deliberation is practical", a standard of "deliberate indifference" may be appropriate. *Id.* at 851 (noting that this standard is most often used "in the custodial situation of a prison, [where] forethought about an inmate's welfare is not only feasible but obligatory"). By contrast, in situations "calling for fast action," the proper standard is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Id.* at 853 (quoting *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986)).

The MPD Officers assert various defenses to this claim. Defendant Brailsford argues that "the Shavers' 42 U.S.C. § 1983 claims still read like survival claims based on gross negligence." (Doc. 84, p. 4). The Shavers, however, are not attempting to assert claims on behalf of Daniel Shaver's Estate; rather, they are seeking relief for violations of their own Fourteenth Amendment rights to companionship with their son. The Shavers have alleged that Defendant Brailsford shot their son, Daniel, depriving them of a constitutionally protected right to associate with their son without due process. (Doc. 51, ¶ 109). They seek compensation for damages to themselves, not to Daniel. *Id.* at ¶ 110.

1    Defendant Brailsford's Motion to Dismiss as to Count Three of the Shaver Complaint is

2    denied.

3           Defendants Cochran, Doane, Elmore, and Gomez argue that the Shavers failed to

4    state a claim that the Officers violated the Fourteenth Amendment. Viewing the facts in

5    the light most favorable to the Shavers, the Complaint contains adequate factual

6    pleadings as to the actions of Defendants Cochran, Doane, Elmore, and Gomez violating

7    the Fourteenth Amendment. The Shavers allege that Officers Cochran, Doane, Elmore,

8    and Gomez did not wait for backup, did not clear the rooms nearby, proceeded with lethal

9    force weapons, and did not deescalate the confrontation in the hallway.  It is too early to

10   dismiss the Defendants without further factual development and evaluation. Where

11   officers are full and active participants in a constitutional violation by providing armed

12   backup to another officer who directly causes the deprivation, the officers may be liable

13   as integral participants. *See Boyd*, 374 F.3d at 780 (citing *James ex rel. James v. Sadler*,

14   909 F.2d 834, 837 (5th Cir. 1990) and *Melear v. Spears*, 862 F.2d 1177, 1186 (5th Cir.

15   1989)). At minimum, the Shaver Plaintiffs have alleged facts, which viewed in the light

16   most favorably to the Shavers, could support liability against Officers Cochran, Doane,

17   Elmore, and Gomez as integral participants. The Shaver Plaintiffs have plausibly stated a

18   claim that the Officers' conduct shocks the conscience and violates the Fourteenth

19   Amendment. The Court denies the Motion to Dismiss Count Three of the Shaver

20   Complaint as to Defendants Cochran, Doane, Elmore, and Gomez.

21          Defendant Langley asserts an entitlement to qualified immunity. As with

22   Defendants Cochran, Doane, Elmore, and Gomez, the Shaver Plaintiffs have pled facts

23   which could support a theory that Defendant Langley was an integral participant in

24   Defendant Brailsford's constitutional violation. The Shavers allege that Defendant

25   Langley was actively encouraging Defendant Brailsford to shoot Mr. Shaver. Accepting

26   these facts as true, Defendant Langley could be considered an integral participant in the

27   constitutional deprivation. [13]  The Court denies Defendant Langley's motion to dismiss on

28

---

[13] For more, *see* Section II.A.2 above.

qualified immunity grounds at this early point in the litigation.

**CONCLUSION**

The Court has dismissed various claims against the Defendants that are duplicative, barred by statute, and where the facts in the Complaint fail to state a claim for relief.

**IT IS THEREFORE ORDERED** that the Motions to Dismiss of Defendant Langley (Docs. 77, 78), Defendant City of Mesa, Doane, Elmore, Cochran, and Gomez (Docs. 81, 83), and Defendant Brailsford (Docs. 82, 84) are **GRANTED IN PART AND DENIED IN PART** as follows:

1.      Count One of the Sweet Complaint **REMAINS** as to all Defendants. Punitive damages claims are **DISMISSED** as to Defendants Langley, Brailsford, Cochran, Doane, Elmore, and Gomez.

2.      Count Three of the Sweet Complaint **REMAINS** as to Defendant City of Mesa (in its official capacity) and Defendants Langley, Brailsford, Doane, Cochran, Elmore, and Gomez (in their individual capacities).

3.      Count Four of the Sweet Complaint is **DISMISSED WITHOUT PREJUDICE**.

4.      Count Five of the Sweet Complaint is **DISMISSED WITHOUT PREJUDICE**.

5.      Count Six of the Sweet Complaint **REMAINS** as to all Defendants for claims by Laney Sweet, E.S., and N.S. Count Six of the Sweet Complaint is **DISMISSED** as to Defendants City of Mesa, Elmore, Doane, Cochran, Gomez, Langley and Brailsford for claims by the Estate of Daniel Shaver.

6.      Count Seven of the Sweet Complaint is **DISMISSED** as to all Defendants.

7.      Count Eight of the Sweet Complaint is **DISMISSED** as to all Defendants.

8.      Count One of the Shaver Complaint is **DISMISSED** as to Defendants, Cochran, Doane, Elmore, and Gomez. Count One of the Shaver Complaint **REMAINS** as to Defendants City of Mesa, Langley, and Brailsford.

9.      Count Two of the Shaver Complaint is **DISMISSED** as to Defendants Langley, Brailsford, Cochran, Doane, Elmore, and Gomez in their official capacity. Count Two of the Shaver Complaint **REMAINS** as to Defendant City of Mesa.

10.     Count Three of the Shaver Complaint **REMAINS** as to Defendants Langley, Brailsford, Cochran, Doane, Elmore, and Gomez.

Dated this 1st day of June, 2018.

G. Murray Snow

Honorable G. Murray Snow
United States District Judge