Kathleen L. Wieneke, Bar #011139
Christina Retts, Bar #023798
WIENEKE LAW GROUP PLC
1095 West Rio Salado Parkway, Suite 209
Tempe, AZ 85281
Telephone: (602) 715-1868
Fax: (602) 455-1109
Email: kwieneke@wienekelawgroup.com
Email: cretts@wienekelawgroup.com

*Attorneys for Defendants City of Mesa, Brian Elmore, Christopher Doane, Bryan Cochran, and Richard Gomez*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Laney Sweet, an individual, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>City of Mesa, et al.,<br><br>Defendants. | NO. 2:17-cv-00152-GMS<br>**LEAD CASE**<br><br>**CONSOLIDATED WITH:**<br>NO. 2:17-cv-00715-GMS<br><br>**DEFENDANT CITY OF MESA, BRIAN ELMORE, CHRISTOPHER DOANE, BRYAN COCHRAN AND RICHARD GOMEZ'S MOTION TO FOR SUMMARY JUDGMENT ON THE SWEET PLAINTIFFS' COMPLAINT** |
| Grady Shaver, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>City of Mesa, et al.,<br><br>Defendants. | |

On January 18, 2019, two civilians were terrified after seeing a man with a rifle from an elevated perch in a hotel room. They thought that he was targeting human beings, as Arizona was being terrorized again by random freeway shootings. They fled inside to the safety of the hotel and said a prayer for safety. One hotel staff member called 911 and

the other went up to the fifth floor to investigate.  What the investigating employee saw shocked her—three people in the room and a rifle with a scope—the once friendly guest had a changed demeanor and slammed the door shut in her face. He did not try to explain to her what his intentions were, or that this was just a pellet gun used for work. He did not offer to take it down to his vehicle for safe keeping, or to have her take it and secure it within a safe location. He acted in haste and in anger.

As Officers Cochran, Gomez, Doane, Elmore, Brailsford and Sgt. Langley made their way to the fifth floor, they did not know if the female was a hostage, or whether there was still a third male lurking somewhere in the room. They knew that there was a report of a military style rifle, with a scope, which hadn't been kept safely within its case. They knew that the two individuals hadn't responded to loud commands to exit and that, when they did, they did not comply with Officer Cochran's commands given—previously on the telephone—for the female to exit with noting in her hands and without her purse. They knew that the female did eventually comply with commands, never raised her hands behind her back near her waistband, and was taken into custody safely.  In the split second before the shooting, the individual officers also knew that Shaver made a dangerous movement to reach back toward his waistband (despite numerous commands not to do so)—which is conclusively shown on the video. They reacted by crouching, aiming a Taser and an AR-15, but none of those officers used force.  They did not know until the shots were fired that Brailsford was the shooter.

Following the Motion to Dismiss, the following claims remain in the Sweet Plaintiffs' Complaint against the City Defendants, and which should all be dismissed now on summary judgment: (1) Count 1- Wrongful Death; (2) Count 3, federal law excessive force claim; and (3) state law Intentional Infliction of Emotional Distress by Plaintiffs Sweet, E.S. and N.S. related to the manner of notification of Shaver's death.  These claims fail on the merits and standing is lacking as raised previously by Defendants in the Motion

2

to Bifurcate.[1]

## I.      FACTS.

### A. Standing

Defendants incorporate by reference the facts set forth in Doc. 257, Defendants' Motion to Bifurcate, pages 2-7, and Exhibits 1-4. These facts are not set forth again in this pleading to avoid duplication and because this material was previously sealed. Defendants also incorporate by reference the facts set forth in Doc. 259, Defendants' Reply in Support of the Motion to Bifurcate, Exhibits 1-6. These facts are not set forth again in this pleading as they involve material that was previously sealed (both portions of the Motion and exhibits).

### B. The Incident

To avoid duplication, the City Defendants incorporate by reference the facts set forth in City Defendants' Motion for Summary Judgment for the Shaver Claims ("Shaver Motion"), Doc. 264.[2] Defendants rely on the two videos as the facts at issue are not in dispute. (DSOF ¶ 18-19); *See Scott v. Harris*, 550 U.S. 372 (2007) (expressing with approval allowing the videotape to "speak for itself" particularly where the incident itself is on video).

## II.     LAW AND ARGUMENT

### A.      Plaintiffs Cannot Prove Standing by Clear and Convincing Evidence.

Defendants have not completed all discovery on the standing issues because of the procedural posture of the case related to the Motion to Stay and the Motion to Bifurcate. Defendants file this Motion for Summary Judgment (as well as the Shaver Motion), out of an abundance of caution because the Court has not formally vacated the deadline for filing

---

[1] Summary Judgment is appropriate to all Defendants if there is no underlying constitutional violation that was committed by Brailsford, but because of the stay that applies to Brailsford, his inability to participate in this briefing, and the potential for inconsistency, Defendants do not directly raise these arguments now and will do so after Brailsford may fully participate in the case.

[2] City Defendants' Motion for Summary Judgment on the Shaver Claims is lodged proposed pending the Court granting Defendants' Motion to Exceed.

dispositive motions. As set forth in the Motion to Bifurcate, additional discovery is necessary, including Plaintiff Sweet's deposition. To avoid duplication of the law and argument, Defendants incorporate by reference the arguments set forth in the Motion to Bifurcate and the Reply. *See* Docs. 257 and 259.

On the status of the record, as it sits without this necessary discovery, Plaintiffs have not established standing by clear and convincing evidence. Their evidence is not competent evidence, nor is it sufficient to meet their burden.

**B. Legal Arguments Raised in the Shaver Motion for Summary Judgment that Apply Equally to the Sweet Claims.**

Several of the theories alleged by the Sweet and Shaver Plaintiffs are overlapping. To avoid duplication of the same arguments and for reading ease, Defendants incorporate by reference the following arguments in the Shaver Motion, Doc. 264:

(1) Section A, The Provocation Rule Has Been Overruled.

(2) Section B, Arizona's Survival Statute Bars Recovery of Pre-Death Pain and Suffering Damages and Medical Causation is Absent Between the Individual City Officers' Conduct and Shaver's Death.

(3) Section C, The Individual Defendants Did Not Use Excessive Force and Plaintiffs' Expert Concedes they Acted Appropriately.

(4) Section E, The Individual Officers are Entitled to Qualified Immunity.

(5) Section, F, There is No Basis for Punitive Damages Against the Individual Defendants.

Defendants are entitled to Summary Judgment, for these same reasons, for the Sweet claims as well.

**C. Plaintiffs' Intentional Infliction of Emotional Distress Claim Fails.**

There are three theories of liability alleged in this claim: (1) Mesa Police Department failed to return Ms. Sweet's calls regarding Shaver, a next of kin notification claim, (2) that the individual officers created false report; and (3) that the Mesa Police Department refused to produce the AXON video after a criminal judge sealed the video barring its production.  All of these theories fail.[3]

---

[3] To prevail on this claim, Sweet must establish: (1) conduct that is "extreme" and

4

### 1.  **There is No Duty to Provide Next of Kin Notification**

The City owed <u>no duty</u> to Plaintiffs relating to the time or details of any next of kin notification. There was no duty to make any next of kin notification at all. Arizona courts, three times, have declined to find any duty for law enforcement related to next of kin notifications and identification of remains. *Guerra v. State*, 237 Ariz. 183 (2015), involved a next of kin notification after a severe accident where one female was killed and another survived. Unfortunately, there was an error in the identification of the deceased and the survivor and the wrong parents were notified of the death. The parents filed suit based upon the faulty notification, however, the Court held that there was no special relationship created between an investigating police agency and the next of kin: "imposing a duty of care whenever law enforcement officers deliver NOK notifications would be inconsistent with cases holding that officers do not owe  a duty to victims or their families by undertaking to investigate a crime or accident and identify victims." *Id.* at 187.

Similarly, in *Morton v. Maricopa County*, 177 Ariz. 147 (App. 1993), remains in a desert were identified years after their disposal, and the victim's parents sued for the failure to timely identify and provide notification. The court held that there was no duty owed to the to the parents because the "undertaking to identify human remains primarily 'foster[s] public safety through the investigation of suspected homicides' and only 'incidentally benefits friends and relatives.'" The Court found that there was no special relationship between the victims' relatives and the police, such that there was no duty.

In *Vasquez v. State*, 220 Ariz. 304 (App. 2008), the plaintiff asserted an intentional infliction of emotional distress claim based upon the failure of the police to notify her of her son's death, after he was killed following a high-speed pursuit. The plaintiff claimed that the decedent's identity was not properly investigated, and as a result, he received an indigent burial. The Court found that there was no duty to notify the death and as a result

---

"outrageous;" (2) that the defendant intended to cause emotional distress or recklessly disregarded the near certainty that such distress would result; and (3) severe emotional distress did indeed occur.  Ford v. Revlon, Inc., 734 P.2d 580 (Ariz. 1987). There is no evidence sufficient to meet any of these elements.

the intentional infliction of emotional distress claim failed. The Court noted that "a special relationship between an investigating law enforcement agency and a decedent's family member does not arise merely by the agency undertaking to investigate an accident or resulting death…Indeed, this court has expressly ruled that law enforcement agencies owe no duty to the family or friends of a decedent to identify that decedent."

Here, there was no duty for the City to make any notification of death to Sweet and, as a result, her intentional infliction of emotional distress claim fails. Even apart from there being no duty, Plaintiffs' claim is not supported by any evidence because there was a next of kin notification made to the Shavers, who are undisputedly Shaver's parents. (DSOF ¶ 189).  Where a police department does not have a duty to make any notification, they certainly do not have a duty to make a specific notification to a specific next of kin. They do not have to sort through whether there is a common law marriage, nor is there any priority for notification existing under any case law. Grady Shaver was contacted directly and avowed to the City that he would notify Sweet. (*Id*.).  It was reasonable, and not "extreme and outrageous", for the City to rely upon Grady Shaver's avowal that he would contact Ms. Sweet.  There was no duty for the City to actually notify Ms. Sweet, particularly where her familial status was questionable.

**2.  The Officers Owed Ms. Sweet No Duty in Preparing Their Reports.**

Police officers who investigate alleged criminal activity and prepare police reports have no special relationship with crime victim's family members.  *See Hogue v. City of Phoenix*, 240 Ariz. 277 (App.Div. 1 2016) (police officers have no duty to investigate in a particular way); *Stair v. Maricopa Cty*., 429 P.3d 1151(App.Div. 1 2018).

A police report prepared during an ongoing investigation is not a transcript, it is a summary, particularly in a death investigation when: (1) the existence of video evidence is disclosed and incorporated; and (2) there is an expectation that a detective will conduct further interviews. (DSOF ¶ 115-118, 143, 162, 171-172, 176).  At the time they wrote their reports, the officers were aware that there was video evidence and expected that it would be made part of the report.  (*Id*.).  Plaintiffs' claim is based upon the incorrect

notion that there is a duty to transcribe verbatim a police encounter, and that the officers have any ability to determine a suspect's intent (showing real emotion or feigning emotion), and that the reports are to document the suspect's actions rather than what each individual officer did. Even if Plaintiffs' statements are true, they do not rise to the level of extreme conduct to support liability. *See Adams v. Estrada*, No. 2 CA-CV 2013-0074, 2014 Ariz. App. Unpub. LEXIS 103, 2014 WL 265660, at *8 (Ariz. Ct. App. Jan. 23, 2014) (defendant's public false statements against a police officer and subsequent demonstrations in support of those false accusations were not outrageous and extreme); *Norton v. Arpaio*, 2019 U.S. Dist. LEXIS 53239 (D.Ariz. 2019) (false statements in support of a search warrant affidavit not sufficiently egregious for an IIED claim.)

### 3. **The City Was Prevented from Releasing the AXON Video Based upon the Criminal Court's Orders.**

Plaintiffs wants this Court to second-guess and reverse the decision of the criminal court, which ruled that Sweet could not have a copy of the entire unredacted AXON video (after she had a full opportunity to be heard). The criminal court sealed the AXON video and prohibited its disclosure, and then reaffirmed that ruling multiple times—the last time reaffirming that anyone violating the order would be subject to contempt, fines, and potential incarceration (DSOF ¶190-195). Sweet was permitted the opportunity to view the video (an inspection), she declined.[4] Plaintiffs filed a Petition for Special Action to challenge the withholding of the video, but did not obtain relief. (DSOF ¶ 195). They sought review by the Supreme Court, but this was also denied. (*Id.*) This claim is an impermissible horizontal appeal, a violation of principles of comity[5], *res judicata*, a

---

[4] If there existed any duty relating to the video, which Defendants dispute, that duty was extinguished when Sweet refused a reasonable opportunity for the video to be made available to her. Her actions of refusal were an independent intervening and/or superseding cause that broke any chain of causation. *See Dupray v. Jail Dining Servs. (Phoenix)*, 432 P.3d 937 (App. Div. 1. 2018) (intervening cause breaks the causal chain and is assessed from the defendant's standpoint).

[5] Plaintiffs have before argued to this Court that state court decisions should not be disturbed, yet seek through their claim to do just that. *See* Doc. 250. *Res judicata* also applies as Plaintiffs may not relitigate determinations that she was a privy to and which involved the same issue.

violation of the *Rooker-Feldman* doctrine, and an ultimate attempt at forum shopping.[6]

Access to a public record can be denied if disclosure "would violate rights of privacy or confidentiality, or be 'detrimental to the best interests of the state.'" *See A.H. Belo Corp. v. Mesa Police Dep't,* 202 Ariz. 184 (Ariz.Ct.App. 2002) (trial court erred when it ordered city to provide TV station with transcript of 911 tape as well as the audiotape where the city established a substantial basis, the privacy interest of the child and family, for withholding the tape). Thus, a public official may "deny in the first instance the right of inspection if he thinks that the document[s are] privileged or confidential, or if he thinks that it would be detrimental to the interests of the state to permit [disclosure]." *Mathews v. Pyle*, 75 Ariz. 76, 81, 251 P.2d 893, 896 (1952). In the analysis of competing interests, the existence of alternative sources of information decrease the right to inspection. In *Belo,* the alternative source of information found to be appropriate was the transcript of the 911 call, instead of the call itself. In addition, the court found that appropriate privacy interests surrounded the desire to "minimize the emotional impact the airing of the tape may have on the victim and his family." *Id*. at 188.

Here, the City of Mesa was not the "sole" government official making the determination to withhold portions of the AXON video. Rather, the City relied upon a criminal court's balancing of all of the interests (at multiple points in the criminal process)—after Sweet, the Shavers, Maricopa County, and Brailsford were heard.[7] This balancing of interests included the Shavers desire that the video not be available to the public because it depicted the incredibly private moment when their son passed. (DSOF ¶

---

[6] Defendants incorporate by reference the arguments set forth in Doc. 33. Through this Court, Sweet seeks a determination that the criminal court Order prohibiting disclosure was wrong and, as a result, the City had an obligation to disclose the AXON video earlier.

[7] Qualified immunity also applies where a public official performs a discretionary act "within the scope of [her] public duties" such that she can only be liable if she "knew or should have know that [s]he was acting in violation of established law or acted in reckless disregard of whether h[er] activities would deprive another person of their rights." *See Spooner v. City of Phoenix*, 435 P.3d 462 (App.Div.1 2018). The determinations at issue are discretionary and reliance on a court order does not meet this gross negligence standard.

190-195). Sweet sought to override the Shavers' wishes and fought for the release of the video (multiple times) in the criminal court and by Special action, but the Court continued to seal the video.[8] It is neither extreme, nor outrageous, arbitrary or capricious, for the City to rely upon the criminal court's reasoned analysis, balancing of interests, the fact that Sweet had alternative sources of information[9], and refuse to violate those court orders. Nothing in public records law, or the cases interpreting it, have found that a City's reliance on a trial court order is impermissible, precluded, nor does anything require the City to act contrary to a such an order thereby facing contempt. Complying with the criminal court's order is good faith reliance on the law. *See Turney v. O'Toole,* 898 F.2d 1470, 1472 (10th Cir. 1981) (officials who execute a facially valid order enjoy absolute immunity from liability for damages in a suit challenging conduct prescribed by that order); *Engebreston v. Mahoney*, 724 F.3 1034 (9th Cir. 2013) (officials who executed facially valid orders enjoyed absolute immunity even if the plaintiff claimed that the order was invalid or later overturned).

Sweet had a full and fair opportunity to litigate the issue of the AXON video disclosure in the criminal court and lost. Her Special Action did not overturn the ruling either, nor did the Supreme Court accept review. And, on October 26, 2017, after reviewing the Petition for Special Action filed by Sweet, the criminal court reaffirmed the sealing, noting that the release of the video had the potential "to turn a burning ember into a full flame and such distractions only serve to deter from the central issue in this case and that is was the shooting justified," and found the request to unseal an improper lateral

---

[8] Where there are competing interests for privacy—with the parents arguing for no disclosure, and the *alleged* common law wife arguing for disclosure—the City is placed in a no-win position.

[9] Sweet possessed a transcript of what was said on the video as well as Brailsford's interview following the incident. The Maricopa County's Office also offered to make the **unredacted** video available for Sweet's inspection, but she declined. In affirming the sealing of the video on October 26, 2017, the criminal court also relied upon these other disclosures that were in the public domain such that "the public is, therefore, not being fully cut off from the facts of the case or the operations of their government. . ."

appeal.[10] (DSOF ¶ 196). Sweet cannot now relitigate this issue in this Court. Certainly, if this Court—presiding over a federal criminal trial ordered certain evidence sealed—it would be the expectation that this evidence would remain sealed and would not be disseminated even if there was a parallel personal injury claim in state court.

The relevant procedural history from the criminal court proves that the City did not act in any manner that was extreme or outrageous as there has never been a reversal of the criminal court's orders. Plaintiffs' relentless pursuit to overturn those orders during the criminal trial never went her way. There was never a judicial determination that recognized her desires as tantamount to the competing interests of the State in its desire to prosecute, Brailsford in his pursuit of due process and a fair trial, and the Shavers in pursuit of privacy.[11]

### D. The Wrongful Death Claim Fails.

#### 1. Plaintiffs Cannot Establish Wrongful Death Causation.

A wrongful death claim is a creature of statute, and as a result, must be strictly construed. *See* A.R.S. § 12-611(death of a person is caused by wrongful act); *Shoenrock v. Cigna Health Plan (ABC-HMO, Inc.)*, 148 Ariz. 548 (App. Div. 1. 1985). Plaintiffs lack the evidence to prove that the individual City Defendants proximately caused the death, or that any training, hiring, or supervision of Officer Brailsford was causally connected either. *See Shepard v. United States*, 587 F.Supp. 1525 (D.Ariz. 1984); *see Barrett v. Harris,* 207 Ariz. 374, 378 (App. 2004). Plaintiffs have not disclosed any expert to opine on cause of death. Presumably, Plaintiffs will utilize the Medical Examiner's autopsy report—or the jury's common sense—to establish that Shaver died after being shot. Common sense and/or the Medical Examiner's report, however, bears no relationship to the wrongful death claims against the individual Defendants who did not physically touch

---

[10] Nevertheless, at Sweet's behest, a video game was created from the video, "challenging" viewers to watch it and decide "What would they do?", calling it the "Daniel Shaver Challenge."

[11] Sweet's claim is premised on the notion that she could not obtain justice without the AXON video, or pursue pretrial publicity, but it is the State who has standing to prosecute, not Sweet. The State contended that release would be detrimental to the pursuit of justice.

10

the decedent in any manner. Based upon the undisputed video evidence, they were all stationed on the opposite of the hallway when the shooting occurred.

The individual Defendants are not Brailsford's employer and, as a result, cannot be included in a wrongful death claim merely by being present. There is no failure to intervene or integral participant theory that exists under state law. Moreover, Plaintiffs cannot cleverly plead around causation and the holding of *Ryan v. Napier*, 425 P.3d 230 (2018), by contending that the individual Defendants somehow undertook some unidentified action that caused Brailsford to shoot. This would run afoul of *Ryan's* requirement that claim based in negligence be completely independent from the intentional use of force and not related to shooting officer's evaluation for the need to use force. *Britton v. City of Crawford*, 282 Neb. 374, 803 N.W.2d 508, 518 (Feb. 2011) (concluding that immunity provision for battery applied as "[n]o semantic recasting of events can alter the fact that the shooting was the immediate cause of [suspect's] death" and "[e]ven if it is possible that negligence was a contributing factor . . . the alleged negligence was inextricably linked to a battery").[12]  Moreover, gross negligence would be the appropriate standard because of the application of qualified immunity. *See* A.R.S. § 12-820-02 (A)(1); *Noreiga v. Town of Miami*, 243 Ariz. 3209 (App.Div.1 2017).

Further, there is no evidentiary support for the claim that the individual Defendants were grossly negligent or that that Brailsford was impacted, in any way, by the actions of any of the individual Defendants at the scene (at any time).[13]  To the contrary, he testified that the decision to shoot was his alone, made at the moment that Shaver raised his right arm towards his waistband in a threatening motion; the shooting therefore was justified under the law. (DSOF ¶ 91); A.R.S. § §§ 13-410 and 13-413. Brailsford did not interpret Sgt. Langley's commands as a "green light" to shoot. (DSOF ¶ 95-97). Rather, he made

---

[12] For these reasons, there can also be no gross negligence training claim based upon the training given to the individual Defendants.

[13] Gross negligence would be the appropriate standard because of the application of qualified immunity. *See* A.R.S. § 12-820-02 (A)(1); *Noreiga v. Town of Miami*, 243 Ariz. 3209 (App.Div.1 2017).

his own assessment based upon the totality of the circumstances. (DSOF ¶ 98).

### 2. The Wrongful Death Claim Against the City of Mesa for Hiring; Training; and Supervision Fails.

Plaintiffs' gross negligence wrongful death training claim against the City also fails. For the reasons set forth above, there is no causation as it relates any claim against the City that they engaged in any alleged non-specific failure to hire, supervise, or train the individual Defendant officers who never used any force. Not even the Plaintiffs' expert contends that the individual Defendants did anything other than appropriately respond. (DSOF ¶ 185-187). The City cannot be liable unless a Court first finds that the employee committed a tort. *See Hernandez v. Singh*, 2019 U.S.Dist. LEXIS 14559 (Ariz. Dist. Ct. 2019). This claim similarly fails for Sgt. Langley, who merely issued commands that Brailsford interpreted only as a warning.

Next, Plaintiffs' boilerplate allegations of gross negligence related to Officer Brailsford also fail. To prevail on a gross negligence training claim, it is not enough to allege that an employee was "incompetent," rather "a plaintiff must also present evidence showing what training should have been provided, and that its omission proximately caused the injuries. *See Inmon v. Crane Rental Servs., Inc.*, 205 Ariz. 130, 137 (App. 2003). Plaintiffs identify no specific training deficiencies, nor does their expert. There is no evidence of any training deficiency; instead the officers' testimony establishes extensive training that comports with the law. (DSOF ¶ 95,125-128, 134-5, 137, 147, 155-157). Each officer—including Brailsford—testified that the decision to use force must be based upon the totality of the circumstances based upon a threat they perceived, which would have reasonably led them to believe that their life, or the life of another was in danger. (DSOF ¶¶ 95, 97-98, 111-113, 129, 149, 150-151, 167).

To prevail on a negligent hiring claim, the employer "must have known or had some reason to know of the employee's incompetence before hiring the employee." *Hernandez*, 2019 U.S. Dist. LEXIS 14559, *14-15. There is no evidence of any alleged deficiency in Brailsford's background that would have made him unsuitable to be hired. Plaintiffs' theory of alleged "psychological unfitness" is unsupported by any evidence.

12

Brailsford had no arrests and had not been convicted of any crimes.

To prevail on a negligent supervision claim, the plaintiff must prove that the employer knew or should have known that the employee was incompetent and that the employer subsequently failed to supervise the employee, ultimately causing the harm at issue. *Id.* at *15-16 (finding no lack of supervision where a truck driver, who was involved in an accident, attended truck driving school, but did not attend any follow up classes and only attended a 30-minute safety class after that). No such evidence exists here. Officer Brailsford was not involved in any prior shootings, nor did he have any issues with discharge of a firearm before this incident. He was AZPOST certified, was required to pass firearms training yearly, was trained using scenario based virtual reality, and understood the scope of the authorization to use force.

## III.    CONCLUSION.

For the foregoing reasons, summary judgment should be granted on all of Plaintiffs' claims.

DATED this 26th day of April, 2019.

WIENEKE LAW GROUP, PLC

By:    */s/ Christina G. Retts*
Kathleen L. Wieneke
Christina Retts
1095 West Rio Salado Parkway, Suite 209
Tempe, Arizona 85281
*Attorneys for Defendant Defendants City of Mesa, Brian Elmore, Christopher Doane, Bryan Cochran, and Richard Gomez*

### CERTIFICATE OF SERVICE

I hereby certify that on 26th day of April, 2019, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Mark D Zukowski:            mzukowski@jshfirm.com,
                           klewis@jshfirm.com

| | |
|---|---|
| James J Belanger: | jjb@jbelangerlaw.com,<br>lmj@jbelangerlaw.com |
| Daniel J O'Connor | caseadmin@occlaw.com |
| William August Richards | brichards@baskinrichards.com,<br>cmcdonald@baskinrichards.com |
| Alan S. Baskin | alan@baskinrichards.com |
| Justin Dean Holm | justin.holm@occlaw.com,<br>amanda.bennett@occlaw.com |
| Jonathan Paul Barnes | jbarnes@jshfirm.com,<br>gstahly@jshfirm.com |
| David Calvin Potts | dpotts@jshfirm.com,<br>scoffey@jshfirm.com |
| Spencer Garrett Scharff | scharff@scharffplc.com |
| Sven Kortne Budge | sbudge@budgelawfirm.com |
| Mark John Geragos | mark@geragos.com,<br>geragos@geragos.com |
| Benjamin Meiselas | ben@geragos.com,<br>geragos@geragos.com |
| Gene Nicholas Chavez | gene@chavezlawoffices.com,<br>chavezlawoffices@gmail.com |

I hereby certify that on this same date, I served the attached document by U.S. Mail, postage prepaid, on the following, who is not a registered participant of the CM/ECF System:    N/A.

By:    */s/ Lindsey Piasecki*

14