# EXHIBIT 27

IN THE SUPERIOR COURT OF ARIZONA

IN AND FOR THE COUNTY OF MARICOPA

In the Matter re:                )
                                 )
      Philip Brailsford,         )   CR2016-004743-001
          Defendant.             )
_____)

Phoenix, Arizona
November 27, 2017

REPORTER'S TRANSCRIPT OF PROCEEDINGS
TESTIMONY OF EMANUEL KAPELSOHN (NOT CONCL'D)
BEFORE:   THE HONORABLE GEORGE FOSTER

Luz Franco, RPR, CRR, CR No. 50591
Official Court Reporter                          (Original)

Brailsford TT01909

officer at a disadvantage.  He may say, oh, officer, let me just show you my identification, and he'll use that as a way to take two steps closer to the officer before attacking, or he'll say to the officer, let me just show you my -- my wallet, and he'll reach back and come out with a gun.

So you can't rely on something like that, and, if -- if armed robbers could simply say to the place, don't shoot me, I guess they'd be home-free, but that can't be.

Q.   All right.  Do -- are officers trained to be then attune to the actual behavior of the individual?

A.   Yes, they are.

Q.   And are officers trained on -- on certain patterns of movements that -- that spell potential danger to them?

A.   They are, to some extent, trained in it, but, to a larger extent, they learn it from experience.  Officers are taught to draw guns, not only from their duty holsters but from off duty holsters and concealment holsters and backup holsters and through that, officers learn what the motions of drawing a gun look like.

Q.   And did the motions of Mr. Shaver that night appear to -- would appear to a reasonably well-trained officer as one drawing a gun?

A.    Mr. Shaver's motions looked exactly like the drawing of a gun from one's waistband or behind one's hip or one's back pocket.  The elbow comes up.  That's not necessary if one is simply taking a wallet out of a pocket or pulling up one's shorts or something like that.  That motion that can be seen on the video is exactly the motion of pulling a gun out from that location.

Q.    And -- and this is how officers are trained to observe motions like that?

A.    They are trained and they learn by their own experience what drawing a gun looks like and that looks just like drawing a gun.

Q.    Now, there's a principle called action versus reaction.

You're familiar with that?

A.    Correct.

Q.    And have you taught that and taught instructors to teach that to officers?

A.    For close to 40 years now, yes.

Q.    Now, let's start, does an officer have to visualize a firearm before it's deemed an imminent threat to him or her?

A.    By "visualize," you mean see it?

Q.    Yes.

A.    No.  An officer doesn't have to see the gun

A.    Correct.

Q.    All right.  That they're -- they can't make -- it's not like they cannot make a mistake in judgment, as well as in action, right?

A.    I'm not sure I understood your question.

Q.    Like, sometimes they can make the wrong judgment call?

A.    Absolutely.

Q.    All right.  And they are taught that they must answer for their decisions alone for themselves, correct?

A.    As a general principle, yes.

Q.    Okay.  And the decision of an officer whether to shoot or not shoot at a citizen is his own only, correct?

A.    Usually.

Q.    Okay.

A.    Not always.

Q.    All right.  And they are never taught to shoot to stop an -- you know, to stop a threat just because their sergeant or lieutenant or whoever threatens that action, correct?

A.    Threatens that action?  Correct.  They -- they sometimes are taught to shoot because they are directed to, such as a police counter-sniper.

Q.    Okay.

A.    They may not even see the underlying circumstance

Brailsford TT01999

but is given the directive the next time that person appears in the window, you are to shoot him and --

Q.   Okay.

A.   -- he's got to substitute his superior officer's judgment and direction for his own ability to make a judgment.

Q.   All right.  But that's normally left for a snipers and counter-snipers, people of that nature, correct?

A.   Correct.

Q.   Not your ordinary officer?

A.   Correct.

Q.   All right.  -- patrol guy.

Do you recall during the -- his interview, the defendant saying that Daniel was approaching them to gain a tactical advantage or no?

A.   I do remember that.

Q.   Okay.  But it was the police themselves who asked him to crawl towards them, correct?

A.   Yes.

Q.   Okay.  You've watched this video many, many time.

Did -- and you have a lot of experience in this stuff, but did -- did Daniel Shaver appear to be confused by some of the instruction or by some of what was going on?

CERTIFICATE OF REPORTER

STATE OF ARIZONA      )

COUNTY OF MARICOPA   )

I, Luz Franco, an official reporter in the Superior Court of the state of Arizona, in and for the county of Maricopa, hereby certify that the foregoing pages constitute a full, accurate typewritten record of my stenographic notes taken at said time and date, all done to the best of my skill and ability.

Dated this 23rd day of April, 2018.

___/s/Luz Franco_____

Luz Franco, RPR, CRR
CR No. 50591
Official Court Reporter

**LUZ FRANCO, RPR, CRR, OFFICIAL COURT REPORTER**

Brailsford TT02019

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

IN AND FOR THE COUNTY OF MARICOPA

|  |  |
|---|---|
| STATE OF ARIZONA, | ) ) ) |
| Plaintiff, | ) ) CR 2016-004743-001 |
| vs. | ) ) |
| PHILIP M. BRAILSFORD, | ) ) |
| Defendant. | ) ) ) |

Phoenix, Arizona
November 28, 2017
1:30 p.m.

BEFORE THE HONORABLE GEORGE H. FOSTER, JR.,
SUPERIOR COURT JUDGE

REPORTER'S TRANSCRIPT OF PROCEEDINGS

EMANUEL KAPELSOHN's TESTIMONY
EXCERPT

**ORIGINAL**

**REPORTED BY:**
DALIA AMBRIZ, CR, RPR
Certified Court Reporter #50899

Brailsford TT02034

Q.  Four-and-a-half-years, all right.  And were you in that position full time or part time?

A.  No, we're a reserved deputy sheriff.  It's part time.

Q.  And how many shifts did you work a week?

A.  It was irregular.  There were weeks when I worked three or four shifts, there were weeks when I worked no shifts, there were probably some months when I worked no shifts, and there was my travel schedule and months when I worked a lot of shifts, so it varied.

Q.  Did you respond to some of those situations like we have here in this case?

A.  Well, every situation is different.  But I responded to situations of people with guns.  I responded to barricaded gunmen, suicidal people with guns, domestic situations where one or the other spouse had guns; crimes in progress, all kinds of things.

Q.  Any officer-involved shootings that you were involved with?

A.  No.

Q.  You testified yesterday that -- that the defendant's actions were consistent with his training; is that right?

A.  Yes.

Q.  Does that hold true for Officer Elmore's actions

as well?

A.   As far as I understand, yes.

Q.   What about Sergeant Langley?

A.   Yes.

Q.   The other officers:  Cochran, Gomez, et cetera?

A.   I think of what things they all did.  I think they are more or less consistent with training.  I think that Officer Gomez probably violated training or violated safety protocol by stepping in front of Officer Brailsford while Officer Brailsford was covering Mr. Shaver.  That was not a good thing to do, but things like that occur.

Q.   Yesterday, when I was asking you about your notes, there was some notes that I did not have, and those were provided to me between last night and this morning.  Is that your understanding as well?

A.   It is, yes.

Q.   And I have three pages, is that your understanding of all of that was missing?

A.   Yes.  And I'm not sure that all three of them were not provided to you or that they were asked for or required to be, but there were three pages.  That's my understanding.

Q.   And one of them is -- has a date of December 6th, 2015; is that possible?

Brailsford TT02038

20

STATE OF ARIZONA              )
                              )
COUNTY OF MARICOPA            )

# C E R T I F I C A T E

            I, *DALIA AMBRIZ*, Registered Professional Reporter and Official Certified Reporter, Certificate No. 50899, in and for the State of Arizona, do hereby certify that the foregoing pages constitute a full, true and accurate transcript of all proceedings had in the foregoing matter, all done to the best of my skill and ability.

            Dated in Phoenix, Arizona, this 13th of April, 2018.


                        /s/_____

                        **DALIA AMBRIZ, CR, RPR**
                        **Certified Reporter No. 50899**
                        **Official Court Reporter**
                        **Maricopa County Superior Court**
                        **Phoenix, Arizona  85003**
                        **602.506.4536**

Brailsford TT02053