Kathleen L. Wieneke, Bar #011139
Christina Retts, Bar #023798
WIENEKE LAW GROUP, PLC
1095 West Rio Salado Parkway
Tempe, Arizona 85281
Telephone: (602) 715-1868
Fax: (602) 455-1109
Email: kwieneke@wienekelawgroup.com
Email: cretts@wienekelawgroup.com

*Attorneys for Defendants City of Mesa, Brian Elmore, Christopher Doane, Bryan Cochran, and Richard Gomez*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Laney Sweet, et. al.,<br><br>                              Plaintiffs,<br><br>v.<br><br>City of Mesa, et. al.,<br><br>                              Defendants. | Case No. 2:17-cv-00152-PHX-GMS<br>**LEAD CASE**<br><br>**CONSOLIDATED WITH:**<br>Case No. 2:17-cv-00715-PHX-GMS<br><br>*[LODGED PROPOSED]* **CITY OF MESA, DOANE, ELMORE, GOMEZ, AND COCHRAN'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON SHAVER PLAINTIFFS' CLAIMS** |
| Grady Shaver, et. al.,<br><br>                              Plaintiffs,<br><br>V.<br><br>City of Mesa, et. al.,<br><br>                              Defendants. | |

Plaintiffs admit that the only relevant and material facts are captured on video and surround the moment before the shooting, but then spend an inordinate amount of time discussing irrelevant pre-tactical *Mendez* prohibited "contagion" arguments, without ever addressing the holding of *Mendez* and the cases that follow. Plaintiffs contagion theory is nonsensical as none of the bystanders engaged in any force and there was no contagion from the shooting itself, or any commands from Sgt. Langley. The Response is long on argument, but short on the law. There is no clearly established law relating to the bystanders' obligations under these facts and Plaintiffs do not acknowledge directly

applicable cases, which establish that Defendants' actions were constitutional.

The time that this Court will spend, merely reading the Plaintiffs' Response, will far eclipse, many times over, the split-second decisions made by the individual officers as they contemplated their own decisions on whether to use force—ultimately choosing not to. Plaintiffs wishes to graft upon these bystander officers, in these tense and uncertain situations, yet another obligation in addition to making their own assessments of force: to subjectively mind read what other officers might do and predict the future as to what the suspect will do. This not only humanly impossible, but a perversion of *Graham's* reasonable officer standard. *See Nieves v. Bartlett*, 2019 U.S. LEXIS 3557 (May 28, 2019) ("Police officers conduct approximately 29,000 arrests every day—a dangerous task that requires making quick decisions in 'circumstances that are tense, uncertain and rapidly evolving.'"). Unfortunately, we live in a world of incredible violence, where mass shootings are happening more and more frequently and citizens are being terrorized by suspects wielding weapons—on the streets that they drive on, in the schools that they attend, in their workplaces, and from hotel rooms. The case law does not hold that officers have to wait—until people are shot and killed—before they can use preventative active shooter tactics, including having their guns drawn. *See Terry v. Ohio,* 392 U.S. 1 (1968).

# I.   LAW AND ARGUMENT
## A.  Plaintiffs' Statement of Facts ("PSOF," DOC. 287) is Improper Argument.

LRCiv 56.1(b) "does not permit explanation and argument supporting the party's position to be included in the . . . statement of facts," and requires arguments to be made in the response brief, "but within the page limits." *Marceau v. Int'l Broth. of Elec. Workers*, 618 F. Supp. 2d 1127, 1141 (D. Ariz. 2009) (citing *Pruett v. Arizona*, 606 F. Supp. 2d 1065, 1075 (D. Ariz. 2009)). A party's failure to comply with this rule is sufficient grounds for this Court to disregard its statement of facts. *See Pruett*, 606 F. Supp. 2d at 1075. Here, Plaintiffs' 55-page Statement of Facts (Doc. 287) is replete with improper argument based solely on immaterial facts and/or bare assertions. Plaintiffs often cite sources that do not raise a material dispute, are interpretations of facts, conclusions,

1   and are followed by more argument, which Defendants dispute. *See*, for example, PSOF

2   ¶¶ 226-238, 239-253. Other "facts," are merely their expert's opinion—in the form of an

3   unsworn report—does not create any question of fact. This obfuscation is completely

4   unnecessary given the existence of two videos of the event. Plaintiffs contend that the

5   video "speaks for itself," is the most critical evidence, and argues that everything before

6   Shaver exited the room is immaterial—conceding that there is no material fact in dispute

7   about anything that appears on the video. *See Scott v. Harris*, 550 U.S. 372 (2007).

8       Plaintiff should not be allowed to "heav[e] the entire contents of a pot against the

9   wall in hopes that something will stick." *Indep. Towers of Wash*., 350 F.3d at 929. The

10  Court should disregard all additional facts, arguments and explanations asserted in the

11  PSOF and accept Defendants' Statement of Facts (Doc. 187) as admitted for summary

12  judgment purposes. *See, e.g., Preston v. Alexander*, 2013 WL 1561062, at *4 (D. Ariz.

13  Apr. 12, 2013) (in excessive force case, failure to file controverting statement of facts that

14  complied with LRCiv. 56.1(b) rendered "Defendants' version of the facts

15  uncontradicted.").

16  **B.  Dismissed Claims, Court Orders, Bankruptcy Order of Discharge, and New Claims.**

17      Plaintiffs spend nearly two pages discussing their dismissed wrongful death state

18  law theories against the individual Defendants. *See* Doc. 286, pp. 22-25. But, Defendants

19  filed a Motion to Dismiss these claims for failure to serve a Notice of Claim and this

20  Court already dismissed all wrongful death claims. *See* Doc. 137. This dismissal operates

21  to bar any *respondeat* superior claims against the City as well. *See Law v. Verde Valley*

22  *Med. Ctr.* 217 Ariz. 92 (App. Div. 1 2007); *Ferreira v. Arpaio*, 2016 U.S. Dist. LEXIS

23  97484 (D. Ariz. 2016) (failure to comply with the Notice of claim statute results in

24  dismissal with prejudice: "where claims against an individual employee-or employees—

25  are 'dismissed with prejudice,' then the employer can never be found vicariously

26  liable.'").

27      Next, Plaintiffs argue Brailsford's conduct bars summary judgment, but the

28  bankruptcy court issued a discharge order for all of the Shavers' claims against him. The

3

1  Shavers must dismiss with prejudice all claims against him. The *respondeat* superior
2  claims then also fail against the City as a result.

3       There is also an entire section devoted to Defendants allegedly untimely expert
4  disclosures. This argument contravenes the Court's Scheduling Order, which—based
5  upon good cause—extended the discovery deadline for Defendants' experts until January
6  18, 2019. *See* Doc. 211. The City Defendants' expert report was produced over a month
7  before this deadline. This argument is an unnecessary frolic and detour and without merit.

8       Finally, Plaintiffs Amended Complaint contains no claim for failure to intervene in
9  Sgt. Langley's commands. Instead, Plaintiffs' claims against the individual Defendants
10  centered on their integral participation in Brailsford's conduct, not Sgt. Langley's.  This is
11  a completely new claim untimely created for the first time in the Response, which is
12  impermissible. *Nichols v. Harris*, 17 F. Supp. 3d 989, 994 (C.D. Cal. 2014) ("Despite
13  three opportunities to state his claims, Plaintiff simply did not raise a race-based
14  Fourteenth Amendment claim in this action. Assertion of a new claim on summary
15  judgment is improper.").

16      **C. Plaintiffs' Provocation Theories are Barred by *Mendez*.**

17       Every single theory advanced by Plaintiffs is a provocation theory that is directly
18  tied to a claim of bad tactics that allegedly caused Brailsford to use excessive force: (1)
19  responding to the call as if it was an "active shooter," (2) alleged minimal investigation
20  before proceeding to the Fifth Floor; (3) proceeding with guns drawn; (4) the officers
21  should have approached Shaver sooner and moved in to arrest him, notwithstanding the
22  unknown location of the third person; (5) Portillo left her purse in the hallway and officers
23  should have retrieved it; (6) performing a proper threat assessment; (7) not clearing the

24

25

26

27

28

1   surrounding rooms; and (8) not having more backup.[1] Plaintiffs' punitive damages request
2   is also directly tied to these provocation theories.

3       Plaintiffs disregard *Mendez* and do not address any of the cases cited by
4   Defendants, coming after *Mendez*, where the plaintiffs advanced the same types of
5   theories that were rejected as provocation theories: *Knox v. City of Fresno*, 708 Fed.Appx.
6   321 (9th Cir. 2017) (unpublished); *Woodward v. City of Tucson*, 870 F.3d 1154 (9th Cir.
7   2017); and *See Burns v. City of Concord,* 2017 U.S. Dist. LEXIS 195389 (N.D.Cal. 2017).
8   Indeed, Plaintiffs' Rule 56(d) request seeks discovery that is directly contrary to *Knox,*
9   stating that "the reasonableness of the officer's prior actions and decisions are not to be
10  taken into account" and that there cannot be a Fourth Amendment violation for the same.
11  Notably, *Knox* also cited to *City & County of San Francisco v. Sheehan*, 135 S.Ct. 1765
12  (2015), for the portion of *Billington v. Smith*, 292 F.3d 1177 (9th Cir. 2002) that remains
13  intact: "[a plaintiff] cannot 'establish a Fourth Amendment violation based merely on bad
14  tactics that result in a deadly confrontation that could have been avoided.'" Plaintiffs'
15  provocation theories should be rejected.

16  **D. There Was No Fourteenth Amendment Violation**

17      The appropriate standard for Plaintiffs' Fourteenth Amendment claim is whether
18  the conduct "shocks the conscience"—meaning that the officers acted with a "purpose to
19  harm" the decedent that was "unrelated to legitimate law enforcement objectives." *Porter*
20  *v. Osborn*, 546 F.3d 1131 (9th Cir. 2008). This standard applies because the commands
21  and shooting occurred in mere seconds. In *Daily v. City of Phoenix*, 2019 U.S. App.
22  LEXIS 15041 (9th Cir. May 21, 2019) (memorandum decision), the Court applied this

23  _____

24      [1] Some of these theories bear no relationship to the shooting itself. Whether or not
    the officers cleared the surrounding rooms is irrelevant. No hotel guest exited a room on
25  the fifth floor immediately before, during, or immediately after the shooting. Moreover,
    there is not a single case that stands for the proposition that officers—faced with a call of
26  an armed subject in a hotel—should first clear the hotel and hope that he does not start
    shooting as they are in the process of doing so, thereby harming innocent civilians in
27  direct abrogation of their community caretaking functions. Having additional officers is
    also irrelevant. The shooting did not happen because of not enough officers were present.

28

1    standard to affirm dismissal of a Fourteenth Amendment familial association claim, tied to

2    a police shooting, even where they remanded the Fourth Amendment claim because of an

3    asserted question of fact. The Court also rejected arguments that the officers' Facebook

4    posts about wanting to firearm and disdain for a vaguely defined group of criminals, did

5    not "indicate that [the officer] acted with a purpose to harm [the decedent] specifically,

6    because they were not directed to [the decedent]…a jury could not reasonably conclude

7    that the [officer] acted without a legitimate law enforcement objective in mind, even if he

8    used excessive force in his actions." *Id.* at * 4; *see Gonzalez v. City of Anaheim*, 747 F.3d

9    789 (9th Cir. 2014) (dismissal of familial association claim even where there is a genuine

10   dispute of fact on the excessive force claim).

11          Here, the situation involving the individual Defendants is even more attenuated for

12   the individual Defendants, than in *Daily*, because they did not use any force. The officers

13   were acting pursuant to legitimate law enforcement objectives—community caretaking for

14   the occupants of the hotel, responding to reports of a rifle, and attempting to prevent harm

15   to innocent civilians. *See Ames v. King County, Washington*, 846 F.3d 340, 348 (9th Cir.

16   2017). There is no evidence of any animus directed to Shaver, nor can Brailsford's dust

17   cover be attributed to them. *See Fernandez v. Virgillo*, 651 F. App'x 692, 693-94 (9th Cir.

18   2016) (shooting officer's purposes cannot be imputed to the non-shooting officer).

19   Finally, there is no case law that would have put them on notice regarding any obligation

20   to intervene in Sgt. Langley's commands because the law, on commands, is not clearly

21   established. *Reynolds v. Cnty. of San Diego*, 84 F.3d 1162, 1169 (9th Cir. 1996) ("an

22   officer cannot be expected to accurately anticipate all of the possible responses a subject

23   may have to his commands and then tailor his actions accordingly in order for his conduct

24   to fall into the category of what is considered reasonable.'"). The officers cannot know

25   what the commands were going to be until they were spoken and Plaintiffs do not identify

26   what alleged "intervention" should have taken place for the commands that would have

27   prevented the shooting, which Brailsford testified was not based upon any commands.

28

### 1. *Integral Participation Does Not Apply to Spontaneous Events.*

The integral participation theory has never been endorsed by the United States Supreme Court and its genesis in the Ninth Circuit comes from search warrant executions, a fact Plaintiffs do not dispute. Th Ninth Circuit has also applied, in the limited situation, where a plaintiff has no ability to identify who harmed him. *See Smith v. County of Santa Cruz*, 2019 U.S. Dist. LEXIS 101958, *21, n. 9 (N.D. Cal. 2019) ("The integral participant theory appears to apply in struggle situations in which the plaintiff could not 'identify precisely which officer delivered which blow.'"). Defendants contend that integral participation is an unwarranted expansion of Section 1983 liability not endorsed by the Supreme Court, or Congress. And, even if it is a permissible theory, neither of the factual situations where the doctrine has been applied are present here, nor do Plaintiffs identify any Fourteenth Amendment claim that this theory has been applied to.

The primary case that Plaintiffs rely upon to support this theory is *Boyd*, yet they their interpretation of *Boyd* was rejected in *Sjurset v. Button*, 810 F.3d 609 (9th Cir. 2015):

But Sjurset's reliance on *Boyd* is misplaced both factually and legally. As a factual matter, the officers in *Boyd* acted as a collective team and were carrying out a preplanned search operation. *Id*. at 777. Before the search, the officers "gathered for a briefing" and "discussed various circumstances surrounding the operation." *Id*. Only after this collective discussion did the supervising sergeant make the ultimate decision to use a flash-bang device. *Id*. In contrast, no facts in this case suggest that the Stayton officers were privy to any discussions, briefings, or collective decisions made by DHS in its protective-custody determination. Moreover, even after the sergeant in Boyd made his decision, the officers collectively discussed "the manner of deploying the flash-bang. . .taking into account the fact that several people might be sleeping in the apartment." *Id. Boyd* thus involved a collective decisionmaking process among the officers, with the result that all of them could be considered "integral participants" in the execution of the plan. *Id*. It does not squarely address the case at hand, wherein an entirely separate agency—DHS—made a protective-custody determination over which the Stayton officers had no input. And even if we were to assume that the Stayton officers were "integral participants" in the execution of the protective-custody determination, *Boyd* would not help Sjurset's argument. This is because in *Boyd* we ultimately concluded that—despite the existence of a constitutional violation—the officers were entitled to qualified immunity because no clearly established law specifically precluded the use of a flash-bang device in the context of a search. *Id*. at 784 (holding that "a reasonable officer faced with these facts, and without guidance from the courts, was not on notice that the use of a flash-bang was unconstitutional"). *Boyd* thus supports the notion that even officers who are integral participants in an unconstitutional search are immune from liability if the unlawfulness of the conduct is not clearly established. In sum, neither *Wallis* nor *Boyd* clearly establishes that the Stayton officers

violated Sjurset's constitutional rights when they acted in reliance on DHS's protective-custody determination.

*Id*. at 20-21. *Boyd* was a scripted use of force, where the officers did not deviate from the script—knew and then debated the risk of the specific force—and then determined that they would and did use the force anyway. *Boyd* did not address an unplanned use of force made in a split-second, the giving of police commands, or intervening in force that was not pre-planned. Like in *Sjurset,* the facts of *Boyd* bear no resemblance to the facts of this case. The individual Defendants were not integral participants. *Burns v. City of Concord,* 2017 U.S. Dist. LEXIS 195389 (N.D.Cal. 2017).

### 2. *Failure to Intervene.*

Although Defendants cited to specific cases outlining the contours of a failure to intervene claim, Plaintiffs do not address or attempt to distinguish any of them: *Ting v. United States*, 927 F.2d 1504 (9th Cir. 1991); *Burns*; *Nelson v. City of Los Angeles*, 2018 U.S.Dist. LEXIS 114651 (C.D.Cal. 2018); *Fernandez*. All of these cases establish that the individual Defendants did not have any constitutional obligation, or opportunity, to intervene under the circumstances of this case.

Seemingly abandoning the theory that the officers should have intervened in Brailsford's force because of their expert's admission that there was no opportunity to do so, Plaintiffs' new theory is that the individual Defendants "had an opportunity to intervene to prevent Langley from using excessive force," yet Sgt. Langley did not use any force. He issued commands, which none of the officers perceived as a directive to shoot Shaver, including Brailsford. (DSOF ¶ 95, 97, 113, 137, 149, 151, 169-170). This new theory lacks little logical sense and has no causal relationship to the shooting. The officers each believed that they would be required to make their own decision to shoot and that nothing Sgt. Langley could say, would change this. The individual Defendants were in control of their own actions and, thus, did not need to intervene in Sgt. Langley's commands in order to control their own decision not to use force. This is again, a theory premised on the notion that the commands caused Brailsford to shoot, despite the fact that no officer, including Brailsford, endorsed this. If the expert concedes that no officer had a

8

1  reasonable opportunity to intervene to prevent the shooting, it is even less logical to
2  conclude that the officers had an opportunity to intervene in the commands.

3      The argument about intervention in the form of de-escalation is also based upon the
4  flawed premise that the individual Defendants knew that that Brailsford was going to use
5  force before he did. Plaintiffs cite to no facts to support this assertion, nor do they explain
6  what the purported intervention should have been. Plaintiffs ignore Officer Doane's de-
7  escalation of transitioning from his handgun to his Taser, an intermediate force option—a
8  transition that was made during Sgt. Langley's commands rebutting the idea that the
9  commands created an escalation of force. And, as Shaver reached his hand up toward the
10 small of his back, the video captures multiple officers yelling "DON'T, DON'T,
11 DON'T!," which is verbal intervention.  Like in *Ting*, *Nelson*, and *Fernandez*, the officers
12 had no time, or opportunity, to intervene in any meaningful way and, no authority clearly
13 established to the officers how they were supposed to intervene in some other manner.

**E. The Individual Officers Are Entitled to Qualified Immunity.**

14      Plaintiffs cite to outdated law on qualified immunity arguing that this doctrine is
15 unavailable unless: (1) there is no constitutional violation; and (2) the law was clearly
16 established. Yet, the case Plaintiffs cite for this, *Saucier v. Katz*, 533 U.S. 194 (2001), was
17 overruled by *Pearson v. Callahan*, 555 U.S. 223 (2009). Relying on this old law, Plaintiffs
18 wholly fail to address the clearly established prong of qualified immunity resting only on
19 the assertion that there was no constitutional violation. It is impossible to even
20 manufacture an argument for them because, the only law—cited in other sections of their
21 pleading—pertains to the <u>generalized</u> standards of Fourteenth Amendment familial
22 liability, integral participation, and failure to intervene, or are out of jurisdiction and
23 factually dissimilar.  Plaintiffs do not address any of the cases Defendants cite, which is
24 waiver.

25      None of Plaintiffs' theories are endorsed by factually similar law. The Plaintiffs'
26 reliance on *Boyd* to support the generalized proposition that integral participation exists as
27 a theory under the law, does not even establish that there was a constitutional violation, let
28

1    alone that the law was clearly established. As *Sjurset* recognized, *Boyd* granted qualified

2    immunity to the officers holding that the law on flash bangs was not clearly established

3    under the facts. Using *Boyd* to deny qualified immunity on the basis that it establishes a

4    "general statement[] of the law" related to integral participation is the same as using

5    *Graham* as a basis for denying qualified immunity. *See Kisela v. Hughes*, 138 S.Ct. 1148

6    (2018) (noting that 'the general rules of *Garner* and *Graham* do not by themselves create

7    clearly established law outside an 'obvious case,'" and holding that an officer who shot a

8    woman behind a chain link fence armed with a knife was entitled to qualified immunity).

9    The individual Defendants are entitled to qualified immunity.

**F.  The Punitive Damages Claim Should be Dismissed.**

10        All of Plaintiffs claims against Brailsford have been discharged and should be

11   dismissed. Brailsford's alleged subjective state of mind is irrelevant to the individual

12   Defendants and not a basis to deny their request for summary judgment. No reasonable

13   jury could contend that the individual Defendants non-use of force was done with an evil

14   mind. None of the individual Defendants "demeaned or humiliated" Shaver and Plaintiffs

15   do not dispute that all of the officers testified that it was their intent to safely take Shaver

16   into custody.  (DSOF ¶ 146, 173, 178).

**G.  Plaintiffs' *Monell* Claim Fails.**

17        Plaintiffs boldly declare that there is a *Monell* violation without citing a single

18   court decision and by referring this Court to a litany of facts in the PSOF, which are then

19   not tied appropriately to exhibits. This Court, in *Jensen v. Burnsides*, 2008 U.S. Dist.

20   LEXIS 89325 (D.Ariz. 2008), dismissed *Monell* claims where Plaintiffs engaged in the

21   same tactics, finding such a "response is insufficient to constitute an argument before this

22   Court." This Court explained that it "cannot manufacture arguments" for a party; issues

23   must be "*specifically and distinctly*" raised; contentions must be reasoned; and issues are

24   waived unless properly argued and explained. *Id.* Because the plaintiff simply made a

25   "bold assertion that evidence supports their claim for municipal liability, and then cite[d] a

26   string of paragraph numbers from their statement of facts that ostensibly support that

27

28

contention," the court found the response was "not an argument, much less" a specific, distinct, and reasoned one and dismissed the *Monell* claims for failure to raise a triable issue. *Id.* at *11 (citing *Hibbs v. Dep't of Human Res.*, 273 F.3d 844, 873 n.34 (9th Cir. 2001); and *Keenan*, 91 F.3d at 1278-79). Like in *Jenson,* Plaintiffs' response to the *Monell* claims fails to raise a triable issue, so the claims should be dismissed.

Although Defendants Motion carefully and painstakingly set forth, in separate sections, the law and facts relating to various components of the Fourteenth Amendment *Monell* claim, Plaintiffs Response addresses only training and failure to discipline. The failure to so respond or address an issue constitutes abandonment of that claim and/or concession to its dismissal on summary judgment. *See Shakur v. Schriro*, 514 F.3d 878, 892 (9th Cir. 2008); *United States v. Toyota of Visalia*, 772 F. Supp. 481, 482 n.1 (E.D. Cal. 1991) (failure to respond concedes summary judgment on that issue), *aff'd sub nom. United States v. Toyota of Visalia, Inc.*, 988 F.2d 126 (9th Cir. 1993). By failing to respond to specific argument on hiring, screening, policy and ratification relating to this incident, Plaintiffs concede to dismissal on these grounds. Plaintiffs also never address the law on AZPOST training and certification, instead inaccurately claiming only that the Defendants did not establish AZPOST certification.[2]

Plaintiffs also do not address the viability of a *Monell* claim in the setting of a Fourteenth Amendment claim. If there can even be a Fourteenth Amendment *Monell* claim, Plaintiffs cannot show any widespread deficiency in training, or failure to discipline for prior incidents, that was undertaking with either deliberate indifference or purpose to harm familial association rights.

### 1.  The *Monell* Training Claim Fails.

Plaintiffs claim that the City "failed to train Defendants," but a *Monell* claim cannot be based upon this incident alone, Plaintiffs must show a systemwide deficiency in

---

[2] Plaintiffs state only that it has not been established the officers were AZPOST trained, yet Defendants attached this support. *See* Doc 266-22 (Gomez testimony); 266-23 (Brailsford Testimony); 266-30 (Elmore testimony); Doc 266-11 (Doane Testimony); 266-32, pp. 7, 8, 42, 66 (training records for all officers identifying Academy training).

training, something they do not do. Plaintiffs focus solely on these officers acting in this incident. *McDade v. W.*, 223 F.3d 1135, 1141 (9th Cir. 2000).

Additionally, while Plaintiffs make allegations about training, their PSOF and Response frequently fails to reference specific facts and/or exhibits, or cites to multiple groups of exhibits. For example, Plaintiffs attach Exhibits 19-35, 39-40, 43-45 to their PSSOF and expect the Defendants and this Court to ferret through them to find the alleged support for the "facts." A number of these exhibits are grouped together in mass in a single statement of "fact" and referred to in support of generalized statements such as "the actions and inactions of the Defendants were shocking to the conscience." *See* Doc. 287, p. 25. This is not a fact. It is an argument.  Plaintiffs' approach is particularly problematic where Plaintiffs selectively quote from training materials, take statements out of context, and make arguments that are contrary to the plain language of the materials. At other times, they cite to the City's own training at the standard, which is illogical in connection with a claim that there is no training. This amounts to, at most, an argument that the City does have a training program, but that the officers allegedly did not follow their training, which cannot state a claim under *Monell*.  *See City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *Merritt v. Cty. of Los Angeles*, 875 F.2d 765, 770 (9th Cir. 1989) ("Mere proof of errant behavior is a clearly insufficient basis. . ."); *Hulstedt v. City of Scottsdale*, 884 F. Supp. 2d 972, 1016 (D. Ariz. 2012) (finding that individual officers' unfamiliarity with material used to train them "does not give rise to municipal liability on a failure-to-train theory").

Notwithstanding the fact that the officers are AZPOST certified and the City has a training program, Plaintiffs cite to no case that holds that their "visual inspection" theory of training is constitutionally deficient, because it is not. If visual inspection for weapons—concealed under clothing—was the standard, the United States Marshall service would not have an x-ray scanner or metal detection systems when individuals enter the courthouse. Weapons are often concealed creating a safety hazard for officers, and the public. *See Bull v. City & County of San Francisco*, 595 F.3d 964 (discussing

1    concealed weapons and contraband in the setting of the bounds of constitutional strip

2    searches). Plaintiffs argument is also contrary to the numerous cases across the country

3    finding officer shootings constitutional even though the object that the officer believed to

4    be a firearm was something else, like a wallet, or simulated weapon. *See Corrales v.*

5    *Impastato*, 650 Fed.Appx. 2016 (9th Cir. 2016) (no constitutional violation for shooting

6    involving a suspect simulating a weapon with his finger). Likewise, there is no evidence

7    that the City "was faced with a pattern of similar constitutional violations by untrained

8    employees," related to "visual inspections" that would put the City "on 'notice that a

9    course of training was deficient in a particular respect.'" *Flores v. County of L.A.*, 758

10   F.3d 1154, 1159 (9th Cir. 2014)

11       Plaintiffs next contend that the City failed to train on de-escalation, arguing that the

12   officers received de-escalation training after the incident only, but the materials that they

13   attach refute this: "De-escalation Defined…New term for an old concept!" *See* Doc. 287-

14   21, COP_000690. The prior use of force training included de-escalation concepts, without

15   use of the term "de-escalation." AZPOST training and the City of Mesa training

16   specifically addressed use of force training, under the rubric of *Graham* and the factor of

17   the least intrusive alternatives as the officers extensively testified about. This theory is

18   simply another way to argue *Mendez* type tactics in this incident, not related to any

19   systemic training issue. And, the only "facts" that Plaintiffs address are the facts of this

20   incident, ironically chastising the officers for not de-escalating with a Taser, yet this is

21   exactly what Officer Doane did.

22       **2.  The *Monell* Failure to Discipline Claim Fails.**

23       Plaintiffs do not clearly identify the basis for their *Monell* claim that is somehow

24   tied to IA investigations involving Sgt. Langley and Brailsford before this incident.[3]

25   Defendants dispute the materiality of PSOF ¶¶ 220-225. There is not a single case cited,

26   or any <u>legal</u> argument made related to this discipline type *Monell* theory. To support it,

27   _____
        [3]Plaintiffs generically refer to "Defendants" when mentioning other uses of force,
28   but there is no evidence cited to related to Doane, Elmore, Cochran, or Gomez.

1   Plaintiffs cite to PSOF 220-221, which states that "Defendants knew or should have
2   known that Brailsford and Langley were prone to excessive force and failed to take any
3   steps to prevent them from using excessive force." But, the individual Defendants are not
4   policy makers and thus their failure to take action cannot be the basis of a *Monell* claim.

5       If the theory is that the City ignores use of force, this is directly contradicted by the
6   IA documents attached where there were investigations—related to Sgt. Langley and
7   Brailsford. *See* Doc. 287-48. As it relates to Sgt. Langley, the sole IA report, for which he
8   was exonerated, involved a solitary use of a Taser in drive-stun to the shoulder blade,
9   during a physical struggle that did not involve any officers using firearms. It bears no
10  resemblance to this incident. *See* Doc. 287-48, p. 5. Likewise, as it relates to Brailsford,
11  the prior investigation involved a physical struggle with no use of any police tools or
12  firearms. Neither prior investigation establishes a *Monell* violation. *Santiago v. Fenton*,
13  891 F.2d 373, 382 (1st Cir. 1989) ("[W]e cannot hold that the failure of a police
14  department to discipline in a specific instance is an adequate basis for municipal liability
15  under *Monell*."); *Garcia v. City of Imperial*, 2010 U.S. Dist. LEXIS 105399, 2010 WL
16  3911457, at *1-2 (S.D. Cal. Oct. 4, 2010) (finding that plaintiff must show more than "the
17  fact that a policymaker concluded that the defendant officer's actions were in keeping with
18  the applicable policies and procedures").

19      **H.  Wrongful Death Claim and Waiver Related to any Direct Gross
           Negligence Claims.**

20      As outlined above, Plaintiffs Response focuses on claims that have been dismissed
21  against the individual Defendants and that must be dismissed because of the discharge
22  order. Notwithstanding the bankruptcy discharge, Plaintiffs' *respondeat* superior claims
23  are also barred by *Ryan v. Napier* and A.R.S. § 12-820.05. The dust cover—with the
24  phrase *Molon Labe* used frequently in support of the Second Amendment right to bear
25  arms, does not establish any propensity and is, at most, inadmissible evidence under
26  Fed.R.Evid. 404(b). The right to bear arms does not equate to advocating the use of arms
27  unjustifiably. Plaintiffs now appear to shift gears and claim that Brailsford's actions were

28

not intentional, but where the result of an internal contagion effect, focusing on speculation about his thought process that is contrary to the criminal trial testimony. Yet, *Ryan v. Napier* also specifically rejected this type of internal thought process claim.

Defendants Motion addressed the lack of evidence related to a gross negligence training, hiring, and supervision claims against the City, related to the individual Defendants and Brailsford.[4] In their Response, Plaintiffs do not address any of these claims, appears to have abandoned the same, and as a result waiver applies.

**I. Plaintiffs' Rule 56(d) Request Should be Denied.**

Rule 56(d) can be invoked by a plaintiff if "a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed.R.Civ.Pro. 56(d). There are three parts to this analysis: (1) whether the affidavit from the nonmovant sets forth the specific facts that it hopes to elicit from further discovery; (2) that the facts sought exist; and (3) the facts are essential to oppose the motion. *Family Home & Fin. Ctr. Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822 (9th Cir. 2008). The party seeking relief bears the "burden to show what specific facts it hopes to discover that will raise an issue of material fact." *Continental Maritime v. Pacific Coast Metal Trades*, 817 F.2d 1391, 1395 (9th Cir. 1987). "The burden is on the party seeking additional discovery to proffer sufficient facts to show that the evidence sought exists, and that it would prevent summary judgment." *Chance v. Pac-Tel. Teletrac, Inc.*, 242 F.3d 1151, 1161 n. 6 (9th Cir. 2001). Setting forth a laundry list of discovery, without identifying specific fasts that actually exist, is insufficient. As noted in *Cnty. of San Bernadino*, 2016 U.S. Dist. LEXIS 3970, *13-14 (C.D. Cal. 2016):

Plaintiffs' counsel's laundry list of additional discovery does not identify with

---

[4] Plaintiffs address the gross negligence standard as it relates to the already dismissed state law claims arguing that this only applies to an administrative police investigation, but this is also contrary to the statute and the cases interpreting it. The gross negligence standard also applies to the City. *Spooner v. City of Phoenix*, 435 P.3d 462 (App. Div. 1. 2018) involved the same discretionary decision making at issue here: "public policy mandates that investigative police work, performed in the scope of an officer's public duty, is a discretionary act subject to immunity." Plaintiffs challenge the investigative work of officers in this case. Plaintiffs also fail to address the holding of *Noreiga v. Town of Miami*, 243 Ariz. 320 (App. Div. 1 2017).

specificity the facts he hopes to obtain. Nor has he made the showing that such facts exist. Instead, Plaintiff's counsel appears to be engaged in a fishing expedition in the hope that he might obtain evidence to support his theories. Finally, the general categories of evidence Plaintiff's counsel hopes to obtain would not defeat defendants' Motion for Summary Judgment.

*Id.* Where discovery has closed, Rule 56(d) works in conjunction with Rule 16:

Plaintiff has not shown that the discovery she seeks should be authorized since it is sought after the expiration of the discovery completion period prescribed in the Rule 16 scheduling order. Even though Plaintiff 'd[oes] not specifically request that the court modify the [discovery completion period prescribed in the] scheduling order,' this must occur before Plaintiff could be authorized to conduct the discovery she seeks. *Johnson v. Mammoth Recreations, Inc*., 975 F.2d 604, 608 (9th Cir. 1992).

*See Marzetta v. Comcast*, 2014 U.S. Dist. LEXIS 113916 (E.D. Cal. 2014); *Clauder v.*

The request may be denied if it is evident that the nonmovant "failed to diligently pursue

discovery in the past." *Chance v. Pac-Tel Teletrac Inc*., 242 F.3d 1151 (9th Cir. 2001);

*Martinez v. Columbia Sportsware USA Corp*., 553 F.App'x 760, 761 (9th Cir. 2014) ("In

ruling on a 56(d) motion, a district court considers…whether the movant was diligent.").

Defendants filed a Protective Order outlining the procedural history of this case as it relates to Plaintiffs' avowals to the Court that that they would move to lift the bankruptcy stay, failure to do so, delay following Defendants' filing of the Motion for Summary Judgment in Requesting Rule 56(d) relief, and failure to file a Rule 16 request establishing good cause to modify the Scheduling Order. *See* Doc. 311. In conjunction with their Rule 56(d) request for relief, Plaintiffs did not simultaneously file a Rule 16 request to modify the Scheduling Order establishing good cause. As discovery has closed, Plaintiffs must necessarily obtain a new deadline for a Scheduling Order before taking depositions and their present filing does not establish any good cause. There is no explanation for why the Plaintiffs did not move, under Rule 16(d), earlier.

Plaintiffs state that depositions have not been taken, yet Plaintiffs never noticed a single deposition in this case. They did not serve any written discovery—Requests for Admission, Requests for Production, or Non-Uniform Interrogatories. Plaintiffs did not need to conduct, or wait for any depositions, to serve written discovery tailored to their claims (which are different from the Sweet claims). The Shaver Plaintiffs' police

procedures expert authored his report without any depositions and was silent on the conduct of the individual officers and also silent on supervision, hiring, and training. Voluminous amounts of training materials were produced in response to written discovery served by the Sweet Plaintiffs, yet the police procedures expert did not comment or offer an opinion relating to any of them. Nor did the Shaver Plaintiffs serve any written discovery related to these materials.

Plaintiffs seek more discovery, but at the same time admit that the incident is on video, is the most critical evidence, that "video speaks for itself." The videos both have sound and Plaintiffs do not challenge the view, angle, or quality of the video. Plaintiffs' generalized statement that they need depositions, because they do not have all the facts is insufficient. Plaintiffs do not identify the specific facts they belief that the Defendants would testify to about their "knowledge," and how that would defeat summary judgment in light of the objective nature of an excessive force inquiry. Each of the Defendants exhaustively testified at the criminal trial about the events at issue, what they saw and perceived, and "knew," but Plaintiffs offer no specific information about how this testimony is supposedly lacking. *See Jones v. Blanas*, 393 F.3d 918, 930 (9th Cir. 2004) (noting that "summary judgment in the face of requests for additional discovery is appropriate only where such discovery would be 'fruitless' with respect to the proof of a viable claim"). Plaintiffs seemingly speculate that the depositions would somehow change what the officers testified to, or what appears on the video, which is not a basis for Rule 56(d) relief.

Plaintiffs also identify multiple immaterial issue for the basis of their request. For example, in responding to Defendants' Statement of Fact No. 64, Plaintiffs assert that they need discovery to determine which phone Officer Cochran used to call Shaver, yet the only pertinent issue is that a call was placed—not which phone it was placed on (Officer Cochran testified that he used the hotel phone to place the call, so how this will change if he is deposed is unknown). Plaintiffs do not dispute that the call was placed to Shaver, that he eventually answered it, and that Shaver was given instructions. Plaintiffs also state

17

1  that they need additional discovery to identify what Officers actually knew from the CAD

2  records. Yet, the CAD records state who is making the transmissions. Thus, Plaintiffs

3  cannot seriously contend that an officer who made a transmission over the radio did not

4  know of the substance of his own transmission. As cited to in Defendants' Global

5  Statement of Facts, the Officers also testified about what they heard over the radio before

6  responding, which is then confirmed by the CAD. And, "the ideas that the Defendants'

7  had in their minds," are not relevant because the relevant inquiry is objective, not

8  subjective.

9       Plaintiffs also make no attempt to narrow their request by identifying the specific

10  claims for which Defendants make legal arguments. For example, this Court can decide

11  qualified immunity based upon the status of the law. If there are disputed facts, the Court

12  can view them in the light most favorable to the Plaintiffs and address whether there is

13  any clearly established law, without any discovery.  Indeed, in Plaintiffs' Statement of

14  Facts, Plaintiffs "disputed" facts are disputed largely because of the position that they are

15  immaterial.

16  **II.   CONCLUSION**

17       Summary judgment should be granted.

18       DATED this 8th day of July, 2019.

19

20                                 WIENEKE LAW GROUP, PLC

21                          By:    */s/ Christina G. Retts*
                                 Kathleen L. Wieneke
22                                 Christina Retts
                                 1095 West Rio Salado Parkway, Suite 209
23                                 Tempe, Arizona 85281
                                 *Attorneys for Defendants City of Mesa, Brian*
24                                 *Elmore, Christopher Doane, Bryan Cochran,*
                                 *and Richard Gomez*
25

26

27

28

1

2

## CERTIFICATE OF SERVICE

3

4

I hereby certify that on July 8, 2019, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

5

6

Mark D Zukowski:                    mzukowski@jshfirm.com,
                                    klewis@jshfirm.com

7

8

James J Belanger:                   jjb@jbelangerlaw.com,
                                    lmj@jbelangerlaw.com

9

Daniel J O'Connor                   caseadmin@occlaw.com

10

11

William August Richards             brichards@baskinrichards.com,
                                    cmcdonald@baskinrichards.com

12

13

David Eric Wood                     dwood@baskinrichards.com,
                                    cmcdonald@baskinrichards.com,
                                    nrynearson@baskinrichards.com

14

15

Justin Dean Holm                    justin.holm@occlaw.com,
                                    amanda.bennett@occlaw.com

16

17

David Calvin Potts                  dpotts@jshfirm.com,
                                    scoffey@jshfirm.com

18

19

Spencer Garrett Scharff             spencer@scharffplc.com

20

Sven Kortne Budge                   sbudge@budgelawfirm.com

21

Mark John Geragos                   mark@geragos.com,
                                    geragos@geragos.com

22

23

Benjamin Meiselas                   ben@geragos.com,
                                    geragos@geragos.com

24

25

Jonathan Paul Barnes                jbarnes@jshfirm.com,
                                    gstahly@jshfirm.com

26

27

28

19

1

2          I hereby certify that on this same date, I served the attached document by U.S.
Mail, postage prepaid, on the following, who is not a registered participant of the
3     CM/ECF System:

4          N/A

5
                                    By:    */s/ Lindsey M. Piasecki*
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28