**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Laney Sweet,<br><br>          Plaintiff,<br><br>v.<br><br>City of Mesa, et al.,<br><br>          Defendants.<br><br>Grady Shaver, et al.<br><br>          Plaintiffs,<br><br>v.<br><br>City of Mesa, et al.,<br><br>          Defendants. | No. CV-17-00152-PHX-GMS<br>**LEAD CASE**<br><br>**CONSOLIDATED WITH:**<br>No. CV-17-00715-PHX-GMS<br><br>**ORDER** |

Pending before the Court are multiple Motions for Summary Judgment against both groups of Plaintiffs. (Docs. 261, 265, 270, 271, 273, 276). As to Plaintiffs Laney Sweet, E.S., N.S. and the Estate of Daniel Shaver ("the Sweet Plaintiffs"), Defendants City of Mesa, Bryan Cochran, Christopher Doane, Brian Elmore and Richard Gomez, Defendant Charles Langley, and Defendant LQ Management LLC seek summary judgment on all remaining claims. (Docs. 261, 265, 271). Those same Defendants seek summary judgment on some or all of the Shaver Plaintiffs claims (Docs. 261, 270, 273). Plaintiffs have also filed a Joint Motion to Amend the Rule 16 Scheduling Order and conduct additional discovery. (Doc. 329). For the following reasons, the Court grants the Motion to Amend

the Rule 16 order, grants the motions for summary judgment in part, denies them in part and defers a ruling on some of the remaining claims until after further discovery is conducted.[1]

## BACKGROUND

On January 18, 2016, Daniel Shaver, a resident of Texas, was visiting Arizona and staying at a La Quinta Inn & Suites in Mesa. Mr. Shaver worked as a pest eradication specialist and was in Arizona on business.[2] Mr. Shaver's job required him to carry pellet rifles.

On the night of the incident, hotel employee Leticia Jimenez was approached by two hotel guests. They informed her that they could see an individual holding what they thought was a rifle with a scope in a hotel room. The guests pointed to Mr. Shaver's room on the fifth floor. Ms. Jimenez indicated that she knew that Mr. Shaver was staying in that room. The guests agreed that the hotel staff should call the police. Ms. Jimenez asked Mr. Johnson to call the police, and then went upstairs to investigate herself. Mr. Johnson relayed some information about Mr. Shaver to the police, including his approximate age and physical features.

Upon arriving at Mr. Shaver's room, Ms. Jimenez began asking questions about his pizza that he ordered. Mr. Shaver appeared confused as to why Ms. Jimenez was asking these questions. There were two other individuals in the room with Mr. Shaver. Mr. Shaver told Ms. Jimenez that everything was fine, and she went back downstairs.

By 9:15 p.m., several Mesa Police Department ("MPD") officers arrived on the scene. These officers included Defendants Charles Langley, Christopher Doane, Richard Gomez, Brian Elmore and Bryan Cochran, as well as Phillip Brailsford.[3] Sergeant Langley

---

[1] The request for oral argument is denied because the parties have thoroughly discussed the law and the evidence, and oral argument will not aid the Court's decision. See *Lake at Las Vegas Investors Group, Inc. v. Pac. Malibu Dev.*, 933 F.2d 724, 729 (9th Cir. 1991).

[2] At least some of the hotel staff—including Jeremy Johnson, who made the 911 call—knew of Mr. Shaver's occupation. (Doc. 310 Ex. 3 at 75:49 – 60).

[3] Although the Shaver Plaintiffs now assert that the bankruptcy proceeding against

was the commanding officer at the scene. Without speaking to the La Quinta employees about the situation, Sergeant Langley directed the MPD team to move up to Mr. Shaver's room. Officers Gomez, Cochran, Doane, and Elmore were all part of the team that went upstairs. Officers Doane and Elmore both had their weapons drawn initially, but Officer Doane switched to a taser when Mr. Shaver exited the room. Before heading upstairs, the police officers secured Mr. Shaver's vehicle and also established a perimeter around the hotel—depriving Mr. Shaver of any flight path.

An MPD officer called Mr. Shaver's room and told the inhabitants to exit the room into the hallway. Mr. Shaver and Ms. Portillo did so immediately (Mr. Nunez had left the room prior to MPD's arrival). At one point when Mr. Shaver was attempting to comply with commands, Sergeant Langley stated, "Alright, if you make another mistake, there's a very severe possibility you're both going to get shot." When Mr. Shaver attempted to speak, Sergeant Langley said "This is—shut up. I'm not here to be tactful and diplomatic with you. You listen, you obey." Sergeant Langley then asked Mr. Shaver to place his hands on the back of his head and interlace his fingers. Mr. Shaver did so. Next, Sergeant Langley instructed Mr. Shaver to cross his left foot over his right foot. Mr. Shaver did so. Sergeant Langley told Mr. Shaver "If you move, we're going to consider that a threat and we are going to deal with it and you may not survive it." Mr. Shaver began to crawl towards the officers, complying with their commands. As he did so, his athletic shorts started to fall down. Mr. Shaver reached backwards towards his pants. At the sight of this movement, Officer Brailsford fired five shots from his AR-15. Mr. Shaver died as a result of the shooting.

After the incident, Officer Brailsford was terminated from the Department and Sergeant Langley took an early retirement. Officers Cochran, Doane, Elmore, and Gomez remain employed by MPD.

///

///

Officer Brailsford is no longer ongoing, the Court assumes for purposes of this motion that the claims against him are stayed.

# DISCUSSION

## I.    Legal Standard

The purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323.  Parties opposing summary judgment are required to "cit[e] to particular parts of materials in the record" establishing a genuine dispute or "show[] that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1).

## II.    Analysis

### A.    Request to Amend the Rule 16 Order

The Sweet and Shaver Plaintiffs now request that the Court amend its Rule 16 order to allow additional discovery to be conducted.  Requests to amend a Rule 16 Order are governed by Rule 16(b)'s "good cause" standard. *Johnson v. Mammoth Recreations Inc.*, 975 F.2d 604, 609 (9th Cir. 1992).  This standard "primarily considers the diligence of the party seeking the amendment." *Id*.  And "[a]lthough the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification." *Id*.

The parties became aware of Officer Brailsford's pending bankruptcy on February 7, 2019.  At this time, the deadline for finishing discovery was March 7, 2019, and the

deadline for filling dispositive motions was April 26, 2019. After the bankruptcy proceedings began, all Defendants represented that they collectively believed that no additional discovery by any of the parties—even the deposition of Plaintiff Ms. Sweet—could go forward while Defendant Brailsford's bankruptcy proceeding was pending. (Doc. 326, Ex. B). As such, the Plaintiffs here were unable to complete all relevant discovery before these motions were filed.

Because the Defendants in this case collectively represented to Plaintiffs that no further discovery could proceed while the bankruptcy was pending (including discovery of Plaintiffs' witnesses), the Court finds that Plaintiffs have demonstrated good cause to amend the Rule 16 Order.[4] And although additional discovery and supplemental briefing may slightly prejudice Defendants as they suggest, that result flows directly from Defendants' own voluntary decision to halt discovery while the Motion to Stay was pending.

The Court will therefore reopen the discovery period for **ninety days** from the date of this order, in which the parties may seek to obtain that discovery that was specifically identified among the parties and sought prior to the bankruptcy proceeding. The new discovery cutoff is **October 30, 2019**. To obtain discovery that was not specifically identified and sought prior to the bankruptcy proceeding will require the party to separately show both good cause and unusual circumstances. After the discovery period is closed the parties will have **thirty days thereafter** up until **November 30, 2019,** in which they may file a supplement to their present briefing on the issues which remain open after this order which include: (1) Whether Ms. Sweet and N.S. have standing to bring certain claims, (2) whether the City of Mesa is entitled to summary judgment on Plaintiffs claims under 1983 or Arizona law for unconstitutional custom or practice, failure to supervise, ratification, or negligent hiring, (3) whether Officer Langley was properly notified of the Shaver

---

[4] Defendant Langley contends that the parties collectively agreed to postpone discovery, however, the emails provided by Plaintiffs state "the *defendants* do not believe we can go forward with Ms. Sweet's deposition on Feb. 9, as well as *any other depositions.* . . ." (Doc. 329, Ex. B) (emphasis added).

Plaintiffs' state law claims, (4) whether Plaintiffs have sufficiently pointed to facts from which a jury could find in their favor on the intentional infliction of emotional distress claim; and (5) whether Officers Gomez, Cochran, Doane, and Elmore are entitled to summary judgment on the state law wrongful death claim. The supplemental briefing will not exceed ten pages—and will contain only facts and argument discovered during the extended discovery period.

Additionally, if the parties agree that the bankruptcy proceeding as to Officer Brailsford has terminated, they shall conduct any discovery relating to Officer Brailsford in this same period. (At the time that Officer Brailsford filed for bankruptcy, there were twenty-eight days of discovery left prior to the cutoff). They may additionally move for summary judgment as to issues pertaining to him within the same motion deadline. (*See* Doc. 334).

### B.    Motion to Bifurcate

The City of Mesa and remaining individual officers request that this Court bifurcate two issues of standing as to the Sweet Plaintiffs from the other remaining issues at trial under Rule 42(b). Specifically, the City of Mesa argues that the Court must first determine whether Plaintiff Laney Sweet was Mr. Shaver's common law wife under Texas law, and also determine whether one of the child plaintiffs was Mr. Shaver's.

Rule 42(b) states that a court may order a separate trial of separate issues for convenience, to avoid prejudice, or to expedite and economize. District courts have broad discretion as to whether bifurcation is appropriate. *United States v. 1,071.08 Acres of Land, Yuma and Mohave Counties*, 564 F.2d 1350, 1352 (9th Cir. 1977). "The piecemeal trial of separate issues in a single lawsuit . . . is not to be the usual course, however, and will be ordered only where the party seeking separate trials meets his or her burden of proving that bifurcation is necessary." *Lassley v. Secura Supreme Inc. Co*., 2015 WL 5634307 at *2 (D. Ariz., Sept. 15, 2015) (internal citations and quotation marks omitted). At this time, Defendants have not met their burden of demonstrating that bifurcation is necessary here. Importantly, even if a jury were to find for Defendants on both of these standing arguments,

a trial on the merits would still be necessary for the remaining plaintiffs.  Accordingly, the Court denies the Motion to Bifurcate.

However, because Defendants state additional discovery may be necessary for proper resolution of this standing issues at summary judgment, the Court will defer a ruling on the standing arguments until after additional discovery on these two issues is completed, including the deposition of Ms. Sweet.

### C.    La Quinta

Because LQ Management moves for summary judgment against both sets of Plaintiffs on the same grounds, the Court will analyze their arguments as to both plaintiffs together.

####         1.    La Quinta is Immune From Plaintiff's State Law Negligence Claim.

In Arizona, "putative crime victims . . . are entitled to absolute immunity when they complain to police."  *Ledvina v. Cerasani*, 146 P.3d 70, 75 (Az. Ct. App. 2006).  This immunity extends to "victims of crimes as well as those who witness and report them." *Ledvina* 146 P.3d at 76.  *Ledvina* announced this broad immunity for two reasons: (1) to preserve "utmost freedom of communication between citizens and public authorities whose responsibility it is to investigate and remedy wrongdoing," *id.* at 75 (internal citation omitted), and (2) to further the policy embodied in the Arizona Constitution that crime victims "be free from intimidation, harassment, or abuse throughout the criminal justice process."  *Id.* (citing Ariz. Const. art. II, § 2.1(A)(1)).  Courts in this district have read *Ledvina* to prevent actions against individuals who report potential crimes to the police. *See Clark v. Minore*, 2017 WL 5668351, at *2 (D. Ariz. 2017) ("[C]ivil claims based on police reports are barred as a matter of law"); *Shelburg v. City of Scottsdale Police Dept.*, 2010 WL 3327690, at *12 (D. Ariz., 2010) ("Arizona does not have a cause of action for negligently calling the police").  In *Ledvina*, the court left open the possibility of exceptions to this broad immunity, including in cases of malicious prosecution or abuse of process. *Id*.

///

Here, Plaintiffs' allegations against La Quinta focus on the information (or lack thereof) provided to MPD in the 911 call, and subsequent interactions with hotel staff. Had La Quinta's employees provided additional or different information to the MPD, their argument goes, an accurate scope of the threat would have been relayed to the officers, and Mr. Shaver's death could have been avoided. Plaintiffs further allege that La Quinta negligently failed to implement policies that would have better facilitated their employees' processing of this information, and that their employees additionally acted negligently by not relaying additional information to the police regarding Mr. Shaver.

The broad immunity announced in *Ledvina* bars this claim. While *Ledvina* involved a defamation claim, not a negligence claim, other courts applying this privilege have explained that "the privilege cannot be defeated by providing a new label for the alleged wrong." *Hagberg v. California Fed. Bank*, 81 P.3d 244, 259 (Cal. 2004). The underlying conduct here—providing inaccurate or incomplete information to police—is the exact conduct for which *Ledvina* bars liability. Accordingly, La Quinta's Motion for Summary Judgment as to both sets of Plaintiffs is granted.

### 2. Rule 56(d) Motion

Because the Court finds that La Quinta is entirely immune from Plaintiffs' negligence claims, it will deny the Plaintiffs' Rule 56(d) motion as moot. Plaintiffs have not alleged a malicious prosecution or abuse of process claim against La Quinta, which are the kinds of claims that remain available under *Ledvina*. Accordingly, any further discovery would not change the outcome reached herein.

### D. Section 1983 Claims

### 1. Officers Gomez, Doane, Cochran, and Elmore

"Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (per curiam) (internal quotation marks and citation omitted). "In determining whether an officer is entitled to qualified immunity, [courts] consider (1) whether there has been a violation of a constitutional right;

and (2) whether that right was clearly established at the time of the officer's alleged misconduct." *Lal v. California*, 746 F.3d 1112, 1116 (9th Cir. 2014). The Supreme Court has cautioned lower courts not to define clearly established law "at a high level of generality." *White v. Pauley*, 137 S. Ct. 548, 552 (2017). District courts have discretion as to which prong of the qualified immunity analysis should be analyzed first. *See Jessop v. City of Fresno*, 918 F.3d 1031, 1035 (9th Cir. 2019). In the interest of preserving judicial resources, the Court will first analyze whether the right at issue here was clearly established as to Officers Gomez, Cochran, Elmore and Doane. *Id*.

To determine whether a right is clearly established, courts must examine "whether the state of the law at the time of the incident provided a fair warning to the defendant that his or her conduct was unconstitutional." *Jessop v. City of Fresno*, 918 F.3d 1031, 1035 (9th Cir. 2019) (internal citations and quotation marks omitted). When determining whether a right is clearly established, courts in this Circuit "may look at unpublished decisions and the law of other circuits, in addition to Ninth Circuit precedent." *Prison Legal News v. Lehman*, 397 F.3d 692, 702 (9th Cir. 2005). Under recent Supreme Court precedent, "[g]eneral excessive force principles, as set forth in *Graham* and *Gardner*, are 'not inherently incapable of giving fair and clear warning to officers,' but they 'do not by themselves create clearly established law outside an obvious case.'" *S.B. v. County of San Diego*, 864 F.3d 1010 1015 (9th Cir. 2017) (citing and quoting *White v. Pauly*, 137 S. Ct. 548, 552 (2017)). Instead, courts undertaking the qualified immunity analysis must "identify a case where an officer acting under similar circumstances as [Gomez, Cochran, Doane, and Elmore] w[ere] held to have violated the Fourth Amendment." *Id*. at 1015–16.

Plaintiffs primarily focus on the conduct of Sergeant Langley and Officers Brailsford, however, Plaintiffs must point to a particular precedent that articulates "a constitutional rule specific enough to alert *these* deputies *in this case* that *their particular conduct* was unlawful." *Sharp v. County of Orange*, 871 F.3d 901, 911 (9th Cir. 2017) (emphasis in original). Plaintiffs have not provided, and the Court is unaware of, any such case as to these Defendants. Therefore, as to Officers Gomez, Cochran, Doane, and

Elmore, qualified immunity is granted on the Fourth Amendment and Fourteenth Amendment claims under all theories of liability. The Court also therefore necessarily grants Officers Gomez, Cochran, Doane and Elmore's motion for summary judgment as to punitive damages under section 1983.

### 2. City of Mesa

Plaintiffs here seek *Monell* liability against the City of Mesa for inadequate hiring and screening, failure to train, failure to supervise, reckless indifference, and ratification. The Court will address each of these theories in turn.[5]

### a. Ratification

"To show ratification, a plaintiff must prove that the 'authorized policymakers approve a subordinate's decision and the basis for it.'" *Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir.1999) (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988)). Typically, agreeing to indemnify or partially indemnify an employee is insufficient to demonstrate ratification. *Trevino v. Gates*, 99 F.3d 911, 920–21 (9th Cir. 1996) (declining to find ratification on the basis of indemnity alone). Additionally, "[a] mere failure to overrule a subordinate's actions, without more, is insufficient to support a § 1983 claim." *Lytle v. Carl*, 382 F.3d 978, 987 (9th Cir. 2004). The policymaker must have knowledge of the constitutional violation and must make a "conscious, affirmative choice" to ratify the conduct at issue. *Id.* "In other words, in order for there to be ratification, there must be 'something more' than a single failure to discipline or the fact that a policymaker concluded that the defendant officer's actions were in keeping with the applicable policies and procedures." *Garcia v. City of Imperial*, 2010 WL 3911457 at *10 (S.D. Cal 2010).

---

[5] Defendants allege that Plaintiffs have failed to include a 1983 claim against the City of Mesa for the death of Mr. Shaver. But the complaint adequately put the City on notice that the Plaintiffs were seeking legal damages for actions that "were directed or caused by the City of Mesa, were consistent with . . . City of Mesa's policies practices and customs," and that "City of Mesa is liable for the conduct of . . . MPD officers for . . . polices practices, and customs that have endangered, including through police training, supervision and discipline (Doc. 53 at 35) and that "The City of Mesa is sued [for conduct] . . . caused by or ratified by the City of Mesa" (Doc. 53 at 3), and specifically note that they are seeking liability under 1983 for all Mesa Defendants. (Doc. 53 at 49).

Here, following the incident, Officer Brailsford was fired for displaying the phrase, "You're F------" on his MPD rifle. (Doc. 297, Ex. 51). And, the City of Mesa additionally reached an agreement with Officer Brailsford to provide a defense in this action. (*Id*., Ex. 50). However, neither of these pieces of evidence are sufficient to show that the City of Mesa or one of its officials made a "conscious, affirmative choice," *Lytle*, 382 F.3d at 987, to ratify Officer Brailsford's conduct. Yet, because the Plaintiffs have been unable to finish discovery as to this claim, the Court will defer a ruling until after discovery is completed. Therefore, the Court will deny the request for summary judgment without prejudice.

### b. Custom or Practice

As a general matter, Plaintiffs "need not show evidence of a policy or deficient training; evidence of an informal practice or custom will suffice." *Nehad v. Browder,* 2019 WL 3023147 at *11 (9th Cir. 2019). But, "[t]he custom must be so 'persistent and widespread' that it constitutes a 'permanent and well settled city policy.'" *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir.1996). A custom or practice can be "inferred from widespread practices or evidence of repeated constitutional violations for which the errant municipal officers were not discharged or reprimanded." *Nadell v. Las Vegas Metro*., 268 F.3d 924, 929 (9th Cir. 2001) *abrogated on other grounds as recognized in Beck v. City of Upland*, 527 F.3d 853, 863 n.8 (9th Cir. 2008).

Both sets of Plaintiffs seek to establish liability against the City of Mesa on the basis of an informal custom of excessive force that allegedly permeates the MPD. Plaintiffs point to several other excessive force incidents from the MPD in the past five years, (*see* Doc. 297-13 at 6), and an analysis from the local paper that found that two percent of excessive force complaints are met with discipline as to the offending officer. Because discovery has not been completed on this claim, the Court will defer a ruling until Plaintiffs are able to obtain all facts relating to Officers Brailsford and Sergeant Langley's prior history of excessive force, and other relevant information.

### c. Unconstitutional Hiring/Screening

The Court will similarly defer a ruling as to whether the City of Mesa may be liable

for unconstitutional hiring of Officer Brailsford until after discovery can be completed on these claims.

### d.    Failure to Train

To establish liability on a failure to train theory, Plaintiffs must demonstrate that (1) there was a "depriv[ation] of a constitutional right, "(2) the city had a training policy that amounts to deliberate indifference to the constitutional rights of the persons with whom its police officers are likely to come into contact; and (3) [the] constitutional injury would have been avoided had the City properly trained those officers." *Blankenhorn v. City of Orange*, 485 F.3d 463, 484 (9th Cir. 2007) (internal citations, alterations, and quotation marks omitted).

To support their failure to train claim, the Shaver Plaintiffs point to Police department reports for each of the individual officers who remained with the City of Mesa following the incident. These reports show that each of Officers Doane, Elmore, Gomez, and Cochran received de-escalation training after the event, but not before. (*See e.g.* Doc. 287-33 at 6 (showing Officer Doane received de-escalation training in April 2016), Doc 287-34 at 11 (showing Officer Elmore received de-escalation training in May 2016), Doc. 287-39 at 25 (showing Officer Gomez received de-escalation training in May 2016). The reports do not show that any of the officers at the incident had previously received de-escalation training.[6] A reasonable jury could conclude that the lack of prior, systematic de-escalation training amounted to a "program-wide inadequacy in training." *Blankenhorn*, 485 F.3d at 484–85. Shaver Plaintiffs also point to evidence from which a jury could conclude that the officers were not trained or directed to inspect a waistline for weapons typically. Both of these failures could lead a reasonable jury to conclude that the City of Mesa's failure to properly train caused Mr. Shaver's death.

Drawing all inferences in the Plaintiffs' favor, a reasonable jury could also conclude that had the officers' received prior de-escalation training or training regarding waistline

---

[6] Defendants assert that the officers previously received de-escalation training but failed to point to evidence in the record from which a jury could infer that they received such training.

weapon inspection, the seizure here would have been avoided. Summary Judgment as to the Fourth Amendment claim against the city on a failure to train theory is therefore denied.[7]

### E. State Law Claims

The Court will similarly analyze the state law claims as to each defendant, noting where the Shaver and Sweet Plaintiffs' arguments and claims differ.

#### 1. Sergeant Langley

Sergeant Langley moves for summary judgment on Plaintiffs wrongful death and intentional infliction of emotional distress claims.

##### a. Wrongful Death

###### i. Causation

"The general rule is that the question of causation is one of fact for a jury except in those instances where no reasonable persons could disagree." *Energex Enters. Inc., v. Shughart Thomas & Kilroy P.C.*, 2006 WL 2401245 *3 (D. Ariz. August 17, 2006) (quoting *Molever v. Roush*, 152 Ariz. 367, 732 P.2d 1105, 1112 (Ariz. Ct. App. 1987)) (internal quotation marks omitted). "Ordinarily, the question of proximate cause is a question of fact for the jury. Only when plaintiff's evidence does not establish a causal connection, leaving causation to the jury's speculation, or where reasonable persons could not differ on the inference derived from the evidence, may the court properly enter a directed verdict." *Robertson v. Sixpence Inns of Am., Inc.*, 163 Ariz. 539, 546, 789 P.2d 1040, 1047 (1990). "Plaintiff need only present probable facts from which the causal relationship reasonably may be inferred." *Id.* (citing *Purcell v. Zimbelman*, 18 Ariz. App. 75, 82, 500 P.2d 335, 342 (1972)). Viewing the facts in the light most favorable to the Plaintiffs, a jury could conclude that Officer Langley's conduct caused Mr. Shaver's death

---

[7] Plaintiffs correctly note that the Arizona statute on pre-death pain and suffering would not bar them from recovering against the individual officers here, because their theory of liability is that the other officers' conduct caused Mr. Shaver's death—the event for which they seek damages. (Doc. 304 at 9).

1  under this standard.

2      For example, a reasonable jury could conclude that Officer Langley did not allow

3  Mr. Shaver to freely communicate with the officers, instead opting to instruct him to refrain

4  from talking. (*See e.g.* Doc. Ex. 20), ("I didn't say this was a conversation . . . . Don't talk,

5  listen."). He also stated that if Mr. Shaver made another mistake, he would likely be shot.

6  A reasonable jury could conclude that these statements from Officer Langley contributed

7  to Mr. Shaver's death in at least two ways. First, a reasonable jury could find that these

8  statements prevented Mr. Shaver from explaining that he was unarmed and trying to

9  comply with instructions to the best of his abilities. Second, a reasonable jury could also

10  conclude based on the video footage that these statements contributed to Officer

11  Brailsford's perception of the threat posed by Mr. Shaver, making it more likely that he

12  would resort to deadly force if Mr. Shaver did not comply with their commands.

13      Defendants respond that because Officer Brailsford testified at the criminal

14  proceeding that Officer Langley did not influence his decision to pull the trigger, a jury

15  could not conclude that his conduct was influenced by the behavior of the other officers.

16  (*See* Doc. 265 at 11). However, Plaintiffs have provided an expert witness who disagrees

17  with this assessment, and, more importantly, a jury could nonetheless conclude from the

18  video footage that Officer Langley's commands, the lack of prior investigation, the lack of

19  downward threat adjustment, and other facts contributed to Officer Brailsford's ultimate

20  decision.

21                          ii.      Justified

22      Arizona provides immunity to officers who use deadly force only when the officer

23  believes it is necessary:

24          1. To defend himself or a third person from what the peace
25          officer reasonably believes to be the use or imminent use of
            deadly physical force.

26          2. To effect an arrest or prevent the escape from custody of a
27          person whom the peace officer reasonably believes:
                (a) Has committed, attempted to commit, is committing
                or is attempting to commit a felony involving the use or
28              a threatened use of a deadly weapon.

- 14 -

(b) Is attempting to escape by use of a deadly weapon.

(c) Through past or present conduct of the person which is known by the peace officer that the person is likely to endanger human life or inflict serious bodily injury to another unless apprehended without delay.

(d) Is necessary to lawfully suppress a riot if the person or another person participating in the riot is armed with a deadly weapon.

Ariz. Rev. Stat. § 13-410(c).

While Defendant Langley is correct that, as a general rule, deadly force warnings are required by law, that does not as an uncontested matter of fact excuse or otherwise justify all of his conduct that may have contributed to Mr. Shaver's death. It is not clear that each deadly force warning was merited under the circumstances that Sergeant Langley confronted. Additionally, a reasonable jury could conclude that, when confronted with Mr. Shaver's conduct in the hallway, Sergeant Langley could have instructed his officers to adjust their force downward and implement de-escalation tactics.

Defendant Langley further argues that he was simply relying upon information of other officers and the 911 dispatch when he arrived at the scene. He further argues that this reliance justifies any subsequent plan that he undertook to try to take Mr. Shaver into custody, because he believed there was an active shooter situation unfolding. But this line of argument ignores the well-established principle that "officers who lead the team that executes a warrant are responsible for ensuring that they have lawful authority for their actions." *Ramirez v. Butte-Silver Bow County*, 298 F.3d 1022, 1027 (9th Cir. 2002).

Viewing the facts in the light most favorable to Plaintiffs, a reasonable jury could conclude that Officer Langley's actions here were not justified.

**b.** **Intentional Infliction of Emotional Distress**

In Arizona, there are three elements in an Intentional Infliction of Emotional Distress ("IIED") claim: "*first*, the conduct by the defendant must be 'extreme' and 'outrageous'; *second*, the defendant must either intend to cause emotional distress or recklessly disregard the near certainty that such distress will result from his conduct; and *third*, severe emotional distress must indeed occur as a result of the defendant's conduct."

- 15 -

*Ford v. Revlon, Inc.*, 734 P.2d 580, 585 (Ariz. 1987). Defendants do not appear to contest the third element, and instead focus on whether there is a duty to perform certain conduct,[8] and whether the conduct at issue here was outrageous and extreme.

Plaintiffs focus on three sets of conduct that they claim establish liability under an IIED framework. First, they argue that the Department failed to return Ms. Sweets' calls regarding Mr. Shaver. Second, they argue that the officers here (including Officers Langley, Gomez, Cochran, Doane, and Elmore) failed to note in their respective police reports that Mr. Shaver was crying and other mitigating behavior during their interaction with him in the hotel hallway. And finally, they point to the fact that the police did not release the video footage of the incident until after the criminal trial of Officer Brailsford was completed.

The Court will defer a ruling on this claim until the Plaintiffs can complete their depositions of the officers who authored police reports and were involved with the decision regarding the video footage.

### c.    Notice to Defendant Langley

Defendant Langley further moves for summary judgment as to the Shaver Plaintiffs for failure to provide adequate notice in accordance with Arizona law. Under Arizona law, "[p]ersons who have claims against a public entity, public school or a public employee shall file claims with the person or persons authorized to accept service for the public entity, public school or public employee as set forth in the Arizona rules of civil procedure within one hundred eighty days after the cause of action accrues." Ariz. Rev. Stat. § 12-821.01(A).

---

[8] Defendants argue that because there is no duty to provide next of kin notification or a duty to fill out police reports in a particular manner under Arizona law, no liability can attach for Plaintiffs' intentional infliction of emotional distress claim. But none of the cases cited by Defendants dealt with an IIED claim. *See e.g.*, *Guerra v. State*, 237 Ariz. 183, 184 348 P.3d 423, 424 (2015) (clarifying that "[o]nly the negligence claim is at issue here."); *Morton v. Maricopa County*, 177 Ariz. 147, 865 P.2d 808 (Ariz. Ct. App. 1993) (analyzing whether a "special relationship" exists under a negligence framework); *Vasquez v. State*, 220 Ariz. 304, (App. 2008) ("Because [plaintiff] alleged *negligence* as the basis for . . . her claims of infliction of emotional distress . . . we first analyze whether the county owed a duty to [plaintiff]."). And, of course, duty is not one of the elements of a successful IIED claim. *See Ford v. Revlon*, 153 Ariz. 38, 43 734 P.2d 580, 585 (1987). Thus, Defendants' discussion of whether a special relationship exists between police and crime victim's members under these circumstances is orthogonal to the IIED claim.

Under this statutory scheme, "[a]ctual notice and substantial compliance do not excuse failure to comply with the . . . requirements of A.R.S. § 12–821.01(A)." *Falcon ex rel. Sandoval v. Maricopa Cnty.*, 213 Ariz. 525, 527 144 P.3d 1254, 1256 (2006).

The Court previously denied the dismissal against Officer Langley because questions of fact exist as to whether MPD was authorized to accept service on his behalf. Because Officer Langley has not yet been deposed, the Court will defer a ruling on the notice claim.

### 2. Officers Cochran, Gomez, Doane, and Elmore

#### a. Wrongful Death

"As a general rule, public entities and public employees are subject to tort liability for their negligence." *Spooner v. City of Phoenix*, 246 Ariz. 119, 123 435 P.3d 462, 466 (Az. Ct. App. 2018). However, "[c]ommon law qualified immunity generally provides public officials, including police officers, limited protection from liability when performing an act that inherently requires judgment or discretion. *Id*. (citing *Chamberlain v. Mathis*, 151 Ariz. 551, 555, 558, 729 P.2d 905, 909, 912 (1986)) (internal quotation marks omitted). "If qualified immunity applies, a public official performing a discretionary act within the scope of her public duties may be liable only if she "knew or should have known that she was acting in violation of established law or acted in reckless disregard of whether her activities would deprive another person of their rights." *Id*. at 467.

Because these officers have still not been deposed, the Court will defer a ruling as to whether Officers Gomez, Cochran, Elmore, and Doane "acted in reckless disregard of whether [their] activities would deprive another person of their rights." *Id*.

### 3. City of Mesa

#### a. Wrongful Death

To prevail on the wrongful death claim against the City of Mesa, a plaintiff must also present evidence showing what training should have been provided, and that its omission proximately caused the injuries. *See Inmon v. Crane Rental Servs., Inc*., 205 Ariz. 130, 137 (App. 2003) *overruled on other grounds by Tarron v. Bowen Machine &*

*Fabricating Inc.*, .  The Plaintiffs have identified facts from which a jury could infer that a lack of training as to de-escalation and waistband inspection contributed to Mr. Shaver's death.  *See* discussion *supra* at Section II.D.2.d.  For the same reasons that Plaintiffs' *Monell* claim survives, this claim also survives.  *Id*. As for the Plaintiffs' claims that the City was negligent in their hiring or supervision of Officer Brailsford, the Court will defer a ruling on these theories until additional discovery has completed.  *See also*, *supra* Section II.D.6.d.

**IT IS THEREFORE ORDERED** that the Joint Plaintiffs' Motion for New Rule 16 Scheduling Order (Doc. 329) is **GRANTED** the scheduling order is **amended as follows:**

Deadline for Completion of Fact Discovery. The deadline for completing fact discovery, including discovery by subpoena shall be **October 31, 2019**. All such discovery as is completed will be subject to a stipulated confidentiality order that prevents dissemination of any discovery to persons or entities who are not parties or agents of parties to this civil proceeding. **As discussed above, all discovery conducted during this period must have been noticed prior to the initiation of the bankruptcy proceeding.**

Deadline for Filing of Supplemental Briefing

       a.     Supplemental briefs not to exceed **ten pages** shall be filed no later than **December 2, 2019.**  Such briefs must comply in all respects with Local Rules.

       b.     No party shall file more than one supplemental brief.

**IT IS FURTHER ORDERED** that the individual officers and City of Mesa's Motion to Bifurcate Standing (Docs. 257, 276) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant LQ Management LLC's Motion for Summary Judgment (Doc. 261) is **GRANTED**.  Defendant LQ Management's Motion in Limine (Doc. 325) is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that the Sweet Plaintiffs' Motion to Seal Document (Doc. 331) is **GRANTED**.  The Clerk of Court is directed to file the lodged Response (Doc. 332) under seal.

**IT IS FURTHER ORDERED** that the Officers Gomez, Elmore, Cochran, Doane and City of Mesa's Motion for Summary Judgment as to the Shaver Plaintiffs (Doc. 265) is **GRANTED IN PART, DEFERRED IN PART AND DENIED IN PART AS FOLLOWS**:

1.       Summary Judgment as to qualified immunity on the 1983 claims against Officers Gomez, Elmore, Cochran, and Doane is **GRANTED**.

2.       Summary Judgment as to whether (1) the City of Mesa is liable under section 1983 or Arizona law for unconstitutional custom or practice, failure to supervise, ratification, or negligent hiring, and (2) whether Officers Gomez, Cochran, Elmore, and Doane are entitled to summary judgment on the state law wrongful death claim **is deferred** until the supplemental briefing is submitted.

3.       Summary Judgement as to all other claims is **DENIED**.

**IT IS FURTHER ORDERED** that the individual officers and City of Mesa's Motion for Summary Judgment as to the Sweet Plaintiffs (Doc. 273) is **GRANTED IN PART, DEFERRED IN PART AND DENIED IN PART AS FOLLOWS**:

1.       Summary Judgment as to qualified immunity on the 1983 claims against Officers Gomez, Elmore, Cochran, and Doane is **GRANTED**.

2.       Summary Judgment as to (1) whether Ms. Sweet and N.S. have standing to bring their claims, (2) whether the City of Mesa is liable under 1983 or Arizona law for unconstitutional custom or practice, failure to supervise, ratification, or negligent hiring; (3) whether Officers' Gomez Cochran Elmore and Doane are entitled to summary judgment on the remaining state law claims, and  (4) the Sweet Plaintiffs' Intentional Infliction of Emotional Distress claim **is deferred** until the supplemental briefing is submitted.

3.       Summary Judgement as to all other claims is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant Langley's Motion for Summary Judgment as to the Shaver Plaintiffs (Doc. 270) is **DENIED IN PART AND DEFERRED IN PART AS FOLLOWS:**

1.     Summary Judgment as to as to whether Sergeant Langley was adequately notified of the pending claim **is deferred** until after the supplemental briefs are submitted.

2.     As to all other claims, summary judgment is **DENIED**.

**IT IS FURTHER ORERED** that Defendant Langley's Motion for Summary Judgment as to the Sweet Plaintiffs (Doc. 271) is **DENIED IN PART AND DEFERRED IN PART AS FOLLOWS:**

1.     As to the Sweet Plaintiffs' Intentional Infliction of Emotional Distress claim, summary judgment **is deferred** until the supplemental briefs are submitted.

2.     As to all other issues, summary judgment is **DENIED**.

Dated this 2nd day of August, 2019.

G. Murray Snow
Chief United States District Judge