**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Laney Sweet,<br><br>    Plaintiff,<br><br>v.<br><br>City of Mesa, et al.,<br><br>    Defendants.<br>Grady Shaver, et al.<br><br>    Plaintiffs,<br><br>v.<br><br>City of Mesa, et al.,<br><br>    Defendants. | No. CV-17-00152-PHX-GMS<br>**LEAD CASE**<br><br>**CONSOLIDATED WITH:**<br>No. CV-17-00715-PHX-GMS<br><br>**ORDER**<br><br>**(FILED UNDER SEAL)** |

Before the Court are the Defendants' Joint Notice of Sweet Plaintiffs' Extrajudicial Statements, (Doc. 457), Defendants' Joint Notice Regarding Sweet Plaintiff's California Counsel, (Doc. 537), and Defendants' Joint Notice of California Counsel's Improper Conduct, (Doc. 549). The Court discourages and/or precludes further extra-judicial comments about this case as specified below and sets a status conference regarding Plaintiffs' Counsel's financial support of Plaintiff Laney Sweet.

## BACKGROUND

This case arises out of the death of Daniel Shaver, a resident of Texas visiting

Arizona and staying in a hotel in Mesa. Mr. Shaver was killed during an encounter with officers from the Mesa Police Department while at the hotel. A criminal trial concerning the officers' conduct was held in 2017, and the charged officer was acquitted. Independent of the criminal proceeding, Laney Sweet, also filed an action on behalf of herself, her minor children, and Mr. Shaver's estate. For both proceedings, the Sweet Plaintiffs retained Mark Geragos and Benjamin Meiselas ("Plaintiffs' Counsel" or "California Counsel") to represent them.

Defendants object to several extrajudicial statements by the Sweet Plaintiffs and Plaintiffs' Counsel. Principally, that Mr. Geragos hosts a podcast in which he sometimes discusses the instant matter. The *Reasonable Doubt* Podcast is marketed as a vehicle for current legal commentary where Mr. Geragos "brings significant details from past and present experiences." *See* Reasonable Doubt, PodcastOne, https://www.podcastone.com/reasonable-doubt. The podcast is recorded regularly, and past episodes remain accessible online for listeners. *Id.* Defendants object to the content in the episodes accompanied by the following descriptions:

- Episode #44 – May 20, 2016 Mark talks "about a new controversial case in which an officer fatally shot a subdued white male 6 times with an AR-15 that had "You're Fucked" etched into the weapon.")

- Episode #45 – May 27, 2016 ("Adam and Mark give an update on the case they discussed last week involving the execution of a subdued white male in a hotel hall room by an Arizona police officer.")

- Episode #125 – December 15, 2017 ("Adam opens this week's episode of Reasonable Doubt asking Mark if they can whip together a new leaf blower ban in their neighborhood of La Canada. Then Adam and Mark talk to Laney Sweet about the trial surrounding an Arizona Police officer who was recently acquitted on manslaughter charges for fatally shooting her husband while he was unarmed and subdued in a hotel hallway. After they finish talking directly to Laney, Adam and Mark continue to talk about the complete and utter injustice that's resulted from this

murder by the Mesa Arizona Police Department.") (Titled "Justice of Daniel")

- Episode #133 – February 9, 2018 ("Then Adam asks Mark about any updates on his case trying to get justice for Daniel Shaver's murder by Mesa Arizona police officers.")
- Episode #150 – June 8, 2018 (Titled "Mesa Strikes Again")
- Episode #205 – July 13, 2019 ("The guys also touch on the future of the legal battles of both Kevin Spacey & Harvey Weinstein before turning to Mesa, Arizona for an update on the Daniel Shaver case we've been following for several months.")
- Episode #206 – July 20, 2019 ("The guys also touch on the Daniel Shaver story out of Mesa, AZ before the conversation turns to the impending testimony of special prosecutor Robert Mueller")
- Episode #237 – March 14, 2020 ("Later Adam talks about the case of Daniel Shaffir [sic], who was tragically and needlessly killed by the Mesa Police Department, into his new book 'I'm Your Emotional Support Animal', and a Mark gives a recent update to the case.")

(Doc 457 at 3–4.)[1] In the above-cited postings, and in many others, including social media posts, Plaintiffs' Attorneys have made public statements regarding their assessment of the case.

Defendants also raise concerns regarding Plaintiffs' Counsels financial support of Plaintiff. On February 20, 2020, the Defendants raised the issue with the Court, and Plaintiffs avowed that any loans had been rendered gifts. Mr. Meiselas, an attorney with Geragos & Geragos APC, stated:

> at no time will there be any expectation, any request, to have any money back, and that all monies linked to Laney Sweet and her children will be

---

[1] The Court takes judicial notice of the media "introduced to 'indicate what was in the public realm at the time, not whether the contents of those articles were in fact true.'" *Von Saher v. Norton Simon Museum of Art at Pasadena,* 592 F.3d 954, 960 (9th Cir. 2010) (quoting *All. Premier Growth Fund v. All. Cap. Mgmt., L.P.,* 435 F.3d 396, 401 n.15 (3d Cir. 2006)).

> treated as a gift, which is allowed under Arizona law, and any monies that we continue to give will be treated as a gift.

(Doc. 549 at 191.) The Court directed Plaintiffs to disclose the loan agreement and authorized Defendants to file a motion requesting that the payments be stopped. *Id.* at 193-194.

## DISCUSSION

### I. Extrajudicial Statements

#### A. Legal Standard

This Court applies the Arizona Rules of Professional Conduct to evaluate the conduct of attorneys admitted or authorized to practice before it. LRCiv 83.2(e); *Roosevelt Irrigation Dist. v. Salt River Project Agric. Improvement & Power Dist.*, 810 F. Supp. 2d 929, 944 (D. Ariz. 2011).

Under Rule 3.6(a) of the Arizona Rules of Professional Conduct, "[a] lawyer who is participating or has participated in the investigation or litigation of a matter shall not make an extrajudicial statement that the lawyer knows or reasonably should know will be disseminated by means of public communication and will have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter." As a result, "[t]he Court is empowered to issue a restraining order prohibiting trial participants from communicating with the media where 'excessive trial publicity' endangers the fairness of the judicial process." *Mizioch v. Montoya*, No. CV10-01728-PHX-JAT, 2011 WL 4900033, at *6 (D. Ariz. Oct. 14, 2011) (quoting *Levine v. U.S. Dist. Ct. for the Cent. Dist. of Cal.*, 764 F.2d 590, 600-01 (9th Cir. 1985)). Nonetheless, "a lawyer may make a statement that a reasonable lawyer would believe is required to protect a client from the substantial undue prejudicial effect of recent publicity not initiated by the lawyer or the lawyer's client" so long as it is "limited to such information as is necessary to mitigate the recent adverse publicity." Ariz. R. Sup. Ct. 42, ER 3.6.

Arizona's ethical rules, however, are applied in light of the constitutional scrutiny the Supreme Court applies to regulations on speech. Generally, "[p]rior restraints on speech

are disfavored and carry a heavy presumption of invalidity." *Greater L.A. Agency on Deafness, Inc. v. Cable News Network, Inc.*, 742 F.3d 414, 430 (9th Cir. 2014) (quoting *Long Beach Area Peace Network v. City of Long Beach*, 574 F.3d 1011, 1023 (9th Cir. 2009)). Nonetheless, "[t]he Supreme Court has held that speech otherwise entitled to full constitutional protection may [] be sanctioned if it obstructs or prejudices the administration of justice." *Standing Comm. on Discipline of U.S. Dist. Ct. for Cent. Dist. of Cal. v. Yagman*, 55 F.3d 1430, 1442 (9th Cir. 1995) (citing *Gentile v. State Bar of Nev.*, 501 U.S. at 1074–75).

To satisfy the First Amendment when a Court imposes prior restraints on attorneys practicing before it, there must be facts showing a "substantial likelihood of material prejudice" to an adjudicative proceeding. *Gentile v. State Bar of Nev.*, 501 U.S. 1030, 1037 (1991); *see also United States v. Wunsch*, 84 F.3d 1110, 1117 (9th Cir. 1996); *Berndt v. Cal. Dep't of Corr.*, No. C03-3174 TEH, 2004 WL 1774227, at *3 (N.D. Cal. Aug. 9, 2004) ("After *Gentile*, the Ninth Circuit uses a less stringent test for a prior restraint if the prior restraint is being challenged by participants in the case." (quoting Erwin Chemerinsky, *Silence is Not Golden: Protecting Lawyer Speech under the First Amendment*, 47 EMORY L.J. 859, 880 (1998))). The order must also be "narrowly drawn," and no "less restrictive alternatives" must be available, such as through voir dire, change of venue, or some other device. *Levine*, 764 F.2d at 595; *see Gentile*, 501 U.S. at 1075; *Berndt*, 2004 WL 1774227, at *3. This standard reflects the unique impact of attorney speech on the fairness of a proceeding. In *Gentile*, the Supreme Court explicitly rejected a strict scrutiny analysis for attorney speech because attorneys participating in a pending case have "special access to information through discovery and client communications" which poses "a heightened threat to the fair administration of justice." *Standing Comm.*, 55 F.3d at 1442 (quoting *Gentile*, 501 U.S. at 1074). The Court has thus recognized that orders restraining attorney speech address "two principal evils: (1) comments that are likely to influence the actual outcome of the trial, and (2) comments that are likely to prejudice the jury venire, even if an untainted panel can ultimately be found." *Gentile*, 501 U.S. at 1075.

Whether there is a substantial likelihood of material prejudice is a function of several factors, including the contents of the statements themselves, the nearness of the trial, the extent of the media coverage on the matter, and whether the material discussed is evidence which would otherwise be inadmissible. *See Murphy-Fauth v. BSNF Ry. Co.*, No. CV-17-79-GF-BMM-JTJ, 2018 WL 5312201, at *4 (D. Mont. Apr. 4, 2018) ("[T]he Court must consider the statements themselves, the timing of the statements, and whether they were published in the jury pool."); *Clifford v. Trump*, No. CV1802217SJOFFMX, 2018 WL 5273913, at *4 (C.D. Cal. July 31, 2018) ("It is far from clear that the publicity in this case would affect the outcome of a trial that may happen, if at all, months down the road."); *Doe v. Rose*, No. CV-15-07503-MWF-JCX, 2016 WL 9107137, at *3 (C.D. Cal. Sept. 30, 2016).

### B. Analysis

#### 1. The Reasonable Doubt Podcast & Social Media Posts

Plaintiffs' Attorneys' podcasts and social media posts address issues likely to be at issue in the instant litigation. Indeed, in several instances the postings address the civil matter directly. *See* (Doc. 457-1 at 42–44, 48).[2] However, many of the postings also coincide with the criminal matter addressing the same incident. Thus, the Court cannot conclude that addressing the facts of this case, which are also relevant to other matters of public concern, poses a clear threat of prejudice.

Nor does the timing of the statements support a finding of prejudice. The podcasts were posted between May 2016 and March 2020, and the social media posts were posted between December 2017 and April 2020. Given no trial date has yet been set, they occurred well over a year before any impending proceeding. Defendants also offer no evidence that the statements include evidence which will be inadmissible at trial. *See Alexander v.*

---

[2] Defendants identify several additional statements in their Joint Notice of California Counsel's Improper Conduct. (Doc. 549.) Their newly identified podcast episode from 2017, "The Execution," is addressed by the above discussion. However, Defendants also identify several statements which do not identify the instant matter but discuss police force more generally. *Id.* at 16–17. The Court declines to find that these statements addressing matter of public concern pose a clear threat of prejudice.

- 6 -

*Superior Court*, 141 Ariz. 157, 161, 685 P.2d 1309, 1313 (1984) ("The burden should be upon the moving party to show sufficient reason why an attorney should be disqualified from representing his client."). As a result, the statements are simply too remote to establish substantial prejudice to a jury pool in a trial that has not yet been set. *See Gentile*, 501 U.S. at 1039 ("[T]he Nevada court's conclusion that petitioner's abbreviated, general comments six months before trial created a 'substantial likelihood of materially prejudicing' the proceeding is, to say the least, most unconvincing."); *Murphy-Fauth*, 2018 WL 5312201, at *4 (finding publications 15 months before trial too remote to create a substantial likelihood of material prejudice).

The Court does, however, have serious concerns about Plaintiff's counsels' declared desire to achieve publicity for this case. *See* (Doc. 457-1 at 42–44, 48) (discussing the progress of the civil case on the podcast and explaining that increased media attention would be beneficial for the Plaintiffs). Accordingly, to the extent such comments violate the ethical rules, counsel is discouraged from commenting on the character or reputation of the parties; the expected testimony of a party or witness; or evidence that has been ruled inadmissible, or that the attorneys reasonably should know is likely to be inadmissible, and which would create a substantial risk of prejudice if disclosed. When trial is set, the Court will consider entering an order prohibiting the same leading up to and during the trial. The parties may reraise these matters with the Court if counsel's public statements prior to that time extensively discuss this case.[3]

## 2. Plaintiff Laney Sweet's Statements

Defendants also object to statements by Plaintiff Laney Sweet. In particular, social media posts which appeal directly to potential jurors through the "Justice for Daniel

---

[3] Defendants also assert that further restrictions are warranted because of violations of Ethical Rule 1.8(d). Ariz. R. Sup. Ct. 42, ER 3.6. ("[A] lawyer shall not make or negotiate an agreement giving the lawyer literary or media rights to a portrayal or account based in substantial part on information relating to the representation."). Defendants make no allegation, however, that any media rights agreement was negotiated in this case. The presence of media content alone does not implicate the rule. *See Alexander*, 141 Ariz. at 161, 685 P.2d at 1313 ("The burden should be upon the moving party to show sufficient reason why an attorney should be disqualified from representing his client.").

- 7 -

Shaver" account:

> I mentioned this while speaking at one of the protests but I also wanted to say it here.
> PLEASE SHOW UP FOR JURY DUTY.
> We (police brutality victims) count on YOU to be present when we call upon your service. We WANT to pick you! YOU are the reason officers will finally be held accountable where justice is due…

(Doc. 473 at 184.) And a post discussing the progress of this matter:
> Mesa's Attorneys are terrified of going to trial.
> CAN WE PLEASE JUST SET A TRIAL DATE ALREADY?!
> Let's do this

*Id.* Although Defendants suggest that Mr. Geragos had input in or authored these posts, their submitted documentation does not establish as much. In fact, the testimony Defendants cite to is taken from another matter, and Mr. Geragos makes no such concession. (Doc. 473 at 56.)

Plaintiff is not a lawyer in this case, and the Supreme Court has made clear that greater regulations can be placed on lawyers' pretrial statements because of the unique role they play in our judicial system. *Gentile*, 501 U.S. at 1074 ("Lawyers representing clients in pending cases are key participants in the . . . justice system, and the State may demand some adherence to the precepts of that system in regulating their speech as well as their conduct."). At this time, the Court will not enter an order restraining the pretrial statements of Plaintiff Laney Sweet, but if she makes further statements that threaten the fairness of the trial, Defendant may renew its request with the Court. *See* LRCiv. 83.8(b) ("In a widely publicized or sensational case" the Court "may issue a special order [prohibiting extrajudicial statements] similar to that provided for by Rule 57.2(f)."); LRCrim. 57.2(f) ("[T]he Court on motion of either party or on its own motion, may issue a special order governing such matters as extrajudicial statements by parties and witnesses likely to interfere with the rights of the accused to a fair trial by an impartial jury.").

**II.     Counsel's Financial Support of Plaintiff**

     **A. Legal Standard**

In Arizona, an attorney is generally ethically prohibited from advancing or guaranteeing financial assistance to a client. Ethical Rule 1.8(e) provides:

> A lawyer shall not provide financial assistance to a client in connection with pending or contemplated litigation, except that:
> (1) a lawyer may advance court costs and expenses of litigation, the repayment of which may be contingent on the outcome of the matter; and
> (2) a lawyer representing an indigent client may pay court costs and expenses of litigation on behalf of the client.

*See In re Carroll*, 124 Ariz. 80, 85, 602 P.2d 461, 466 (1979); *In re Stewart*, 121 Ariz. 243, 245, 589 P.2d 886, 888 (1979) (both holding an attorney may not ethically advance living expenses to a client). The rule, however, does not proscribe gifts from attorneys to clients. In fact, Arizona Advisory Opinion 91-14 sanctions gifts from attorney to client where there is donative intent and no expectation of repayment. State Bar Ass'n Comm. on Rules of Prof'l Conduct, Advisory Op. 94-14 (1991). There, the committee considered an inquiry where an attorney sought to pay the emergency medical expenses of his client's daughter, who had been injured in an accident that was the subject of an ongoing litigation the attorney commenced. *Id.* The committee reasoned:

> [I]t is this committee's opinion that the inquiring attorney may not ethically make a loan or advancement to his client toward payment for her daughter's medical care. The inquiring attorney is, however, ethically permitted to make a gift of money to his client, to enable her daughter to receive the necessary medical care, so long as: (a) the transfer of money truly results from a charitable motivation by the attorney; (b) the client must have already retained the attorney before any direct or indirect communication between the attorney and the client concerning the transfer, or prospective transfer, of this gift of money takes place; and (c) there must be no expectation by the attorney of any repayment by the client at any future time.

*Id.*

### B. Analysis

Defendants present evidence of numerous gifts and/or loans presented to Plaintiff by California Counsel. These include financing for monthly expenses, mental health treatment, furniture and home furnishings, and vacations. *See* (Doc. 549 at 87, 99, 139,

- 9 -

141, 153). Defendants further present evidence of a failed real estate transaction, whereby Plaintiff secured a loan from California Counsel to purchase a home in Texas. California Counsel executed a letter promising that they would lend Plaintiff up to $350,000 for the purchase. (Doc. 537 at 7.) They also negotiated the ultimate settlement with the home seller when Plaintiff defaulted on the contract for purchase. *See* (Doc. 549 at 102, 108).

These examples illustrate financial support beyond Rule 1.8's provision for the advancement of costs. When Defendants raised concerns regarding California Counsel's financial support at the February 2020 hearing, Mr. Meiselas avowed that the past loans to Plaintiff had been rendered gifts and were thus permissible under the Arizona ethical rules. (Doc. 549 at 191.) This retroactive gratuity, however, does not establish that the transfer of money resulted from charitable motivation by California Counsel. The evidence that these transactions were at least initially framed as loans undermines such a conclusion. *See, e.g.*, *Id.* at 87 (discussing a loan for furniture). Defendants thus present strong evidence that California Counsel has violated Arizona ethical rules against financial support.

The consequences of these violations, however, remain unclear. For one, the Court cannot conclude from these past violations that there are ongoing ethical breaches which effect the efficacy and motivations of California Counsel's current representation. It appears that California Counsel at least anticipated future support, stating at the February hearing that "any monies that we continue to give will be treated as a gift." (Doc. 549 at 191.)  Mr. Meiselas, however, did not say the money was a gift.  Moreover, although at the hearing Mr. Meiselas, as a representative of Geragos & Geragos, APC, avowed that the past support Plaintiff received from California counsel was a gift, the Court is not aware that Mr. Geragos has made the same assurances. As Mr. Geragos personally communicated and made promises to Plaintiff in many of Plaintiffs' attached communications, it is not clear to whom Plaintiff's apparent debts were incurred. Indeed, the letter promising to loan Plaintiff money for her failed home purchase included Mr. Geragos personally in addition to Geragos & Geragos, APC. *Id.* at 103 ("Mr. Mark Geragos along with the law firm of Geragos & Geragos, APC has agreed to fund the purchase of a property on behalf of Laney

1   Sweet for an amount up to $350,000.00."). Because it is unclear whether these violations
2   are ongoing and whether Mr. Geragos has made the same representations as his firm, the
3   Court finds it necessary to schedule an evidentiary hearing regarding the extent of
4   California Counsel's continued support of Plaintiff.

## CONCLUSION

Although the Court will not enter an order restricting public statements at this time, Defendants may renew their notice regarding extrajudicial statements before trial is set if they believe that continuing publicity is further jeopardizing the Court's ability to conduct a fair trial.

**IT IS FURTHER ORDERED** setting an **in-person** hearing regarding California Counsel's financial support of Plaintiff for **August 6, 2021 at 1:00 p.m.** in Courtroom 601, Sandra Day O'Connor U.S. Federal Courthouse, 401 West Washington Street, Phoenix, Arizona 85003-2151. The Court expects Mr. Geragos and Mr. Meiselas to be present.

**IT IS FURTHER ORDERED** that Sweet Plaintiffs' Motion to File the Sweet Plaintiff's Sur-Reply to Address New Topics and Evidence In Defendants' Joint Supplemental Filing Regarding Notice of Sweet Plaintiff's Extrajudicial Statements Under Seal (Doc. 533) is **GRANTED.** The Clerk of Court is directed to file under seal lodged Doc. 534.

**IT IS FURTHER ORDERED** that Defendants' Motion to Seal Joint Notice Regarding Sweet Plaintiffs' California Counsel (Doc. 536) is **GRANTED.** The Clerk of Court is directed to file under seal lodged Doc. 537.

**IT IS FURTHER ORDERED** that Defendants' Motion to Seal Joint Notice Regarding California Counsel's Improper Conduct (Doc. 548) is **GRANTED.** The Clerk of Court is directed to file under seal lodged Doc. 549.

/ / /

/ / /

/ / /

/ / /

**IT IS FURTHER ORDERED** that Sweet Plaintiffs' Motion for Leave to File Sweet Plaintiffs' Omnibus Response to Defendants' Joint Notice of California Counsel's Improper Conduct Under Seal (Doc. 567) is **GRANTED.** The Clerk of Court is directed to file under seal lodged Doc. 568.

Dated this 23rd day of July, 2021.

*G. Murray Snow*
G. Murray Snow
Chief United States District Judge

cc: All Counsel