**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Laney Sweet,<br><br>   Plaintiff,<br><br>v.<br><br>City of Mesa, et al.,<br><br>   Defendants.<br>Grady Shaver, et al.<br><br>   Plaintiffs,<br><br>v.<br><br>City of Mesa, et al.,<br><br>   Defendants. | No. CV-17-00152-PHX-GMS<br>**LEAD CASE**<br><br>**CONSOLIDATED WITH:**<br>No. CV-17-00715-PHX-GMS<br><br>**ORDER** |

  On August 6, 2021 the Court held an evidentiary hearing regarding alleged ethical violations by pro hac vice counsel Mark Geragos and Benjamin Meiselas ("California Counsel"). Pending before the Court is Plaintiffs' Motion for Leave to File Notice of Filing Declarations of Mark Geragos, Ben Meiselas, and Laney Sweet Regarding the August 6, 2021 Evidentiary Hearing (Doc. 595). The Court has considered the evidence presented and, while California Counsel has committed ethical violations, the Court declines, at this point, to disqualify California Counsel. The Court, however, further imposes requirements

on Mr. Geragos and/or his firm should they seek to be admitted to the United States District Court for the District of Arizona on a pro hac vice basis in the future.

**BACKGROUND**

This case arises out of the death of Daniel Shaver, a resident of Texas visiting Arizona and staying in a hotel in Mesa. Mr. Shaver was killed during an encounter with officers from the Mesa Police Department while at the hotel. Plaintiff Laney Sweet brought the instant action on behalf of herself, her minor children, and Mr. Shaver's estate. The complaint was filed on January 17, 2017.

The Sweet Plaintiffs retained Mark Geragos and Benjamin Meiselas to represent them. Mr. Geragos and Mr. Meiselas' were admitted to practice in the District of Arizona pro hac vice on July 5, 2017. Over the course of the litigation, Geragos & Geragos PC presented Ms. Sweet with numerous gifts and/or loans executed as promissory notes. The first of the disclosed notes was executed in February 2017. (Doc. 457-1.) These transactions include financing for monthly expenses, mental health treatment, furniture and home furnishings, and vacations. *See* (Doc. 549 at 87, 99, 139, 141, 153). Defendants further present evidence of a failed real estate transaction, whereby Plaintiff secured a loan from California Counsel to purchase a home in Texas. California Counsel executed a letter promising that they would lend Plaintiff up to $350,000 for the purchase. (Doc. 537 at 7.) They also negotiated the ultimate settlement with the home seller when Plaintiff defaulted on the contract for purchase. *See* (Doc. 549 at 102, 108).

Defendants have filed several notices regarding California Counsel's allegedly improper conduct. (Docs. 457; 537; 549.) On February 20, 2020, the Defendants raised the issue with the Court, and Plaintiffs avowed that any loans had been rendered gifts. (Doc. 549 at 191.) On July 23, 2021, the Court ruled on Defendants' notices regarding extrajudicial statements and set an evidentiary hearing to address the allegation that California Counsel provided improper financial support to Plaintiffs. (Doc. 574.) That hearing concerned "alleged current or ongoing violations of the Arizona Rules of

Professional Conduct by Plaintiffs' California Counsel, Mark Geragos and Benjamin Meiselas." (Doc. 581.)

**DISCUSSION**

### I. Legal Standard

In Arizona, an attorney is generally ethically prohibited from advancing or guaranteeing financial assistance to a client. Ethical Rule 1.8(e) provides:

> A lawyer shall not provide financial assistance to a client in connection with pending or contemplated litigation, except that: (1) a lawyer may advance court costs and expenses of litigation, the repayment of which may be contingent on the outcome of the matter; and (2) a lawyer representing an indigent client may pay court costs and expenses of litigation on behalf of the client.

Ariz. R. Sup. Ct. 42, ER 1.8(e); *see In re Carroll*, 124 Ariz. 80, 85, 602 P.2d 461, 466 (1979); *In re Stewart*, 121 Ariz. 243, 245, 589 P.2d 886, 888 (1979) (both holding an attorney may not ethically advance living expenses to a client).

The rule, however, does not proscribe gifts from attorneys to clients. In fact, Arizona Advisory Opinion 91-14 sanctions gifts from attorney to client where there is donative intent and no expectation of repayment. State Bar Ass'n Comm. on Rules of Prof'l Conduct, Advisory Op. 94-14 (1991). There, the committee considered an inquiry where an attorney sought to pay the emergency medical expenses of his client's daughter, who had been injured in an accident that was the subject of an ongoing litigation the attorney commenced. *Id.* The committee reasoned:

> [I]t is this committee's opinion that the inquiring attorney may not ethically make a loan or advancement to his client toward payment for her daughter's medical care. The inquiring attorney is, however, ethically permitted to make a gift of money to his client, to enable her daughter to receive the necessary medical care, so long as: (a) the transfer of money truly results from a charitable motivation by the attorney; (b) the client must have already retained the attorney before any direct or indirect communication between the attorney and the client concerning the transfer, or prospective transfer, of this gift of money takes place; and (c) there must be no expectation by the attorney of any repayment by the client at any future time.

*Id.* The Committee provided two rationales for restricting financial support. First, "when an attorney advances living expenses to a client, he has, in effect, acquired a proprietary interest in the underlying litigation he is conducting. When an attorney acquires an interest

- 3 -

in the litigation, the obvious fear is that the attorney may place his interest in recovering the loaned money ahead of the client's interest in the litigation." *Id.* (internal citation omitted). Second, providing financial assistance to clients "may serve as an improper inducement for prospective clients to employ the attorney." *Id.*

Rule 1.8 further requires that a client entering into a business transaction with their attorney is advised to seek independent legal counsel prior to entering into the agreement. The Rule provides:

> A lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to a client unless: (1) the transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing in a manner that can be reasonably understood by the client; (2) the client is advised in writing of the desirability of seeking and is given a reasonable opportunity to seek the advice of independent legal counsel on the transaction; and (3) the client gives informed consent, in a writing signed by the client, to the essential terms of the transaction and the lawyer's role in the transaction, including whether the lawyer is representing the client in the transaction.

Ariz. R. Sup. Ct. 42, ER 1.8(a).

**II.     Analysis**

Mr. Geragos and Geragos & Geragos PC's conduct violated the Arizona ethical rules. It is undisputed that Geragos & Geragos PC executed several promissory notes with Ms. Sweet, loaning Ms. Sweet money to be repaid before disbursement of any settlement in the instant case. *See* (Doc. 457-1 at 60). Mr. Geragos testified that he had ultimate control over the disbursement of these funds.

When made, these loans violated Rule 1.8's prohibition on financial assistance to clients. Although the loans were ultimately forgiven, the fact that the promissory notes initially provided for repayment precludes finding that they were permissible gifts. The committee specified that gifts are acceptable only if they resulted from the charitable motivation of the attorney without any expectation of repayment at a future time. State Bar Ass'n Comm. on Rules of Prof'l Conduct, Advisory Op. 94-14 (1991). Nor is there any evidence that Mr. Geragos and Geragos & Geragos PC complied with Rule 1.8's directive that clients be advised in writing to seek advice of independent counsel prior to entering

into a business transaction with their attorney. Both the promissory notes and the real estate transaction with Ms. Sweet were business transactions in which, at least initially, the Firm expected repayment. As such, Ms. Sweet was entitled to be advised in writing of her interest in seeking independent counsel on the subject and giving written informed consent prior to entering into the transaction.

That such arrangements may have been ethical in the state in which Mr. Geragos principally practices is immaterial to his obligation to practice ethically in this court. Nevertheless, when it comes to the question of the disqualification of California Counsel, the Court takes into account the corrective measures taken by such Counsel. Prior to the evidentiary hearing, Mr. Geragos and Mr. Meiselas submitted declarations affirming that all money provided to Ms. Sweet and her minor children prior to February 20, 2020 was a gift, and that neither they nor their firm expected repayment from the Plaintiffs at any time. (Doc. 596-1.) At the evidentiary hearing, they further avowed that they would not *accept* any reimbursement from Plaintiffs or any other affiliated person or entity for the funds lent in this case in any way or through any means, direct or indirect. Ms. Sweet likewise submitted a declaration confirming that she had been informed "numerous times of the fact that [Mr. Geragos] has gifted [her] all the monies previously sent or given to him by his law firm," and that she has not received any money or wire transfers from the firm since February 2020. *Id.* at 8.

These curative steps mitigate the first concern expressed by the Committee: rendering the loans gifts removes any risk that California Counsel will be motivated by its interest in recovering the loans funds in the remainder of the litigation. State Bar Ass'n Comm. on Rules of Prof'l Conduct, Advisory Op. 94-14 (1991). It is less clear, however, whether the Committee's second concern has been addressed. Mr. Geragos testified that he did not believe he had filed a lawsuit yet at the time that he began loaning Plaintiff Sweet money, and there is no evidence that the financial support began prior to California Counsel's representation. Regardless of whether there is evidence that Plaintiffs were induced to select California Counsel because of the potential for financial support,

however, the advisory opinion expresses a more general concern that an attorney offering financial support may attract clients for that purpose alone. *See Matter of Carroll*, 124 Ariz. 80, 86, 602 P.2d 461, 467 (1979) ("It is obvious that as between a lawyer who offers such an agreement and a lawyer who does not, the client will choose the lawyer who offers the lesser financial obligation, regardless of the skill of the lawyers involved, and regardless of the other factors to be considered in the employment of legal counsel."). Nevertheless, when Arizona permits an attorney to ethically make gifts to a client after the representation has begun, any such harm here has also been in significant part mitigated once the loans were converted to gifts. Finally, the Court takes into account that Plaintiffs generally have a right to the counsel of their choice. *See Cole v. U.S. Dist. Ct. For Dist. of Idaho*, 366 F.3d 813, 817 (9th Cir. 2004) ("Parties normally have the right to counsel of their choice, so long as the counsel satisfy required bar admissions, and it is no small thing to disqualify a counsel before trial."). Weighing these considerations, the Court declines to revoke Plaintiff's Counsels' pro hac vice status. Nevertheless, should Mr. Geragos or his law firm every apply again for pro hac vice status in the District of Arizona, he is required to disclose this finding of ethical violations and attach this order to his pro hac vice application.

### III. Motion to Seal

When considering a motion to seal, a good cause standard applies to documents attached to non-dispositive motions because such documents are often "unrelated, or only tangentially related, to the underlying cause of action." *Phillips v. G.M. Corp.*, 307 F.3d 1206, 1213 (9th Cir. 2002) (internal quotations and citation omitted). The instant declarations are non-dispositive. They address the parties' briefing regarding California Counsel's alleged ethical violations. However, the declarations do not contain any information not publicly discussed or avowed to in the evidentiary hearing on August 6, 2021. The Court finds no good cause to seal Document 596.

### CONCLUSION

**IT IS THEREFORE ORDERED** that the Sweet Plaintiffs' Motion for Leave to File Notice of Filing Declarations of Mark Geragos, Ben Meiselas, and Laney Sweet

1 | Regarding the August 6, 2021 Evidentiary Hearing Under Seal (Doc. 595) is **DENIED.**

2 |     **IT IS FURTHER ORDERED** that should Mr. Geragos or the firm with which he
3 | practices ever again seeks to be admitted pro hac vice to the United States District Court
4 | for the District of Arizona, he or it is required to disclose this finding of ethical violations
5 | and attach this order to the pro hac vice application.

6 |     Dated this 26th day of August, 2021.

*G. Murray Snow*
G. Murray Snow
Chief United States District Judge