James J. Belanger, No. 011393
J. BELANGER LAW PLLC
PO Box 447
Phoenix, Arizona 85280-0447
(602) 253-6682
jjb@belangerlaw.com

Spencer G. Scharff, No. 028946
SCHARFF PLLC
502 W. Roosevelt Street
Phoenix, Arizona 85003
(602) 739-4417
spencer@scharffplc.com

*Attorneys for Defendant*
Charles Langley

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Laney Sweet, an individual, et al., | NO. CV-17-00152-PHX-GMS |
| Plaintiff, | |
| v. | **DEFENDANT LANGLEY'S SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT AND JOINDER IN APPLICABLE ARGUMENTS PRESENTED BY CO-DEFENDANTS** |
| City of Mesa, et al., | |
| Defendants. | |

Pursuant to the Court's April 6, 2021 Order (Doc. 513), Defendant Charles Langley ("Langley") respectfully submits this supplemental Motion for Summary Judgment in connection with the Sweet Plaintiffs' ("Plaintiffs") claims against him.[1]

## I. LANGLEY IS ENTITLED TO QUALIFIED IMMUNITY ON PLAINTIFFS' § 1983 CLAIMS (COUNT III).[2]

### A. The undisputed facts demonstrate that Langley was not an integral participant in Shaver's shooting.

The Ninth Circuit denied Langley's qualified immunity defense at the pleading stage because the Plaintiffs *alleged* that he "effectively authorized his subordinates to use excessive force against Shaver." *Sweet v. Langley*, 798 F. App'x 135, 136 (9th Cir. 2020). It is clear, however, that Plaintiffs' dispositive *allegation* has no basis in fact.

---

[1] Although Langley invoked his Fifth Amendment privilege against self-incrimination at various points during his continued deposition, the invocation of that privilege alone is insufficient for Plaintiffs to avoid summary judgment. *See Avirgan v. Hull*, 932 F.2d 1572, 1580 (11th Cir. 1991) ("Invocation of the fifth amendment privilege did not give rise to any legally cognizable inferences sufficient to preclude entry of summary judgment. The negative inference, if any, to be drawn from the assertion of the fifth amendment does not substitute for evidence needed to meet the burden of production."); *Rivera v. Guevara*, 319 F. Supp. 3d 1004, 1039–40 (N.D. Ill. 2018) ("[T]o create a fact issue for trial, a party resisting summary judgment cannot rely exclusively on the moving party's invocation of the Fifth Amendment privilege."). This is especially the case given Langley's 2-days of testimony at Brailsford's criminal trial (amounting to ~154 transcript pages), his 2-days of testimony at Brailsford's preliminary hearing (amounting to ~73 transcript pages), and the two Axon video recordings of the incident, which are not otherwise contradicted or disputed. *See Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1265 (9th Cir. 2000) ("[N]o negative inference can be drawn against a civil litigant's assertion of his privilege against self-incrimination unless there is a substantial need for the information and there is not another less burdensome way of obtaining that information."). Moreover, Langley testified at his deposition that his testimony at the preliminary hearing and criminal trial was accurate, complete, and truthful. *See* Ex. 1 (Excerpts Langley Depo. at 100:12–101:4).

[2] Langley has already responded to Plaintiffs' assertion that he somehow waived his right to seek summary judgment as to their federal law claims while his interlocutory appeal was pending in his July 2019 Reply Brief (Doc. 314 at Section IV). Thus, if Plaintiffs' brief reasserts this position, Langley incorporates by reference his previous arguments on this point. Even if this brief were considered a successive motion—it is not, the Ninth Circuit has long recognized the permissibility of successive motions for summary judgment both in and "outside the context of qualified immunity." *Hoffman v. Tonnemacher*, 593 F.3d 908, 910 (9th Cir. 2010) (citing *Knox v. Sw. Airlines*, 124 F.3d 1103, 1106 (9th Cir. 1997)).

Defendant Brailsford testified that he did not interpret any of Langley's deadly-force warnings as an order to shoot Shaver:

> Q. When he, meaning Sergeant Langley, was yelling at Mr. Shaver and saying, If you do that again, we're going to shoot you, did you take that as -- as an order, did he give you the green light to shoot, or how did you take that?
>
> A. No. Certainly not, ma'am. That was simply a warning to Mr. Shaver, don't do that again because that's what police officers, you know, in certain situations we can determine that to be a threat.
>
> Q. And so you made the decision on your own, not because of anything Sergeant Langley said to go ahead and fire, correct?
>
> A. I made my decision based on my decision.

Doc. 266 ("GSOF") at ¶¶ 97–98. All of the officers under Langley's command have testified that they understood that Langley could not have authorized them use deadly force. *Id*. at ¶ 95. In fact, Officer Doane switched from his firearm to his taser when Shaver exited and did not switch back to his handgun in response to Langley's commands. *Id*. at ¶¶ 140–42. As such, it is undisputed that Langley did not authorize Brailsford or any of other subordinate to use excessive force against Shaver. *Id*. at ¶ 96; *see also* Sweet Pls.' Resp. to Langley's RFA No. 4 (admitting that the decision to shoot Shaver "reflected a conscious decision by Defendant Brailsford") (attached as Ex. 2 at 3).

Moreover, since the Ninth Circuit's memorandum disposition on Langley's interlocutory appeal, the Ninth Circuit issued a published decision that further defined the contours of the Circuit's integral-participant doctrine. In *Reynaga Hernandez v. Skinner*, 969 F.3d 930 (9th Cir. 2020), the Court made clear that Langley cannot be held liable for another officer's unconstitutional conduct unless there's a showing that Langley's conduct was the but-for cause. *Id*. at 942. Here, Plaintiff cannot establish that Langley's conduct was the but-for cause of the shooting given Brailsford's admission that he made an independent decision to shoot. *See* GOSF at ¶ 98; *see Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012) (holding that "subsequent acts of independent decision-makers . . . may

constitute intervening superseding causes that break the causal chain between a defendant-officer's misconduct and a plaintiff's unlawful seizure.").

**B.     None of the alleged unconstitutional conduct was clearly established at the time of the shooting.**

Plaintiffs have alleged a wide variety of theories of unconstitutional conduct under the Fourth and Fourteenth Amendments—none of which was clearly established at the time of the incident. Plaintiffs' theories require the Court to ignore the material undisputed facts:

- Langley was responding to a report of a man pointing a military-type rifle out a window from an elevated position, GSOF ¶¶ 7, 10, 12, 29;



- Langley and his fellow officers confirmed the details of the report with La Quinta staff members who had seen Shaver's gun, observed his demeanor, and spoken to the frightened guests that reported the gun pointing, *id*. at ¶¶ 10–13, 43–45;

- Shaver failed to comply with clear orders to keep his hands visible and away from the small of his back, *id*. at ¶¶ 90–93;

- At the time of the incident Shaver was violating the terms of his probation for the *second* time and likely knew that the interaction with the police was going to result in the loss of his job, the suspension of his driver's license, jail-time, and upsetting his relationship with Plaintiffs, Ex. 3 (Excerpts from Parker County, TX Court Documents re *Texas v Shaver*)[3]; Ex. 4 (Excerpts from L. Sweet Depo. at 311:4–312:11).

- During their encounter with Shaver in the hallway, Langley and his fellow officers were under the impression that a third *armed* man remained in the room, GSOF at ¶¶ 63, 164.

---

[3] The terms of Shaver's community supervision provided that Shaver "will consumer NO alcohol as a condition of probation" and "[r]emain within the limits of Parker County, Texas and the immediately adjoining Texas Counties . . . ," Ex. 3 at 2–4. Shaver's probation was subsequently extended "for 12 months until Feb 26, 2016," *id*. at 13, for violating his probation terms in June of 2014 by, *inter alia*, possessing "a usable quantity of cocaine" and "traveling to Mexico without first obtaining written permission" *id*. at 7.

Thus, it was not clearly established at the time of the incident that Langley was required to use alternative methods to take Shaver into custody. *Cf. Kisela v. Hughes*, 138 S. Ct. 1148, 1156 (2018) (reversing Ninth Circuit and holding that Tucson police officer was entitle to qualified immunity where he fired four times "[w]ithout giving any advance warning that he would shoot, and without attempting less dangerous methods to deescalate the situation") (Sotomayor, J. dissenting); *Roell v. Hamilton Cty., Ohio/Hamilton Cty. Bd. of Cty. Commissioners*, 870 F.3d 471, 486–87 (6th Cir. 2017) ("no precedent establishes that the level of force used by the deputies in this case was excessive or that the deputies were required to use only verbal de-escalation techniques.").

### C. Langley did not violate Shaver's constitutional rights.

At bottom, all of Plaintiffs' Section 1983 claims against Langley turn on the mistaken assumption that Brailsford violated Shaver's constitutional rights when he shot him. But not every use of deadly force violates the Fourth Amendment, and the undisputed facts establish that Brailsford had the requisite probable cause to believe that Shaver posed a threat of serious harm to him and his fellow officers *at the time* use of force was deployed.

#### 1. The shooting of Shaver was objectively reasonable.

It is objectively reasonable for a police officer to deploy deadly force when a suspect, which the officer believes is armed, reaches for his waist. *Salazar-Limon v. City of Houston*, 137 S. Ct. 1277 (2017) (Alito, J., concurring in denial of certiorari) (noting that "summary judgment would be proper if the record compelled the conclusion that Salazar–Limon reached for his waist").[4] For example, in *Cruz v. City of Anaheim*, officers were informed that Cruz was a gang member who sold drugs and carried a gun. 765 F.3d

---

[4] The Supreme Court declined to review *Salazar-Limon v. City of Houston*, which found no constitutional violation where an officer shot a suspect reaching for his waistband. 826 F.3d 272, 279 (5th Cir. 2016) ("[C]onsidering the totality of the circumstances—which include Salazar's resistance, intoxication, his disregard for Officer Thompson's orders, the threat he and the other three men in his truck posed while unrestrained, and Salazar's actions leading up to the shooting (including suddenly reaching towards his waistband)—it seems clear that it was not unreasonable for an officer in Officer Thompson's position to perceive Salazar's actions to be an immediate threat to his safety.").

4

1076 (9th Cir. 2014). The officers pulled Cruz over at a traffic stop and Cruz got out of the car and ignored the officers' demands to get on the ground. *Id*. at 1078. The officers fired at him when he reached for his waistband. *Id*. Afterwards, it was discovered Cruz did not have a weapon on his person. *Id*. The Ninth Circuit held:

> It would be *unquestionably reasonable* for police to shoot a suspect in Cruz's position if he reaches for a gun in his waistband, *or even if he reaches there for some other reason*. Given Cruz's dangerous and erratic behavior up to that point, the police would doubtless be justified in responding to such a threatening gesture by opening fire.

*Id*. (emphasis added); *see also Wilkinson v. Torres*, 610 F.3d 546, 553 (9th Cir. 2010) (holding "'the Fourth Amendment does not require omniscience,' and absolute certainty of harm need not precede an act of self-protection") (citation omitted).

Here, Brailsford shot Shaver when Shaver reached for his waistband. *See* GSOF ¶ 91–93. Given that the officers were responding to a 911 emergency call regarding an individual pointing a gun out of a hotel window and that Shaver had been *repeatedly* admonished not to put his hands behind his back, it was objectively reasonable for Brailsford to assume that Shaver was reaching for a gun when he reached for his waistband. As in *Cruz*, Brailsford's decision to shoot did not violate Shaver's Fourth Amendment rights because, under the circumstances, reaching for his waistband was a "threatening gesture," 765 F.3d at 1078 (noting it would be unreasonable to shoot "if the suspect *doesn't* reach for his waistband or make some similar threatening gesture"); *see also Batyukova v. Doege*, 994 F.3d 717, 729 (5th Cir. 2021) (shooting officer entitled to qualified immunity where suspect "repeatedly ignored his commands, walked towards him, was actually facing him, and then made a movement towards her waistband"); *Lamont v. New Jersey*, 637 F.3d 177, 183 (3d Cir. 2011) ("[T]roopers were justified in opening fire" where the suspect "suddenly pulled his right hand out of his waistband" despite the fact that he was later discovered that "the suspect was not clutching a weapon; he was holding a crack pipe").[5]

---

[5] *See also Corrales v. Impastato*, 650 F. App'x 540 (9th Cir. 2016) (officer's use of deadly force against a suspect who (incorrectly) believed was pulling a gun from his

5

### 2. This Court must ignore Plaintiffs' hindsight allegations.

The Supreme Court has made clear that when evaluating the "defense of qualified immunity [courts may only consider] the facts that were knowable to the defendant officers." *White v. Pauly*, 137 S. Ct. 548, 550 (2017). Here, Plaintiffs' claims turn on facts that were unknown to the officers before Brailsford deployed force. For example, Langley and his fellow officers could not have known that Shaver was unarmed and reasonably assumed that he was armed. *See* GSOF ¶¶ 87–89, 144, 202. The fact that the officers *subsequently* learned that Shaver did not have a gun on him, but that he had left his weapons in his room, is not relevant to the qualified immunity analysis. *See Cruz*, 765 F.3d at 1078; *see also Plumhoff v. Rickard*, 572 U.S. 765, 775 (2014) (instructing courts to view the facts "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."); *Mendez*, 137 S. Ct. at 1546–47 (2017) (emphasizing that a use of force must be "evaluated for objective reasonableness based upon the information the officers had when the conduct occurred" and rejecting a "look back in time to see if there was a *different* Fourth Amendment violation that is somehow tied to the eventual use of force."). Without the benefit of their hindsight allegations, Plaintiffs cannot establish that Brailsford's deployment of force was objectively unreasonable.

## II. PLAINTIFFS CANNOT TO ESTABLISH ENTITLEMENT TO PUNITIVE DAMAGES AGAINST LANGLEY.[6]

A § 1983 punitive damages claim is subject to summary adjudication when the plaintiff "fails to produce evidence raising a material question of fact regarding aggravating circumstances or the reckless or callous nature of defendant's actions." *Kyle v. Patterson*, 196 F.3d 695, 698 (7th Cir. 1999). Langley testified that his intent throughout the incident was to safely take Shaver into custody and ensure the safety of the public. *See* Ex. 5 (Excerpts Langley Trial Testimony at 75:20–24, 89:6–14). Thus, even if Plaintiffs can

---

waistband was objectively reasonable).

[6] The Court previously dismissed Plaintiffs' claims for punitive damages arising out of their state law claims. *See* Doc. 137 at 4, 14–15.

establish—at the summary judgment stage—that Langley acted with deliberate indifference to Shaver's rights, they cannot establish that his conduct was motivated by evil motive or intent, or involved reckless or callous indifference to Shaver's federally protected rights. *Cf. Schroeder v. SDUSD*, 2009 WL 1357414, at *14 (S.D. Cal. May 13, 2009) (granting summary judgment on punitive damages even though there were genuine issues of material fact precluding summary adjudication on Plaintiff's § 1983 claims) ("Plaintiff conflates the showing required to establish her claim under 42 U.S.C. § 1983 with the standard for punitive damages"); *see also White v. Polk Cty.*, 207 F. App'x 977, 979 n.6 (11th Cir. 2006) ("We are not persuade . . . by Plaintiffs' assertion that, because Officer Lawson invoked his Fifth Amendment privilege and did not answer a deposition question about whether he intended to harm White and Jacoby, we should infer that Officer Lawson did intend such harm.") (citing *Avirgan*, 932 F.2d 1572, 1580 (11th Cir. 1991)).

### III. PLAINTIFFS CONCEDE THAT THEY FAILED TO COMPLY WITH ARIZONA'S NOTICE OF CLAIM REQUIREMENTS.

On August 27, 2020, following all previous summary judgment briefing, Plaintiffs produced 190 pages of Facebook Posts from Ms. Sweet's Facebook account. *See* Doc. 488 (notice of service of Sweet Plaintiffs' Sixteenth Supplemental Disclosure Statement). Among these documents was a July 2016 Facebook post, where Ms. Sweet acknowledged deficiencies in her Notice of Claim. *See* Ex. 6 (PL SWEET009017) ("Have you filed the Notice of Claim? . . . There's a deadline for it. Is Marc doing it? We are having to re-do ours because he screwed mine up. if he doesn't do it correctly they can completely dismiss the civil case."). The record establishes that Ms. Sweet was correct—she and her children failed to provide sufficient notice of her state law claims to Langley.

A notice of claim may be filed in three ways: (1) personal delivery to the employee; (2) delivery to a person of suitable age and discretion who resides with the employee; or (3) delivery to a person who is the employee's appointed agent. *Simon v. Maricopa Med. Ctr.*, 234 P.3d 623, 629 (App. 2010) (citing A.R.S. § 12-821.01(A); Ariz. R. Civ. P. 4.1(d)). If the notice of claim is not filed within the one hundred eighty days, the claim is "barred

and no action may be maintained thereon." *Id*. Arizona courts have held that the notice of claim statute is to be interpreted strictly. Further, in cases where both the public entity and public employees are sued, plaintiffs must give notice to both the entity and the employees. *Crum v. Superior Court in & for County of Maricopa*, 922 P.2d 316, 317 (App. 1996).

Here, Langley's April 26, 2019 Answer—filed concurrently with his summary judgment motion—denied Plaintiffs' allegation that she timely served a notice of claim:

### COMPLIANCE WITH NOTICE OF CLAIM REQUIREMENTS

> 19. In answering Paragraph 19 of the Sweet Plaintiffs' Amended Complaint, Defendant asserts that many of the sentences call for legal conclusions or do not require an answer from this Defendant. To the extent a response is required, Defendant denies the same.

Doc. 269 at ¶ 19. Since Plaintiffs were put on notice of his Notice of Claim defense, Plaintiffs have failed to provide any evidence demonstrating compliance with A.R.S. § 12-821.01(A) as it pertains to their state-law claims against Langley. Rather, the undisputed evidence makes clear that Plaintiffs did not provide Langley with timely notice. Plaintiffs apparently sent a Notice of Claim on February 8, 2016 to the Mesa Police Department and the City Clerk for the City of Mesa. Plaintiffs also apparently sent an amended notice of claim on July 13, 2016 ("Amended Notice"). The Amended Notice was addressed to a number of entities and individuals, including Langley, but the Plaintiffs' process server's order form indicates that it was only delivered to the City Clerk's Office. When Plaintiffs' Amended Notice was purportedly served on the City of Mesa, Langley had already retired. GSOF at ¶ 218. Regardless, Langley *never* authorized his former employer to accept service on his behalf. *See* Doc. 386-1 Ex. A ("I did not authorize the City of Mesa or the Mesa Police Department to accept service of any notice of claim issued by any of the Plaintiffs in the above captioned litigation.").

In sum, service on the City of Mesa and the Mesa Police Department was insufficient to bring a claim against Langley. *See Simon v. Maricopa Med. Ctr.*, 225 Ariz. 55, 61 (App. 2010) (holding that service of notice of claims must comply with Rule 4.1(d)

of the Arizona Rules of Civil Procedure); *see also Iknadosian v. Mahon*, No. 1 CA-CV 13-0205, 2014 WL 2548975, at *3 (Ariz. Ct. App. June 5, 2014) ("Thus, delivery to a receptionist at a defendant's place of employment is insufficient service."). To perfect their state law claims against Langley, Plaintiffs needed to serve their notice of claim on Langley directly, not his former employer. *Id*. (dismissing claims against individual officers where Plaintiff "filed his notice of claim with the clerk of the City of Phoenix and the Clerk of the Maricopa County Special Healthcare District, but not with any of the Officers.").[7]

Because Plaintiffs did not comply with A.R.S. § 12–821.01(A), this Court must enter judgment in favor of Langley on Plaintiff's remaining state-law claims—Count I (Wrongful Death) and Count VI (Intentional Infliction of Emotional Distress ("IIED")).

**IV. PLAINTIFFS CANNOT IDENTIFY SUFFICIENT EVIDENCE TO SUPPORT THEIR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM.**

Langley's February 7, 2020 Supplemental Brief (Doc. 386) thoroughly outlines the five reasons that he is entitled to summary judgment on Plaintiffs' IIED claim:

- Plaintiffs cannot establish their IIED claims as a matter of law because they were not present at the time of Langley's alleged extreme or outrageous conduct nor was any of Langley's conduct directed at them.
- Plaintiffs N.S. and E.S. could not have been injured by Langley's post-incident report.
- Ms. Sweet has not and cannot establish that her emotional distress was caused by Langley's post-incident report.
- The record evidence does not support Plaintiffs' "cover-up" conspiracy.
- Langley did not intentionally omit any material from his report.

Pursuant to LRCiv 7.1(d)(2), Langley incorporates the arguments previously presented in Doc. 386 by reference herein.

---

[7] Arizona cases emphasize that "[a]ctual notice and substantial compliance do not excuse failure to comply with the statutory requirements of A.R.S. § 12–821.01(A)." *Falcon ex rel. Sandoval v. Maricopa Cnty.*, 213 Ariz. 525, 527 (2006); *see also Nored*, 614 F. Supp. 2d at 996–97 (D. Ariz. 2008) ("[D]octrines of substantial compliance and actual notice of a claim may not be applied to allow a suit to proceed when a plaintiff has not strictly complied with the substantive terms of the statute.").

## V. LANGLEY INCORPORATES BY REFERENCE CO-DEFENDANTS ARGUMENTS IN SUPPORT OF SUMMARY ADJUDICATION OF PLAINTIFFS' STATE LAW CLAIMS.

Pursuant to LRCiv 7.1(d)(2), Langley also joins in and incorporates by reference the arguments that apply to Langley advanced in co-defendants' supplemental motion for summary judgment briefs. Specifically, Langley joins in (1) Sections I, III, and V of the City of Mesa Defendants' Supplement [Doc. 604], and (2) Sections I(B) and I(C) of Defendant Gomez's Supplement [Doc. 606].

## VI. CONCLUSION

The Court must grant summary judgment on Plaintiffs' federal and state law claims against Langley.

Respectfully Submitted this 31st day of August 2021.

**SCHARFF PLLC**

By: */s/ Spencer G. Scharff*
Spencer G. Scharff

James J. Belanger
**J. BELANGER LAW PLLC**

*Attorneys for Defendant*
Charles Langley