**WO**

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Laney Sweet, | No. CV-17-00152-PHX-GMS |
| Plaintiff, | **ORDER** |
| v. | |
| City of Mesa, et al., | |
| Defendants. | |

Before the Court is a dispute between Plaintiff Laney Sweet and Defendant Philip Brailsford ("Defendant") about the applicability of the attorney-client privilege and work product doctrine to various emails in Plaintiff's possession. Plaintiff first produced her privilege log in April 2021, identifying documents that she was withholding on the grounds of attorney-client privilege. (Doc. 626 at 2–3.) This dispute dates to at least June 2021, when Defendant objected to Plaintiff's designations of 251 email communications and one voice recording. *Id.* at 3. The parties were unable to come to an agreement as to these 251 emails but did not bring their dispute to the Court's attention until after the close of fact discovery, when Defendant filed a Motion for In Camera Review. (Doc. 609.) The Court granted Defendant's motion. (Doc. 631.) Plaintiff then transmitted the emails and voice recording at issue to the Court for in camera review. After a preliminary review, the Court requested briefing on the applicability of the work product doctrine as to the disputed emails. (Doc. 642.) The Court held a hearing on November 29, 2021 to resolve the

disputed issues.  Following the hearing, the Court ordered supplemental briefing from Plaintiff responding to arguments raised by Defendant.  (Doc. 652.)

**DISCUSSION**

**I.    Legal Standard**

**A.    Attorney-Client Privilege**

Because this case arises under the Court's federal question jurisdiction, 28 U.S.C. § 1331, the federal law of privilege applies to all claims, including any pendent state law claims.  *Agster v. Maricopa Cnty.*, 422 F.3d 836, 839 (9th Cir. 2005).  In the Ninth Circuit, courts apply an eight-part test to determine whether the attorney-client privilege protects information:

> (1) where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.

*United States v. Graf*, 610 F.3d 1148, 1156 (9th Cir. 2010) (quoting *United States v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009)).  "The party asserting the privilege bears the burden of proving each essential element."  *Ruehle*, 583 F.3d at 608.  "Because it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed."  *Weil v. Inv./Indicators, Rsch. & Mgmt., Inc.*, 647 F.2d 18, 24 (9th Cir. 1981).  While the attorney-client privilege "may extend to third parties who have been engaged to assist the attorney in providing legal advice," the privilege does not apply if "the advice sought is not legal advice."  *United States v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011) (finding privilege would not apply if advice sought from third party was "accounting advice from an accountant").  Ordinarily, voluntary disclosure of privileged documents to third parties amounts to an express waiver of the privilege.  *United States v. Sanmina Corp.*, 968 F.3d 1107, 1116 (9th Cir. 2020).  An express waiver "need not be effectuated by words or accompanied by the litigant's subjective intent."  *Bittaker v. Woodford*, 331 F.3d 715, 719 n.4 (9th Cir. 2003).  However, the privilege is not waived if the disclosure is to a third party

1   acting as an agent of the client.  *Sanmina*, 968 F.3d at 1116; *United States v. Landof*, 591

2   F.2d 36, 39 (9th Cir. 1978).

3       **B.     Work Product Doctrine**

4       The work product doctrine protects materials from discovery "if they are prepared

5   by or for a party or its representative in anticipation of litigation.  A party representative

6   includes the party's attorney, consultant, or agent."  *Phoenix Techs. Ltd. v. VMware, Inc.*,

7   195 F. Supp. 3d 1096, 1101 (N.D. Cal. 2016); Fed. R. Civ. P. 26(b)(3).  "'At its core, the

8   work-product doctrine shields the mental processes of an attorney,' . . . and protects both

9   'material prepared by agents for the attorney as well as those prepared by the attorney

10  himself.'"  *Sanmina*, 968 F.3d at 1119 (quoting *United States v. Nobles*, 422 U.S. 225,

11  238–39 (1975)).  Unlike the attorney-client privilege, disclosure of work product to a third

12  party only waives the doctrine's protections when "such disclosure is made to an adversary

13  in litigation or 'has substantially increased the opportunities for potential adversaries to

14  obtain the information.'"  *Id.* at 1121 (quoting 8 Charles Alan Wright & Arthur R. Miller,

15  *Federal Practice and Procedure* § 2024 (3d ed. 2020)).  The party seeking to invoke the

16  doctrine bears the burden to show its applicability.  *McKenzie L. Firm, P.A. v. Ruby*

17  *Receptionists, Inc.*, 333 F.R.D. 638, 641 (D. Or. 2019).

18      Even if a document is work product, a party may waive the doctrine's protection by

19  failing to timely assert its application to specific documents.  *Munguia-Brown v. Equity*

20  *Residential*, 337 F.R.D. 509, 515 (N.D. Cal. 2021).  The Ninth Circuit has set forth a

21  multifactor test to determine whether waiver by untimely assertion has occurred:

22          [1] the degree to which the objection or assertion of privilege
            enables the litigant seeking discovery and the court to evaluate
23          whether each of the withheld documents is privileged (where
            providing particulars typically contained in a privilege log is
24          presumptively sufficient and boilerplate objections are
            presumptively insufficient);
25
            [2] the timeliness of the objection and accompanying
26          information about the withheld documents (where service
            within 30 days, as a default guideline, is sufficient);
27
            [3] the magnitude of the document production; and
28

- 3 -

[4] other particular circumstances of the litigation that make responding to discovery unusually easy (such as, here, the fact that many of the same documents were the subject of discovery in an earlier action) or unusually hard.

These factors should be applied in the context of a holistic reasonableness analysis, intended to forestall needless waste of time and resources, as well as tactical manipulation of the rules and the discovery process.

*Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Ct.*, 408 F.3d 1142, 1149 (9th Cir. 2005).

## II.    Analysis

### A.    Attorney-Client Privilege

#### i.    Dispute Codes 1, 2, and 3

The parties dispute whether Marcie Sweet acted as Plaintiff Laney Sweet's agent.[1] If Marcie was Laney's agent, then the communications were never disclosed to a third party and the attorney-client privilege was not waived.  The agency exception found in the attorney-client privilege is generally understood to permit communications to a non-lawyer professional whose services are necessary to assist the client's attorney in the provision of legal advice.  *See, e.g.*, *Richey*, 632 F.3d at 566; *United States v. Kovel*, 296 F.2d 918, 922 (2d Cir. 1961).  Courts have, on occasion, found parents to be an agent of their child.  In *Dempsey v. Bucknell University*, the plaintiff's parents acted as his agents when they used their prior professional experience as a forensic investigator and an attorney respectively to actively assist the plaintiff's attorneys in preparing his defense to criminal and disciplinary charges.  296 F.R.D. 323, 329–30 (M.D. Pa. 2013).  Using their experience, the plaintiff's parents "operat[ed] in concert with and at the direction of defense counsel, and provid[ed] substantial assistance in the preparation of the case." *Id.*  Since the parents' actions were roughly equivalent to those they would take "as paid professionals," they were the plaintiff's agents even though they were also "family member volunteers." *Id.* at 330.

Although Marcie was involved with the preparation of her daughter's case, her involvement did not create an agency relationship for purposes of the federal law of

---

[1] Marcie Sweet is Plaintiff's mother.  For ease of reference, the Court will refer to Marcie Sweet as "Marcie," and Plaintiff Laney Sweet as "Laney."

- 4 -

attorney-client privilege.[2]  The emails establish that Marcie was deeply concerned about her daughter's legal prospects, that she advised Laney to retain her current counsel, and that she held herself out on occasion as having been authorized by Laney to speak on her behalf.  However, they do not establish that Marcie provided the kind of professional services she would ordinarily be paid to provide, nor that her services were necessary to assist Laney's attorneys in providing their legal advice—facts central to the *Dempsey* court's determination that the plaintiff's parents were his agents.[3]  Therefore, even if Marcie's involvement in her daughter's case was substantial, it does not rise to the level of creating an agency relationship between her and Laney.[4]

Having determined that Marcie is not Laney's agent, her receipt of email communications between Laney and her attorneys expressly waives the attorney-client privilege.  *Sanmina*, 968 F.3d at 1116.  That Laney or her attorneys may not have subjectively intended to waive the privilege is immaterial.  *See Bittaker*, 331 F.3d at 719 n.4.  Consequently, the attorney-client privilege has been waived as to all emails marked with Dispute Codes 1, 2, and 3.[5]

---

[2] Even if the test for agency under the federal law of attorney-client privilege were the same as under the common law, Plaintiff has not met her burden to establish that she explicitly authorized Marcie to act as her agent, or that she held Marcie out as her agent. *See* Restatement (Third) of Agency § 3.01 (Am. L. Inst. 2006) (actual authority); *id.* § 3.03 (apparent authority).  But the federal common law of attorney-client privilege applies the agency exception only when the putative agent is a professional providing services to aid the attorney's provision of legal advice to the client.  *See, e.g.*, *Kovel*, 296 F.2d at 922.  Since confining the agency exception to the provision of professional services—as *Dempsey* did—is consistent with "strictly constru[ing]" the attorney-client privilege under federal law, the Court declines to adopt a broader reading of the exception.  *Weil*, 647 F.2d at 24,

[3] *Dempsey* is the only case the Court is aware of that applies the federal common law of attorney-client privilege to the issue of whether parents may be agents, and explicitly bases its holding on the parents' professional backgrounds.  *Dempsey*, 296 F.R.D. at 329.

[4] Additionally, some emails demonstrate that neither Marcie nor Laney's attorneys considered Marcie an agent during the relevant times: In one email, Marcie expressed concern that under the terms of the protective order, she would not be able to view discovery.  The protective order allows disclosure of confidential information to "any . . . agents . . . of the Receiving Party to whom disclosure is reasonably necessary."  (Doc. 111 at 6.)  Therefore, Laney has failed to establish that Marcie was her agent.

[5] The Court is mindful of Plaintiff's concern that finding waiver of the attorney-client privilege when a client seeks her parents' advice would operate to prevent clients

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## ii.    Dispute Codes 5 and 6

The only email marked with Dispute Code 5 is from David Wood (one of Laney's attorneys) to Laney and an individual named "C.C."[6]  The Court is unable to determine the applicability of the privilege without knowing whether C.C. was a client of Mr. Wood. Because Plaintiff has not provided any affidavits or other factual support that would allow the Court to conclude that C.C. was a client of Mr. Wood, she has failed to meet her burden of proving that the email is protected by the attorney-client privilege.

There are three emails marked with Dispute Code 6.  All three were sent by Laney, to individuals who are only identified by their email addresses on the privilege log.  As with Dispute Code 5, the Court concludes that Plaintiff has failed to establish that these emails are protected because they were disclosed to unnamed individuals.

## iii.    Recorded Phone Call

Finally, the parties dispute whether a recorded phone call, labelled PL SWEET007965, between Sven Budge and Laney is subject to the attorney-client privilege. Mr. Budge previously represented Mr. Shaver's parents as plaintiffs in this matter. Ordinarily, communications between a prospective client and an attorney are privileged if the prospective client sought to retain the attorney's services.  *United States v. Layton*, 855 F.2d 1388, 1406 (9th Cir. 1988).  However, the recording indicates that Marcie was present in the room with Laney and an active participant on the call.  As with the emails in Dispute Codes 1, 2, and 3, Marcie's presence amounts to an express waiver of any privilege that would have otherwise existed.

/ / /

/ / /

---

from consulting their parents about their case.  But, as discussed in further detail below, the work product doctrine provides additional protections even when the attorney-client privilege is waived.  Clients remain free to disclose confidential work product to their parents when the protection of the doctrine is timely invoked and preserved, so long as the parent is not adverse to the client's interests, or disclosure to the parent substantially increases the opportunities for an adversary to obtain the information.  *Sanmina*, 968 F.3d at 1121.

[6] Abbreviated for privacy.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### B.      Work Product Doctrine

#### i.      Waiver

In the privilege log submitted to the Defendants, Plaintiff only labelled nine disputed emails as subject to work product protections: Emails 201 (Tab 60), 203 (Tab 61), 211 (Tab 69), 214 (Tab 70), 222 (Tab 72), 223 (Tab 73), 242 (Tab 81), 933 (Tab 225), and 1022 (Tab 230).  Subsequent briefing suggested that Plaintiff intended a broader assertion of the doctrine, but she did not specifically identify to which documents the doctrine applied. (Doc. 626).   When Plaintiff submitted the disputed emails to the Court for in camera review, those same nine emails were the only ones marked as protected by the doctrine on the accompanying privilege log.  The Court then issued an order scheduling oral argument where it indicated that it did not find persuasive any assertion of the attorney-client privilege to emails received or sent by Marcie Sweet.  (Doc. 642.)  At that point, Plaintiff's claims of work product protection ballooned.   In her briefs on the applicability of the doctrine to the disputed emails, she claimed it protected "the vast majority of emails" involving Marcie Sweet.  (Doc. 646 at 1.)  Citations in her briefing suggest she seeks to apply the doctrine's protection to at least 105 of the disputed emails.  But the Court cannot say for certain whether those are the only emails to which Plaintiff believes the work product doctrine applies.   Plaintiff's briefing refers to these 105 emails as "just some examples," (Doc. 646 at 6), and intimates that "the majority of the e-mails at issue" are covered.  *Id.* at 5.  In support, Plaintiff provides a table categorizing the disputed emails by whether they contain fact work product, opinion work product, or neither.  (Doc. 646-1 at 36.)[7]

Considering the *Burlington Northern* factors, Plaintiff has waived any work product protection as to any email not explicitly designated as work product on the privilege logs submitted to Defendant and the Court.   First, Plaintiff's assertion of work product protection has shifted over time and in its current form is closer to the "presumptively

---

[7] This chart implies all disputed emails are covered by some form of work product protection.

insufficient" "boilerplate objections" than the "presumptively sufficient" "particulars typically contained in a privilege log." *Burlington Northern*, 408 F.3d at 1149. The Court cannot readily ascertain the applicability of the work product doctrine when Plaintiff has not propounded an updated privilege log. Nor does Plaintiff's briefing suffice as a substitute. Plaintiff points to swathes of documents as "just some examples" but does not explain why the work product doctrine applies *to each email specifically*. As a result, this factor weighs against Plaintiff.

In this case, the second factor is intertwined with the first, and likewise weighs against Plaintiff. To the best of the Court's knowledge, this discovery dispute has been ongoing since at least June 2021 when Defendant first raised his objections to Plaintiff's privilege log, first in writing and then at a meet and confer. (Doc. 626 at 3.) On that privilege log, only nine disputed emails were listed as subject to the work product doctrine. (Doc. 632 (under seal).) It was not until November 2021 that Plaintiff put Defendant on notice with any degree of specificity that she was also withholding numerous other emails based on a work product objection.

In support of her position on the first two factors, Plaintiff relies on *Thomsen v. NaphCare, Inc.* No. 19-CV-00969, 2021 WL 839161, at *4 (D. Or. March 5, 2021). In *NaphCare*, the defendant objected to producing several documents relating to a corporate review of the events that gave rise to the lawsuit on grounds of attorney-client privilege and the work product doctrine. *Id.* After the plaintiff moved to compel disclosure, the defendant continued to assert both privileges, and promptly promulgated a detailed privilege log when ordered to do so by the court. *Id.* The defendant then amended its privilege log to include greater detail. *Id.* At all points, the *NaphCare* defendant asserted the work product doctrine over a limited set of documents, and was transparent with both the court and the plaintiff as to which documents it believed were covered by the work product doctrine. *See id.* Unlike the *NaphCare* defendant, Plaintiff's theory has shifted over time. Plaintiff's initial objections on work product grounds, (Doc. 653-1 at 6, 10, 14), were followed by a narrow assertion of the work product doctrine against only nine emails

in the privilege log.  Months later, Plaintiff invoked the doctrine against a far larger swathe of emails.  In *NaphCare*, the work product doctrine was consistently invoked as to the same set of documents, while Plaintiff has only recently provided the Court with any detailed assertion of the doctrine beyond the initial nine emails in an attachment to its supplemental briefing, over six months after creating its initial privilege log and almost two months after first indicating it might broaden its invocation of the doctrine.  Consequently, *NaphCare* is readily distinguishable.

Third, the magnitude of the document production is, at most, 251 emails.  While it is true that this is not an insignificant number of emails, the full privilege log contains 1571 emails.  (Doc. 632 (under seal).)  Plaintiff asserts she has produced tens of thousands of documents throughout discovery to all Defendants in this matter.  Consequently, Plaintiff asserts the work product doctrine against a small fraction of the overall discovery that has been propounded.  Therefore, this factor weighs in Plaintiff's favor.  *See McKeen-Chaplin v. Provident Savings Bank, FSB*, No. 12-cv-03035, 2015 WL 502697, at *11 (E.D. Cal. Feb. 5, 2015) (finding third factor to weigh against waiver when attorney-client privilege was asserted against three documents in 12,000 pages of discovery).  Fourth, the Court is unaware of any particular circumstances of the litigation that make responding to discovery unusually hard, or unusually easy.  The parties have been granted several lengthy extensions to the discovery deadline.  (Docs. 44, 339, 513.)  As a result, Plaintiff has had far more time than most ordinary civil litigants to develop her privilege log and make appropriate objections.  This factor also weighs against Plaintiff.

Finally, in the context of the "holistic reasonableness analysis" envisioned by *Burlington Northern*, the Court notes that the history of this case and the timing of Plaintiff's assertion of the work product doctrine suggest at least some "tactical manipulation of the rules and the discovery process." *Burlington Northern* 408 F.3d at 1149.  For one, Plaintiff undertook to both the Court and Defendants that she would take the initiative to transmit to the Court any documents subject to a disputed claim of privilege alongside an accompanying privilege log.  (Doc. 468 at 92:23.)  But this did not occur until

Defendant secured—after the close of discovery—an Order by the Court compelling Plaintiff to do so.  (Doc. 631.)  Similarly, Plaintiff's current application of the work product doctrine was not raised with any specificity until the Court indicated that it was not persuaded by Plaintiff's invocation of the attorney-client privilege.  (Docs. 642, 646.)  Plaintiff's shifting theories and reluctance to initiate the in camera review process weigh against her in this inquiry.  *See Munguia-Brown*, 337 F.R.D. at 515 (finding tactical manipulation when "the work product objection did not come into existence in any form until after the Court's finding that attorney-client privilege had been waived").  Therefore, the Court will deem the work product doctrine's protections waived as to all emails except Emails 201 (Tab 60), 203 (Tab 61), 211 (Tab 69), 214 (Tab 70), 222 (Tab 72), 223 (Tab 73), 242 (Tab 81), 933 (Tab 225), and 1022 (Tab 230).

Since, unlike the attorney-client privilege, disclosure to a third party[8] only waives the protections of the work product doctrine when the third party is either an adversary or when disclosure substantially increases the likelihood that an adversary will obtain the information, disclosure to Marcie Sweet does not amount to waiver.  *Sanmina*, 968 F.3d at 1121.  The communications reviewed by the Court make clear that Marcie is committed to vindicating her daughter's rights.  Therefore, she is not adverse to Plaintiff in this litigation.  Nor was disclosure to Marcie likely to substantially increase the opportunities for adversaries to obtain the information.  Marcie's deep involvement with the preparation of Plaintiff's case and status as Plaintiff's mother suggests that Plaintiff and her attorneys had a reasonable expectation that Marcie would keep their communications and documents confidential.  *See id.* (finding a disclosing party's "reasonable expectation of confidentiality" to be "highly relevant and often dispositive" in finding waiver of the work product doctrine); *United States v. Stewart*, 287 F. Supp. 2d 461, 469 (S.D.N.Y. 2003) (finding disclosure of protected work product to criminal defendant's daughter did not amount to waiver because defendant did not "substantially increase the risk that the

---

[8] As above, Marcie is not Laney's agent.  *See Dempsey*, 296 F.R.D. at 331 (finding determination of whether parent was an agent under the attorney-client privilege dispositive of whether parent was an agent for purposes of the work product doctrine).

1    Government would gain access to materials prepared in anticipation of litigation").

2    Finding no waiver, the Court will address each of the nine emails in turn.

3                        ii.    **Tab 60**

4          This email is described by Plaintiff as correspondence from Bill Richards

5    (Plaintiff's attorney), addressed to Plaintiff, Marcie Sweet, Mark Geragos (another retained

6    attorney), and Ben Meiselas (another retained attorney).   In her privilege log, she

7    characterizes it as containing "detailed discussion regarding draft of amended notice of

8    claim" with her attorneys.  Attached to the email is a document that appears to be a draft

9    notice of claim to be filed in this case.

10         This email and its attachment are protected work product.  It is a "document"

11   prepared by Plaintiff's attorney, "in anticipation of litigation."  Fed. R. Civ. P. 26(b)(3).

12   Under Arizona law, any person seeking to recover against a public entity or employee must

13   file a notice of claim within 180 days after the cause of action accrues.  A.R.S. § 12-821.01.

14   Plaintiff's wrongful death action accrued on the day Mr. Shaver died: January 18, 2016.

15   *See James v. Phoenix Gen. Hosp., Inc.*, 154 Ariz. 594, 604, 744 P.2d 695, 705 (1989)

16   (holding that cause of action for wrongful death accrues on the date of the decedent's

17   death).  This email was sent approximately 173 days later.  Because filing a notice of claim

18   is a prerequisite to bringing a claim against a public entity or employee, this email was

19   prepared in anticipation of litigation.  Tab 60 is therefore protected work product.[9]

20                       iii.   **Tabs 61, 73**

21         Tab 61 is an email by Marcie Sweet to Plaintiff, her lawyers, and their support staff

22   at Baskin Richards.  It is a subsequent email to Tab 60, discussing potential edits to the

23   draft notice of claim.  Marcie is responding directly to an email from Plaintiff that informs

24   her attorneys what she would like changed in the draft notice.  Like Tab 60, this email was

25   prepared in anticipation of litigation because it pertains to the draft notice of claim.

26

27         [9] As Defendants represent that they do not "seek discovery of any materials the
     Court deems protected and not waived," they have not met their burden under Rule
28   26(b)(3)(A) to obtain any emails the Court finds protected by the work product doctrine.
     (Doc. 649 at 3.)

However, the Court must determine whether it was prepared "by or for another party or its representative," including that party's attorney. Fed. R. Civ. P. 26(b)(3)(A). While Marcie is neither a party nor a party's representative, she is responding to a request by Mr. Richards to provide feedback on the draft notice of claim. Therefore, the email was produced for Mr. Richards in anticipation of litigation and is protected under Rule 26(b)(3)(A).

Likewise, Tab 73 is an email by Marcie to Mr. Wood, with Plaintiff and her legal team copied. It likewise pertains to the draft notice of claim, and is therefore protected work product.

### iv.     Tabs 69, 70, 72

Tabs 69, 70, and 72 pertain to the finalization of Plaintiff's notice of claim against the City of Mesa and all Defendants who remained public employees. All three emails were sent by attorneys who represented Plaintiff at the time. Since the notice of claim was prepared in anticipation of litigation, emails surrounding the preparation of the notice of claim that were prepared by Plaintiff's attorneys are protected by the work product doctrine.

### v.     Tab 81

Tab 81 is an email from Mr. Richards to Marcie, Plaintiff, and other members of her legal team at Baskin Richards. It pertains to the Special Action that Plaintiff brought in state court, seeking review of the decision to seal Defendant Brailsford's body camera footage in his criminal trial. While the Special Action is not a part of this litigation, the work product doctrine shields documents prepared by a party even if the document was prepared in anticipation of an earlier litigation. *See Bozzuto v. Cox, Castle & Nicholson, LLP*, 255 F.R.D. 673, 678 (C.D. Cal. 2009) (finding work product doctrine shielded documents prepared because of separate case in state court). The email at issue contains a draft of the Special Action petition, for Plaintiff's review. It was therefore prepared in anticipation of litigation, by or for Plaintiff's representative, and protected by the work product doctrine.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

#### vi.     Tab 225

Tab 225 is an email from Plaintiff to Marcie, forwarding a request from a paralegal employed by Marc Victor.  Plaintiff only describes it as containing "detailed discussion with Attorneys for Freedom regarding questionnaire for expert report."  The email at issue is between Plaintiff and Marcie, not Plaintiff and any of her attorneys.  Rule 26(b)(3)(A) indicates that a communication from Plaintiff to Marcie is protected from discovery, so long as it was "prepared in anticipation of litigation."  Fed. R. Civ. P. 23(b)(3)(A); *see also U.S. ex rel. Bagley v. TRW, Inc.*, 212 F.R.D. 554, 559 (C.D. Cal. 2003) ("Work product may include documents prepared by a party, as well as by the party's attorney.")  The underlying email from the paralegal to Plaintiff was likely prepared in anticipation of litigation.  The paralegal's email signature indicates she is employed by a personal injury firm, and the context surrounding the email suggests Plaintiff had been asked to complete a questionnaire for an expert retained by the firm.[10]  Attached to the email appears to be a draft response to the questionnaire.  The Court concludes that while Plaintiff has not provided any supporting affidavits detailing her relationship with Mr. Victor, other emails reviewed in camera establish by a preponderance of the evidence that Mr. Victor was previously retained to represent Plaintiff in connection with the death of Mr. Shaver.  This email is therefore a document prepared in anticipation of litigation, by a party to the litigation, and protected by the work product doctrine.

#### vii.     Tab 230

Tab 230 contains an email from Plaintiff to Marcie, forwarding an email from a private investigator at Geragos & Geragos that pertains to his work on the case.  While Plaintiff does not cite to Tab 230 in her briefing, the email appears to pertain to investigatory steps taken by Geragos & Geragos in its representation of Plaintiff.  Therefore, it is protected by the work product doctrine.

---

[10] While Rule 26(b)(4)(C) explicitly exempts "facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed" from the work product doctrine, the text of the rule only applies to communications between an attorney and a retained expert.  Fed. R. Civ. P. 26(b)(4)(C).

**CONCLUSION**

For the foregoing reasons, Plaintiff waived the attorney-client privilege as to any email received or sent by Marcie.  Likewise, Plaintiff waived the protections of the work product doctrine as to all but nine emails by failing to raise the issue in the privilege log.

**IT IS THEREFORE ORDERED** that Plaintiff must produce to Defendants all emails submitted for the Court's in camera review, except Emails 201 (Tab 60), 203 (Tab 61), 211 (Tab 69), 214 (Tab 70), 222 (Tab 72), 223 (Tab 73), 242 (Tab 81), 933 (Tab 225), and 1022 (Tab 230).  Plaintiff may make redactions to Tabs 126, 127, and 237 to prevent disclosure of private information.  (Doc. 646-1 at 36.)

**IT IS FURTHER ORDERED** that Plaintiff must produce the audio recording labelled PL SWEET007965.

Dated this 2nd day of February, 2022.

G. Murray Snow
Chief United States District Judge