**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Laney Sweet,<br><br>        Plaintiff,<br><br>v.<br><br>City of Mesa, et al.,<br><br>        Defendants. | No. CV-17-00152-PHX-GMS<br><br>**ORDER** |

Pending before the Court is Defendant LQ Management L.L.C.'s ("LQ") Renewed Motion for Rule 54(b) Certification (Doc. 686). For the following reasons, LQ's motion is granted.

**BACKGROUND**

The Court assumes the parties are familiar with the factual and procedural background of this case, which is described in detail at Doc. 661. *See Sweet v. City of Mesa*, No. CV-17-00152-PHX-GMS, 2022 WL 363999, at *1 (D. Ariz. Feb. 4, 2022). As part of the first summary judgment order, the Court found LQ immune from Plaintiff's wrongful death claim under *Ledvina v. Cerasani*, 213 Ariz. 569, 146 P.3d 70 (Ct. App. 2006). (Doc. 339 at 7–8.) LQ requested entry of judgment under Rule 54(b) shortly thereafter. (Doc. 340 at 1.) The Court denied LQ's request, finding that it failed to show that the importance of a final judgment outweighed "the importance of avoiding multiple proceedings and the overcrowding of the appellate docket." (Doc. 589 at 2.)

The Court subsequently issued a second summary judgment order, which, *inter alia*, denied qualified immunity to Defendants Brailsford and Langley. (Doc. 661 at 18, 20.) Both defendants filed interlocutory appeals challenging this ruling at the U.S. Court of Appeals for the Ninth Circuit. (Docs. 668, 669.) At a status conference on March 4, 2022, LQ indicated it intended to renew its Rule 54(b) motion in light of the recent developments in the case, (Doc 692 at 5), and subsequently filed the present motion. (Doc. 686 at 1.) All other proceedings in the case are currently stayed pending disposition of the pending interlocutory appeals. (Doc. 699 at 7.)

**DISCUSSION**

**I.    Legal Standard**

Federal Rule of Civil Procedure 54(b) provides:

> When an action presents more than one claim for relief— whether as a claim, counterclaim, crossclaim, or third-party claim—or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay.

In determining whether there is no just reason for delay, courts balance juridical and equitable considerations, including:

> [W]hether certification would result in unnecessary appellate review; whether the claims finally adjudicated were separate, distinct, and independent of any other claims; whether review of the adjudicated claims would be mooted by any future developments in the case; whether an appellate court would have to decide the same issues more than once even if there were subsequent appeals; and whether delay in payment of the judgment . . . would inflict severe financial harm.

*Wood v. GCC Bend, LLC*, 422 F.3d 873, 878 n.2 (9th Cir. 2005); *see also Jewel v. Nat'l Sec. Agency*, 810 F.3d 622, 628 (9th Cir. 2015). "The function of the district court under the Rule is to act as a 'dispatcher.'  *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 8 (1980) (quoting *Sears, Roebuck & Co v. Mackey*, 351 U.S. 427, 435 (1956)). "It is left to the sound judicial discretion of the district court to determine the 'appropriate time' when each final decision in a multiple claims action is ready for appeal." *Id.*  Rule 54(b) seeks

to balance the "historic federal policy against piecemeal appeals," *Mackey*, 351 U.S. at 438, against a desire to "avoid the possible injustice" of "delay[ing] judgment o[n] a distinctly separate claim [pending] adjudication of the entire case." *Jewel*, 810 F.3d at 628 (quoting *Gelboim v. Bank of Am. Corp.*, 574 U.S. 405, 409 (2015). However, the Rule ultimately aims "to augment, not diminish, appeal opportunity." *Gelboim*, 574 U.S. at 410.

**II.     Analysis**

    **A.     Final Judgment**

The Court's grant of summary judgment in LQ's favor may be eligible for certification under Rule 54(b) if it is properly characterized as a final judgment. *Wood*, 422 F.3d at 878. A final judgment is "an ultimate disposition of an individual claim entered in the course of a multiple claims action." *Curtiss-Wright Corp.* 446 U.S. at 7 (quoting *Mackey*, 351 U.S. at 436). "In the context of Rule 54(b), 'claim' has a specific meaning." *Nat'l Fire Ins. Co. of Hartford v. Lewis*, No. CV-11-01220-PHX-GMS, 2013 WL 1367347, at *2 (D. Ariz. Apr. 4, 2013). The Rule's "use of the word 'claim' at minimum refers to 'a set of facts giving rise to legal rights in the claimant.'" *Pakootas v. Teck Cominco Metals, Ltd.*, 905 F.3d 565, 575 (9th Cir. 2018) (quoting *CMAX, Inc. v. Drewry Photocolor Corp.*, 295 F.2d 695, 697 (9th Cir. 1961)). "Multiple claims can thus exist if a case joins multiple sets of facts." *Id.* "Conversely, only one claim is presented when 'a single set of facts giv[es] rise to a legal right of recovery under several different remedies.'" *Id.* (quoting *Ariz. State Carpenters Pension Tr. Fund v. Miller*, 938 F.2d 1038, 1040 (9th Cir. 1991)).

Plaintiff's sole claim against LQ sought recovery under Arizona's wrongful death statute. (Doc. 53 at 42–43); Ariz. Rev. Stat. § 12-611. Plaintiff alleged LQ provided inaccurate or incomplete information about Mr. Shaver to the Mesa Police Department ("MPD") during the initial 911 call and while MPD officers were at the hotel.

> Had [LQ]'s employees provided additional or different information to the MPD, their argument goes, an accurate scope of the threat would have been relayed to the officers, and Mr. Shaver's death could have been avoided. Plaintiffs further allege that [LQ] negligently failed to implement policies that would have better facilitated their employees' processing of this information, and that their employees additionally acted

>negligently by not relaying additional information to the police regarding Mr. Shaver.

(Doc. 339 at 8.) The facts giving rise to Plaintiff's alleged legal rights against LQ therefore arise not from the actions of the MPD or the individual officer defendants, but the acts of LQ employees in providing information to those officers. Because liability against LQ arose under different facts, Plaintiff has asserted a distinct claim against LQ, which may be separated from the rest of the action. And Plaintiff's claim against LQ has been fully litigated: The Court disposed of this claim at summary judgment, finding that *Ledvina* absolutely immunized LQ from liability for "providing inaccurate or incomplete information to police." (Doc. 339 at 8.) Because Plaintiff's claim against LQ has been resolved after briefing on the merits, the grant of summary judgment as to this claim amounted to an ultimate disposition.

### B. No Just Reason for Delay

The Court must next determine whether no just reason for delaying certification exists. In doing so, the Court follows *Wood* and considers both juridical and equitable concerns. *Gonzalez v. Hum. Rts. Network*, No. CV-20-00757-PHX-DWL, 2021 WL 1312553, at *2 (D. Ariz. Apr. 8, 2021). First, certification at this juncture would not result in unnecessary appellate review. Defendants Brailsford and Langley are currently seeking appellate review of this Court's summary judgment ruling on qualified immunity issues. Pending the conclusion of their appeals, all other proceedings are stayed. (Doc. 699.) This amounts to a material change in circumstance from the Court's prior ruling on LQ's motion, as the Ninth Circuit will be reviewing the Court's rulings on other immunity-related issues regardless of whether Rule 54(b) judgment is granted. Granting Rule 54(b) certification would not inject appellate review into the case at a time when none would otherwise occur. *Cf. Bentley v. City of Mesa*, No. CV-17-00966-PHX-DGC, 2020 WL 8613704, at *1 (D. Ariz. Sept. 21, 2020) (denying Rule 54(b) certification when no other appeals were pending, and motion was decided within months of likely trial date).

Second, as discussed above, the claims against LQ are separate and distinct from

other claims both factually and legally. The very facts that give rise to Plaintiff's separate claim against LQ—the acts or omissions of its employees in the course of conveying information to MPD—were the basis for the Court's finding that LQ was absolutely immune. Because the issues presented in Plaintiff's claim against LQ are easily separated from the remainder of the case, this factor likewise weighs in favor of certification.

Nor are future developments in the case likely to moot any appellate review of the Court's decision at issue. Plaintiff argues appellate review is inappropriate at this juncture because facts elicited at trial may cause the Court to revisit its grant of summary judgment in LQ's favor. (Doc. 697 at 8–9.) But this argument has already been rejected once by this Court, when it denied Plaintiff's Rule 56(d) motion seeking further discovery on LQ's acts or omissions. (Doc. 339 at 8.) The Court held then, and reiterates now, that "any further discovery would not change the outcome reached herein" because LQ is absolutely immune from the type of claim Plaintiff seeks to assert. *Id.* So long as Plaintiff's theory of the claim is that LQ is at fault for the information it gave to MPD, *Ledvina* bars recovery. *See Ledvina*, 213 Ariz. at 574, 146 P.3d at 75 (noting that absolute civil immunity extends even to those who make "intentionally false and malicious . . . statements to the police").

Further, any subsequent appellate review is unlikely to revisit *Ledvina*-related issues. While Defendants Cochrane, Doane, Elmore, and Gomez raised a *Ledvina* defense against Plaintiff's IIED claim, the Court rejected this argument. (Doc. 661 at 34.) But as the Court nevertheless granted summary judgment for these defendants on other grounds, it is unlikely that the rejected *Ledvina* defense will be litigated on any subsequent appeal. *Id.* at 35. Finally, judicial economy concerns counsel in favor of Rule 54(b) certification. Given the pending interlocutory appeals and stay of proceedings, any trial and final judgment is unlikely to occur in the immediate future. Immediate appellate review would allow Plaintiff the opportunity to try her case against LQ—should the Court be reversed— at the same time as a trial on any other issues that might remain after Defendants' appellate review concludes.

For similar reasons, the equities balance in favor of allowing certification. Plaintiff

will not be prejudiced by certification. Any trial in this case will not take place until appellate review of the qualified immunity issues concludes. Whether or not the Court grants LQ's motion, Plaintiff must wait. It is true that Plaintiff will be forced to expend resources to litigate any appeal of this Court's ruling on the *Ledvina* issue, should she wish to appeal. But any resulting prejudice is *de minimis* as Plaintiff would be required to expend resources on an appeal regardless of whether it takes place before or after trial. By contrast, requiring LQ to remain in this case poses at least some prejudice to it: At present, LQ has no further role to play in this litigation, but must continue to expend resources to monitor the case even though it has been adjudged immune from suit. Were LQ to receive a final judgment, it would no longer need to do so. Therefore, while a close call, equitable concerns weigh in favor of certification.

Having considered the relevant juridical and equitable considerations, the Court finds there are no just reasons for delay. Certification under Rule 54(b) is appropriate as to the Court's grant of summary judgment in LQ's favor.

## CONCLUSION

**IT IS THEREFORE ORDERED** that LQ's Renewed Motion for Rule 54(b) Certification (Doc. 686) is **GRANTED.**

**IT IS FURTHER ORDERED** that the claim dismissed in Section II.C of the Court's first summary judgment order (Doc. 339) is hereby **CERTIFIED FOR IMMEDIATE APPELLATE REVIEW** pursuant to Federal Rule of Civil Procedure 54(b).

Dated this 19th day of April, 2022.

_____
G. Murray Snow
Chief United States District Judge